## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DASHAUN MCCRAY, | |
| **Plaintiff,** | |
| v. | Case No. 22-2154-DDC-ADM |
| DENIS MCDONOUGH, M.D., in his Capacity as Secretary of the Department of Veterans Affairs, | |
| **Defendant.** | |

## <u>MEMORANDUM AND ORDER</u>

Plaintiff DaShaun McCray brings this action against defendant Denis McDonough, in his official capacity as Secretary of the Department of Veterans Affairs. She alleges racial discrimination and retaliation claims violating Title VII of the Civil Rights Act of 1964. Doc. 1. Defendant filed a Motion to Dismiss (Doc. 9) asking the court to dismiss plaintiff's claims for failure to state a claim for which relief may be granted under Fed. R. Civ. P. 12(b)(6). Plaintiff filed a Response (Doc. 20).[1] And defendant filed a Reply (Doc. 21).

For reasons explained below, the court grants in part and denies in part defendant's Motion to Dismiss (Doc. 9), as this Order sets forth.

---

[1] Plaintiff's Response asserts that she has stated plausible claims for relief but also makes a cursory request to file an Amended Complaint. Doc. 20 at 20. Under our local rules, a party who seeks leave to amend the complaint must file a separate Motion to Amend that "(1) set[s] forth a concise statement of the amendment or leave sought; (2) attach[es] the proposed pleading or other document; and (3) compl[ies] with the other requirements of D. Kan. Rules 7.1 through 7.6." D. Kan. Rule 15.1(a). Plaintiff hasn't followed this procedure here, so the court doesn't address her request in this Order. Instead, the court analyzes the pending Motion to Dismiss based on plaintiff's Complaint as presented in Doc. 1.

I.      **Background**

The following facts come from plaintiff's Complaint (Doc. 1).  The court accepts

plaintiff's "well-pleaded facts as true, view[s] them in the light most favorable to [her], and

draw[s] all reasonable inferences from the facts" in her favor.  *Brooks v. Mentor Worldwide LLC*,

985 F.3d 1272, 1281 (10th Cir. 2021).

Plaintiff is a Black female[2] and employed at the Department of Veterans' Affairs.  Doc. 1

at 1 (Compl. ¶ 4).  Defendant is the current Secretary of the Department of Veterans' Affairs.  *Id.*

at 2 (Compl. ¶ 5).  Plaintiff began working as a staff nurse at the Robert J. Dole VA Medical

Center in Wichita in December 2015.  *Id.* at 2 (Compl. ¶ 6).  She was promoted to nurse manager

around February 2019.  *Id.*  After plaintiff's promotion, Ruth Duda became her first line

supervisor.  *Id.* (Compl. ¶ 8).  Plaintiff's allegations in her Complaint center on Duda's behavior

after plaintiff was promoted.

Specifically, the Complaint identifies eight separate incidents included in the EEOC's

final agency decision:

> i.      From April 2018 through the present, Ruth Duda ("RD"),
> Community Care Service Chief, attempted to "intimidate" Plaintiff
> when she spoke with her in her workspace, RD yelled at her in a
> public area while discussing another employee's pay and RD stated,
> "If she wants to get paid, you better tell her to send us the form."
>
> ii.     Between January 28, 2019 and January 4, 2020, RD required
> Plaintiff to complete the staffing model duty, without providing her
> Nurse Manager training.
>
> iii.    From January 2019, through the present, RD "usurped" Plaintiff's
> supervisory authority by instructing her (Plaintiff's) staff to

---

[2]      Plaintiff identifies herself as a Black female and consistently identifies others in the same way,
*e.g.*, Black women, Black employees, Black coworkers.  *See* Doc. 1 at 1, 2, 4–6, 8 (Compl. ¶¶ 4, 9, 14,
15, 17, 18, 21, 25, 29, 38).  The court adopts plaintiff's terminology, describing her racial identity and
that of her coworkers as Black.

complete different actions from what she initially instructed her staff to do.

iv.     On January 24, 2020, RD increased Plaintiff's workload after Plaintiff had a meeting with the Chief of Staff to discuss RD's behavior.

v.      On January 30, 2020, RD refused to allow Plaintiff to speak during a meeting with the Medical Center Director, even though the Director asked RD to allow her (Plaintiff) to speak.

vi.     On January 31, 2020, RD violated Plaintiff's personal space when she looked over her so she could see her computer and RD yelled at her, "You did not allow me to talk during the meeting with the Pentad, and you gave incorrect information. Are you offended?"

vii.    On February 10 and 14, 2020, RD undermined Plaintiff's ability as a supervisor when she stated, "You took all leadership away from Janelle Adams, coworker. It appears you were also taking credit for all of the progress made, what was to be implemented in the future with little input from the staff," and when she falsely accused Plaintiff taking over a February 7, 2020 meeting and did not allow another employee to speak.

viii.   On March 2, 2020, RD threatened to fire Plaintiff when she asked RD how to proceed with an employee's expired nursing license, and RD stated to her, "I find your response interesting, as I was told to fire you when you violated the HIPAA law. Yet, I chose a merciful route. (Name unknown) could produce a license tomorrow, and you would have lost a valuable employee."

*Id.* at 2–4 (Compl. ¶ 12).  Also, plaintiff alleges that the discrimination she and other Black women faced from her supervisor amounted to a constructive discharge, as it caused her to relocate to the VA Hospital in Aurora, Colorado.  *Id.* at 4–5 (Compl. ¶¶ 13–24).

In total, plaintiff makes four separate Title VII claims against defendant:  (1) disparate treatment based on race (Count 1); (2) racially hostile environment (Count 2); (3) retaliation (Count 3); and (4) constructive discharge (Count 4).  Defendant has moved to dismiss all four claims under Fed. R. Civ. P. 12(b)(6).  Doc. 9.  The court identifies the applicable legal standard and explains its reasoning for its ruling on each claim, below.

II.     **Motion to Dismiss Standard Under Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Although this Rule "does not require 'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, the Supreme Court has explained, "'will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

 When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court must assume that the complaint's factual allegations are true.  *Id.* (citing *Twombly*, 550 U.S. at 555).  But the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "'Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice'" to state a claim for relief.  *Bixler v. Foster*, 596 F.3d 751, 756 (10th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).  The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]"  *Twombly*, 550 U.S. at 555 (citations omitted).

To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009)

("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

The court now turns to plaintiff's four Title VII claims, analyzing whether plaintiff's allegations satisfy this pleading standard.

## III.   Analysis

Plaintiff's Complaint alleges racial discrimination, harassment, retaliation, and constructive discharge, asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2000e-17.  Doc. 1 at 1 (Compl. ¶ 2).  Defendant moves to dismiss each of plaintiff's claims.  The court analyzes plaintiff's claims separately.  It first addresses plaintiff's constructive discharge claim from Count 4 in section A before addressing the remaining claims from Counts 1–3 in subsequent sections.

### A.  Constructive Discharge (Count 4)

Defendant argues that the court should dismiss Count 4 of plaintiff's Complaint alleging constructive discharge because plaintiff failed to exhaust her administrative remedies for such a claim.  Defendant notes that plaintiff didn't assert a constructive discharge claim in her EEO charge (Doc. 10-2) and the final agency decision never mentions constructive discharge (Doc. 10-1).[3]  Plaintiff responds, arguing that the court shouldn't dismiss her constructive discharge

---

[3]        Although a Motion to Dismiss under Rule 12(b)(6) ordinarily must rely only on the pleadings, when deciding a "motion to dismiss, courts consider both the complaint and the documents attached as exhibits to the complaint."  *Heter v. City of Hutchinson, Kan.*, 851 F. App'x 874, 875 n.2 (10th Cir. 2021); *see also* Fed R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").  And, "if a plaintiff does not incorporate by reference or attach" the administrative decision to the complaint, but the administrative decision is "referred to in the complaint and central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."  *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

Here, plaintiff's Complaint alleges that she filed an EEO complaint.  Doc. 1 at 2–4 (Compl. ¶ 12).  And it alleges that defendant issued a final agency decision on January 24, 2022.  *Id.* at 1 (Compl. ¶ 1).  But plaintiff didn't attach her administrative complaint or the final agency decision to her Complaint.

claim because it constitutes an adverse employment action supporting the fourth element of her

harassment claim, a claim she properly exhausted.  Doc. 20 at 6.

Title VII contains "'a charge filing provision that specifies with precision the

prerequisites that a plaintiff must satisfy before filing suit.'"  *Lincoln v. BNSF Ry. Co.*, 900 F.3d

1166, 1181 (10th Cir. 2018) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109

(2002) (quotation cleaned up)).  The charge-filing requirement generally prohibits a plaintiff

from bringing "a Title VII action based upon claims that were not part of a timely-filed EEOC

charge for which the plaintiff has received a right-to-sue-letter."  *Id.* (quotation cleaned up).

Failing to exhaust administrative remedies is an affirmative defense, not a jurisdictional bar to

suit.  *Id.* at 1185.  Thus, the court analyzes "administrative exhaustion under a 12(b)(6), rather

than the 12(b)(1) standard[.]"  *Khalifah v. Brennan*, No. 19-CV-2240-JAR-KGG, 2020 WL

1028299, at *2 (D. Kan. Mar. 3, 2020).

The exhaustion requirement serves two principal purposes:  (1) "to give notice of the

alleged violation to the charged party;" and (2) "to give the EEOC an opportunity to conciliate

the claim, which effectuates Title VII's goal of securing voluntary compliance."  *Smith v.

Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (quotation cleaned up).  So, to

promote the purposes of the exhaustion rule, a "plaintiff's claim in court is generally limited by

the scope of the administrative investigation that can reasonably be expected to follow the charge

of discrimination submitted to the EEOC."  *Id.* (quotation cleaned up).

---

Instead, defendant submitted these documents as exhibits to its Motion to Dismiss.  Docs. 10-1, 10-2.
Plaintiff's Complaint refers to these documents and they are central to her claims.  Plaintiff argues that the
court shouldn't accept the conclusions of the final agency decision "as 'facts' in this matter as there is
incomplete discovery[.]"  Doc. 20 at 5.  But she never disputes the authenticity of the documents.  Thus,
the court considers the EEOC's final agency decision and plaintiff's EEO complaint attached to
defendant's Motion to Dismiss for the purpose of determining whether plaintiff properly exhausted her
remedies.  Binding Circuit authority authorizes this approach and allows the court to do so without
converting defendant's motion to a motion for summary judgment under Fed. R. Civ. P. 12(d).

Although courts "'liberally construe' the plaintiff's allegations in the EEOC charge, 'the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim[.]'" *Id.* (quoting *Jones v. United Parcel Serv.*, 502 F.3d 1176, 1186 (10th Cir. 2007)). "The ultimate question is whether the conduct alleged [in the lawsuit] would fall within the scope of an EEOC investigation which would reasonably grow out of the charges actually made [in the EEOC charge]." *Id.* at 1164–65 (quotation cleaned up).

Plaintiff here argues that her "constructive discharge claim is part and parcel of the harassment claim," and thus, "administrative exhaustion occurred." Doc. 20 at 7. Plaintiff alleges that her constructive discharge from the Wichita VA occurred "in or about 2020[,]" Doc. 1 at 9 (Compl. ¶ 44), but she didn't make a separate constructive discharge claim in her EEO complaint, *see* Doc. 10-2. Nor does the EEOC's final agency decision discuss a separate constructive discharge claim or even reference constructive discharge in any fashion. *See* Doc. 10-1. And neither the EEO complaint nor the final agency decision mentions Colorado or plaintiff's leaving the Wichita VA location. In short, plaintiff can't connect the dots to explain how her alleged constructive discharge "fall[s] within the scope of an EEOC investigation which would reasonably grow out of the charges" in her EEO complaint when neither that complaint nor the final agency decision discusses it. *Smith*, 904 F.3d at 1164.

Instead, plaintiff cites numerous out-of-circuit decisions to support her contention that her EEO complaint and the EEOC's final agency decision don't need to include discrete facts about her constructive discharge claim to exhaust that claim administratively, as long as it's related to the elements of her harassment claim. Doc. 20 at 6–7. Also, she cites *Green v. Brennan*, 578 U.S. 547, 559 (2016) for the proposition that "a hostile work environment claim is a lesser included component of the graver claim of hostile-environment constructive discharge"

as support for her argument that the constructive discharge is wrapped up in her harassment claim.[4]  Doc. 20 at 7.  But plaintiff's assertions contradict both our Circuit's precedent and *Green* itself.  Contrary to plaintiff's contention, the Tenth Circuit held that "each discrete incident . . . constitutes its own 'unlawful employment practice'" for which plaintiff must exhaust her administrative remedies.  *Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) (citing *Morgan*, 536 U.S. at 110–13).  And in *Green*, the Supreme Court "expressly held that constructive discharge is a claim distinct from the underlying discriminatory act."  *Green*, 578 U.S. at 559 (citing *Penn. State Police v. Suders*, 542 U.S. 129, 149 (2004)).  Thus, plaintiff's argument and the out-of-circuit cases she cites don't persuade the court.

In sum, plaintiff can't dodge the exhaustion requirement simply by arguing that her constructive discharge claim stems from her harassment claim as an adverse employment action.  Because her EEO complaint and the final agency decision omit any reference to constructive discharge, plaintiff hasn't administratively exhausted a separate claim for constructive discharge.  The court thus grants defendant's Motion to Dismiss Count 4's constructive discharge claim.[5]

---

[4]      Plaintiff also inverts her own reasoning here.  Even though the Supreme Court in *Green* held that a hostile work environment claim is part of the larger constructive discharge claim, plaintiff unsuccessfully tries to argue the opposite—that her constructive discharge is part of the hostile work environment claim.  The court doesn't conclude here that this logical swap is persuasive.

[5]      Before the Tenth Circuit's ruling in *Lincoln*, district courts in our Circuit treated exhaustion as a jurisdictional requirement and thus dismissed claims without prejudice for failure to exhaust.  *See, e.g.*, *Strozier v. Potter*, 71 F. App'x 802, 803 (10th Cir. 2003) (holding that "a dismissal for lack of subject matter jurisdiction should be without prejudice").  But now, courts in our Circuit apply the standard for dismissal under 12(b)(6) when plaintiff has failed to exhaust.  *Khalifah*, 2020 WL 1028299 at *2.  Under 12(b)(6), courts generally dismiss claims with prejudice when it's "'patently obvious that the plaintiff could not prevail on the facts alleged and allowing her an opportunity to amend her complaint would be futile.'"  *Seale v. Peacock*, 32 F.4th 1011, 1029 (10th Cir. 2022) (quoting *Knight v. Mooring Cap. Fund, LLC*, 749 F.3d 1180, 1190 (10th Cir. 2014)).  Here, because the alleged constructive discharge occurred "in or about 2020[,]" Doc. 1 at 9 (Compl. ¶ 44), the statutory 180-day period for plaintiff to bring an EEOC charge on that claim has lapsed.  *See* 42 U.S.C. § 2000e-5(e)(1).  Plaintiff's ability at this juncture to amend her Complaint and overcome her failure to exhaust has crossed the futility threshold.  The court thus dismisses Count 4's constructive discharge claim in the same manner as the other dismissals in this Order under 12(b)(6)—with prejudice.

### B.  Disparate Treatment (Count 1)

The court next addresses Count 1's claim for disparate treatment.  Defendant's motion asserts that this claim fails to state a plausible claim.  Defendant challenges Count 1 on two fronts—failure to exhaust and failure to allege enough facts to meet the requirements of plaintiff's prima facie case.

"To set forth a prima facie case of [disparate treatment] discrimination, a plaintiff must establish that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she qualified for the position at issue, and (4) she was treated less favorably than others not in the protected class." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012).  "A complaint raising a claim of discrimination does not need to conclusively establish a prima facie case of discrimination, but it must contain more than '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Bekkem v. Wilkie*, 915 F.3d 1258, 1274 (10th Cir. 2019) (holding that plaintiff, at motion to dismiss stage, need not meet an evidentiary standard of proof, but must allege some facts to support a plausible claim) (quoting *Khalik*, 671 F.3d at 1193 (quotation cleaned up)).

While the controlling law doesn't "mandate the pleading of any specific facts in particular, a plaintiff must include enough context and detail to link the allegedly adverse employment action to a discriminatory or retaliatory motive with something besides sheer speculation." *Id.* at 1274–75 (quotation cleaned up).  "'[A] plaintiff should have'—and must plead—'at least some relevant information to make the claims plausible on their face.'" *Id.* at 1275 (quoting *Khalik*, 671 F.3d at 1193).

The court's analysis begins with defendant's exhaustion argument.  This part of the analysis eliminates some aspects of plaintiff's disparate treatment claim, but others survive.  So,

the court also considers defendant's second argument, one focusing on the sufficiency of plaintiff's pleading.

### 1. Administrative Exhaustion

Defendant argues that plaintiff failed to exhaust several of the factual allegations she makes to support her disparate treatment claim.  Doc. 10 at 8.  Specifically, defendant contends that plaintiff introduces new, unexhausted claims when she alleges that:  (1) she received unfavorable treatment in unidentified disciplinary matters (citing Doc. 1 at 5 (Compl. ¶ 20)); (2) she received discipline for not performing job duties (citing *id.* at 4 (Compl. ¶ 19)); (3) her supervisor subjected her to heightened scrutiny (citing *id.* (Compl. ¶ 17)); (4) her supervisor forced her to work overtime without compensation (citing *id.* at 6 (Compl. ¶ 31(c))); and (5) her treatment constituted constructive discharge (citing *id.* (Compl. ¶ 31(d)).  Doc. 10 at 8.  But defendant's exhaustion argument isn't faithful to the procedural standard governing her motion. That's so because defendant doesn't view plaintiff's claims in her favor to determine whether they "follow the charge of discrimination submitted to the EEOC."  *Smith*, 904 F.3d at 1164 (quotation cleaned up).

When the court views the Complaint's factual contentions in plaintiff's favor, it concludes that the first three facts cited by defendant's argument—unfavorable disciplinary treatment, discipline for unperformed job duties, and heightened scrutiny by her supervisor— conform to the claims addressed in the EEOC's final agency decision.  Plaintiff's allegations of "unfavorable treatment" in disciplinary matters and heightened scrutiny are close enough to the claims summarized in the EEOC's final agency decision that they fall "within the scope of an EEOC investigation which would reasonably grow out of the charges[.]"  *Smith*, 904 F.3d at 1164 (quotation cleaned up).  A favorable construction of plaintiff's allegation that her supervisor unfairly disciplined her aligns with the charges addressed in the final agency decision,

ones that claimed plaintiff's supervisor yelled at her in public, increased her workload, and didn't allow her to speak at meetings with administration. *Compare* Doc. 1 at 2–3 (Compl. ¶¶ 12(a)(i), 12(a)(iv), 12(a)(v)), *with* Doc. 10-1 at 1 (describing plaintiff's claims in the final agency decision). Plaintiff's factual allegation that her supervisor had disciplined her for not performing her duties reasonably tracks references in the final agency decision addressing plaintiff's claims that she was required to complete the model staffing duty without proper training. *Compare* Doc. 1 at 3 (Compl. ¶ 12(a)(ii)), *with* Doc. 10-1 at 2. And plaintiff's allegation that her supervisor subjected her to heightened scrutiny effectively paraphrases several of the charges referenced in the final agency decision. *Compare* Doc. 1 at 2–4 (Compl. ¶¶ 12(a)(i), 12(a)(iii), 12(a)(v), 12(a)(vi), 12(a)(vii), 12(a)(viii)), *with* Doc. 10-1 at 1.

But the last two facts cited by defendant's disparate treatment argument—that plaintiff's treatment constituted constructive discharge and her supervisor forced her to work overtime without compensation—are different. The court already has explained why plaintiff didn't administratively exhaust her constructive discharge claim, *see supra* Part III.A. (dismissing plaintiff's separate constructive discharge claim). And the same reasoning applies to her purported constructive discharge as part of her disparate treatment claim. Plaintiff's attempt to use constructive discharge as a factual contention supporting her disparate treatment claim— rather than as a separate claim unto itself[6]—doesn't change the analysis or conclusion. Plaintiff didn't exhaust this allegation administratively, so she can't use it to support her disparate treatment claim.

---

[6]     Plaintiff's contention also ignores that the Supreme Court "expressly held that constructive discharge is a claim distinct from the underlying discriminatory act." *Green*, 578 U.S. at 559 (citing *Penn. State Police v. Suders*, 542 U.S. 129, 149 (2004)).

The same reasoning applies to plaintiff's allegation of forced overtime without pay. Plaintiff argues that this allegation, like others, connects directly to the issues addressed in the EEOC's final agency decision.[7]  Doc. 20 at 9.  But the allegation that plaintiff's supervisor forced her to work overtime without pay is a distinct and sufficiently severe event that the court can't fairly construe anything in the final agency decision to establish that plaintiff exhausted this factual contention.  *See Smith*, 904 F.3d at 1165 (holding that the EEOC charge itself determines the "reasonable and likely scope of the investigation").  Plaintiff's charge never alleges anything about forced overtime without pay.  Doc. 10-2.

### 2.  *Pleading Sufficient Facts*

Because plaintiff properly exhausted three of the five allegations she uses to support her disparate treatment claim, the court's analysis must continue.  Specifically, the court turns next to defendant's argument that plaintiff fails to plead facts that—if true—could support a disparate treatment claim.  *See* Doc. 10 at 9–17.

Defendant first argues that plaintiff's pleading fails because her Complaint doesn't specifically identify a similarly situated employee who defendant treated differently.  *Id.* at 9–10. The court doesn't find this argument persuasive.  Defendant hasn't directed the court to any authority holding that a disparate treatment plaintiff—to survive a motion to dismiss—must plead the name of a similarly situated, undisciplined person (or otherwise identify the person "specifically").  Were the court to impose this requirement at this stage of the case, it would cross the line drawn by *Bekkem*.  That is, defendant's approach would require more than the kind of "context and detail [needed] to link the allegedly adverse employment action to a

---

[7]    Plaintiff also argues that the overtime contention and others are contained in the EEOC's Report of Investigation (ROI).  Doc. 20 at 9.  But neither party has attached the ROI to its pleadings or its briefing on the Motion to Dismiss as an exhibit.  Thus, plaintiff can't rely on it to survive the Motion to Dismiss.

discriminatory motive." *Bekkem*, 915 F.3d at 1274–75 (quotation cleaned up). Such a requirement instead would force the complaint to plead "specific facts"—something our Circuit doesn't require to survive a motion to dismiss. *Id.*

Defendant's second argument marshals a broader attack on the Complaint's sufficiency. It asserts that the Complaint never alleges facts to support the second requirement of a prima facie claim for disparate treatment. Doc. 10 at 10–17. This second element requires plaintiff to plead facts showing she sustained an adverse employment action.[8] *Khalik*, 671 F.3d at 1192.

Plaintiff responds by noting that her Complaint alleges the following:

- her supervisor discredited her (and other Black coworkers) in the eyes of upper management by refusing to permit her to present at meetings where she was asked to speak;
- her supervisor contradicted plaintiff's directions to her staff;
- her supervisor yelled at plaintiff in a public area;
- her supervisor assigned plaintiff duties she couldn't possibly complete within the allotted time; and
- her supervisor failed to train her.

Doc. 20 at 9–11; *see also* Doc. 1 at 2–4, 6 (Compl. ¶¶ 12(a), 31). Whether these allegations plead sufficient facts to establish the requisite adverse employment action is a close question.

Controlling Circuit authority identifies what qualifies as an "adverse employment action." This term requires a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252

---

[8]      Defendant cites *Babb v. Wilkie*, 140 S. Ct. 1168 (2020), to support an argument that the court should limit adverse employment actions in federal sector employment discrimination cases to the "adverse personnel actions" listed in 5 U.S.C. § 2302(a)(2)(A). Doc. 10 at 11–12. But *Babb* addressed a different act—the Age Discrimination in Employment Act of 1967. And, as defendant concedes, this definition was proposed as dicta in *Babb*. Our Circuit hasn't applied the list of "adverse personnel actions" in Title VII cases since the Supreme Court decided *Babb*. Instead, post-*Babb*, our Circuit has continued to apply the "adverse employment action" standard to federal sector Title VII claims. *See Guy v. McDonough*, No. 20-6158, 2021 WL 3854764, at *2 (10th Cir. Aug. 30, 2021). Following our Circuit's lead, the court declines to use the list found in § 2302(a)(2)(A) as defendant proposes.

(10th Cir. 2021) (quotation cleaned up).  But other controlling authority characterizes a plaintiff's burden at the prima facie stage as one that "is not onerous."  *Ford v. Jackson Nat'l Life Ins. Co.*, 45 F.4th 1202, 1222 (10th Cir. 2022).  Adverse employment action doesn't require, for example, allegations of "'monetary losses in the form of wages or benefits.'"  *Id.* (quoting *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1279 (10th Cir. 2010)).

This test casts substantial doubt about the sufficiency of some of plaintiff's allegations of adverse action.  For example, having a supervisor yell at the plaintiff—even "in a public area"—just won't carry the day.  *See Hoko v. Huish Detergents, Inc.*, 453 F. App'x 799, 802–03 (10th Cir. 2011) (affirming summary judgment against disparate treatment claim and concluding that "being yelled at by" supervisor didn't amount to adverse action).  Some of plaintiff's other allegations, however, present a more nuanced question.  For example, plaintiff's supervisor allegedly "required Plaintiff to complete the staffing model duty, without providing her Nurse Manager training."  Doc. 1 at 3 (Compl. ¶ 12(a)(ii)).  Failing to train an employee, "[u]nder some circumstances . . . may constitute an adverse employment action."  *Dial v. McDonough*, No. 21-cv-01071-KHV-ADM, 2022 WL 17289152, at *9 (D. Kan. Nov. 29, 2022) (citing *Durkin v. City of Chicago*, 341 F.3d 606 (7th Cir. 2003), among others).

While it's a close call, the Complaint here alleges just enough to survive a motion to dismiss.  Whether plaintiff can adduce the kind of "objective evidence" required at summary judgment is a different question.  *See Ford*, 45 F.4th at 1223–24 (affirming summary judgment against plaintiff's disparate treatment claim both because she lacked evidence and because—had she produced such evidence—the alleged behavior wouldn't have met the standard of an "adverse employment action").  But for now, and by a slim margin only, the court concludes that plaintiff adequately pleads facts capable of supporting a finding or inference of "adverse

employment action."  The court thus denies defendant's Motion to Dismiss plaintiff's disparate

treatment claim in Count 1 based on insufficient facts for a prima facie case.

### C.  Hostile Work Environment (Count 2)

The court next addresses defendant's argument that Count 2's claim for racially hostile

work environment fails to state a claim upon which the court may grant relief.  Title VII of the

Civil Rights Act of 1964 prohibits employers from "discriminat[ing] against any individual with

respect to [her] compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex, or national origin . . . ."  42 U.S.C. § 2000e-2(a)(1).  The

statute's reference to "terms, conditions, or privileges of employment" isn't limited to economic

or tangible discrimination—it also prohibits requiring employees "to work in a discriminatorily

hostile or abusive environment."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (citing

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)).  An employer thus can violate Title

VII by maintaining a workplace "permeated with 'discriminatory intimidation, ridicule, and

insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment

and create an abusive working environment.'"  *Id.* (quoting *Meritor*, 477 U.S. at 65, 67).

To plead a plausible Title VII claim based on racial harassment, plaintiff must plausibly

allege facts capable of supporting a reasonable finding or inference "that under the totality of the

circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions,

or privilege of employment, and (2) the harassment was racial or stemmed from racial animus."

*Chavez v. New Mexico*, 397 F.3d 826, 832 (10th Cir. 2005) (quotation cleaned up).  Here,

defendant challenges both elements of plaintiff's hostile work environment claim.  In short form,

defendant argues that plaintiff fails to allege facts supporting a plausible inference that (1) her

supervisor's conduct was sufficiently pervasive or severe, and (2) the alleged conduct had no

relationship to plaintiff's race.  Doc. 10 at 17.  The court addresses these two arguments in separate subsections, below.

### 1.  Pervasive or Severe Behavior

The Tenth Circuit has explained that "pervasiveness and severity are independent and equal grounds upon which a plaintiff may establish this element of a hostile environment claim." *Tademy v. Union Pac. Corp.*, 614 F.3d 1132, 1144 (10th Cir. 2008) (quotation cleaned up).  But pervasiveness and severity "'are, to a certain degree inversely related; a sufficiently severe episode may occur as rarely as once . . . , while a relentless pattern of lesser harassment that extends over a long period of time also violates the statute.'"  *Id.* (quoting *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002)).

Determining whether the workplace is an objectively hostile work environment isn't "a mathematically precise test."  *Harris*, 510 U.S. at 22.  This principle means the court must examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *Id.* at 23.  But, when judging hostility, the court must ensure that it doesn't turn Title VII into a "general civility code."  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quotation cleaned up).  Conduct "that is merely offensive" doesn't violate Title VII.  *Harris*, 510 U.S. at 21.  To the contrary, Title VII only prohibits conduct that is "severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive[.]"  *Id.*

Plaintiff accurately contends that our Circuit has held that the "'severity and pervasiveness evaluation is particularly unsuited for summary judgment because it is quintessentially a question of fact, and it is even less suited for dismissal on the pleadings.'"

Doc. 20 at 17–18 (quoting *Doe v. Sch. Dist. No. 1, Denver, Colo.*, 970 F.3d 1300, 1312 (10th Cir. 2020)).[9]  Yet a plaintiff still "'should have'—and must plead—'at least some relevant information to make the claims plausible on their face.'"  *Bekkem*, 915 F.3d at 1275 (quoting *Khalik*, 671 F.3d at 1193).

Here, plaintiff argues that the claims listed in the EEOC's final agency decision support her hostile work environment claims.  *See supra*, Part I at 2–3 (listing the claims included in the final agency decision); *see also* Doc. 1 at 2–4 (Compl. ¶ 12).  These allegations span from April 2018 "through the present,"[10] with the latest discrete incident allegedly occurring in March 2020.  *Id.*  Defendant tries to isolate plaintiff's claims, arguing that none reaches the "type of 'extreme' conduct necessary to plausibly state a claim for hostile work environment."  Doc. 10 at 21.  But that's not how it works.

The court must view plaintiff's allegations—particularly at the pleading stage of a case—in their totality, drawing all inferences in plaintiff's favor.  *Morris v. City of Colo. Springs*, 666 F.3d 654, 665 (10th Cir. 2012) (explaining that courts must consider viability of sexual harassment claims by "[a]ddressing each allegation and considering them under a totality of the circumstances"); *see also Brooks*, 985 F.3d at 1281 (explaining that courts, on a Rule 12(b)(6) motion to dismiss, must view plaintiff's allegations "in the light most favorable to [her], and draw all reasonable inferences from the facts" in her favor).  Viewing plaintiff's allegations in their totality—as the court must—the repetition of incidents across a two-year period could

---

[9]     Plaintiff's Response cites *Bekkem* for this proposition.  *See* Doc 20 at 17–18, citing 915 F.3d at 1275.  *Bekkem* doesn't appear to contain this language, but *Doe* does.

[10]     The content of some of plaintiff's allegations won't convert to ones that could span two years' time.  For instance, plaintiff describes a specific incident of alleged yelling and intimidation by her supervisor in her first claim from the final agency decision, but states that it occurred "[f]rom April 2018 through the present."  Doc. 1 at 2–3 (Compl. ¶ 12(a)(i)).  The court construes this portion of plaintiff's Complaint only to reference a single incident.

permit a factfinder to make a reasonable finding or inference of pervasive behavior, even if none of the individual instances could qualify as severe.

### 2. Alleged Conduct's Relationship to Plaintiff's Race

Plaintiff's hostile work environment claim relies on several alleged actions taken by her supervisor. None of them is explicitly racial in nature. General harassment isn't actionable—the harassment must stem from racial animus. *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994). So, a plaintiff must show "'more than a few isolated incidents of racial enmity'" or "sporadic racial slurs." *Id.* (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987)). Instead, a plaintiff must show "a steady barrage of opprobrious racial comments." *Id.* (citing *Hicks*, 833 F.2d at 1412–13).

Here, the conduct plaintiff alleges falls far short of this standard. None of the incidents alleged in the Complaint and referenced in the final agency decision involve an inference of racial animus, even under the most liberal of readings. Plaintiff instead relies on the legal conclusion that the alleged "harassment was based upon [her] race[.]" Doc. 1 at 7 (Comp. ¶ 35(c)). Unfortunately for plaintiff, this conclusion—without more—can't suffice to support a plausible inference that the alleged "harassment was racial or stemmed from racial animus." *Bolden*, 43 F.3d at 551.

The court thus grants defendant's Motion to Dismiss this claim. Plaintiff's allegations fail to meet one of the two requirements for a plausible claim of hostile work environment.

### D. Retaliation (Count 3)

Finally, the court addresses defendant's argument that plaintiff's claim in Count 3 fails to state a plausible claim for retaliation. Title VII prohibits an employer from retaliating against an employee "because [s]he has opposed any practice made an unlawful employment practice by" Title VII. 42 U.S.C. § 2000e-3(a). To state a prima facie case of retaliation, a plaintiff must

allege:  "(1) that [s]he engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action."  *Khalik*, 671 F.3d at 1193 (quotation cleaned up).  Here, plaintiff's Complaint plausibly pleads all three elements of a Title VII retaliation claim.

*First*, plaintiff alleges that she engaged in protected activity by meeting with the Chief of Staff to discuss her supervisor's behavior on January 24, 2020.  Doc. 1 at 3 (Compl. ¶ 12(a)(iv)).  This allegation, if true, could support a reasonable finding of a protected opposition.

*Second*, plaintiff alleges actions that a reasonable employee would have found materially adverse.  Specifically, plaintiff asserts that her supervisor increased her workload after her meeting with the Chief of Staff.  *Id.*[11]  Our Circuit has held that an increased workload can constitute a materially adverse employment action.  *See Jones v. Barnhart*, 349 F.3d 1260, 1269–70 (10th Cir. 2003) (holding that "an increased workload might constitute an adverse employment action in some circumstances," but a "generalized" claim won't suffice); *see also Dial*, 2022 WL 17289152, at *10 (holding a supervisor increasing a Black VA employee's workload constituted an adverse employment action).  Here, the Complaint alleges enough facts to plead a materially adverse action by defendant.

And *third*, plaintiff has alleged facts from which a reasonable factfinder could find or infer a causal connection between the protected activity and the materially adverse action.  Plaintiff alleges that her increase in workload occurred after her meeting with the Chief of Staff.  Doc. 1 at 3 (Compl. ¶ 12(a)(iv)).  The Tenth Circuit has "recognized that protected conduct

---

[11]     Plaintiff alleges other incidents that she argues constitute materially adverse employment actions.  But the court need not address those here because it concludes her allegation of an increased workload qualifies as a materially adverse employment action sufficient to state a plausible retaliation claim at the motion to dismiss stage.

closely followed by adverse action may justify an inference of retaliatory motive." *Marx v. Schnuck Mkts., Inc.*, 76 F.3d 324, 329 (10th Cir. 1996).  Plaintiff's pleading isn't a model one because it never alleges how close in time these events allegedly occurred.  But consistent with the governing procedural standard, the court construes plaintiff's allegations in her favor to assert that her increased workload occurred shortly after her meeting.  Thus, the temporal proximity between her protected action and her supervisor's conduct demonstrate "factual content that allows the court to draw the reasonable inference that the defendant is liable" for the racial discrimination alleged.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Taking these facts as true and viewing them in plaintiff's favor, plaintiff has alleged a plausible Title VII retaliation claim.  Thus, the court declines to dismiss this claim.

## IV.    Conclusion

The court holds that plaintiff failed to exhaust her constructive discharge claim in Count 4 because she failed to assert it in the EEOC's administrative proceedings.  The court thus grants defendant's Motion to Dismiss targeting the constructive discharge claim in Count 4 of the Complaint.

The court also holds that plaintiff has failed to plead sufficient facts to support a reasonable finding or inference that the conduct relied on for her hostile work environment claim was motivated by racial animus.  The court thus grants defendant's Motion to Dismiss Count 2's claim for hostile work environment.

But plaintiff has alleged sufficient facts capable of supporting a finding or reasonable inference of liability for the disparate treatment claim (Count 1) and for retaliation (as alleged in Count 3).  The court thus denies defendant's Motion to Dismiss Counts 1 and 3.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's Motion to Dismiss (Doc. 9) is granted in part, and denied in part, as this Order defines in full.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's Motion to Dismiss Counts 2 and 4 is granted, and these two claims are dismissed with prejudice.

**IT IS FURTHER ORDERED BY THE COURT THAT** defendant's Motion to Dismiss Counts 1 and 3 of the Complaint (Doc. 1) is denied.

**IT IS SO ORDERED.**

**Dated this 12th day of January, 2023, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**