3/24/2023                                                                1

# DASHAUN MCCRAY

1   .

2            IN THE UNITED STATES DISTRICT COURT

3            FOR THE DISTRICT OF KANSAS

4   .

5   .

6   DASHAUN MCCRAY,

7            Plaintiff,

8   .

9       VS.              Case No. 2:22-cv-02154-DDC-ADM

10  .

11  DENIS MCDONOUGH, in his

12  Capacity as Secretary of the

13  Department of Veterans Affairs,

14            Defendant.

15  .

16  .

17            VIDEOTAPED DEPOSITION OF

18                DASHAUN MCCRAY,

19  taken on behalf of the Defendant pursuant to the

20  Kansas Code of Civil Procedure before Rachelle

21  Smith, a Certified Shorthand Reporter of Kansas,

22  at U.S. Attorneys Office, 301 North Main, Suite

23  1200, Wichita, Sedgwick County, Kansas, on March

24  24, 2023 beginning at 9:37 a.m.

25  .

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1                          APPEARANCES

2       .

3       .

4   ON BEHALF OF THE PLAINTIFF:

5       .

6       Mr. Daniel A. Thomas

7       Humphrey, Farrington & McClain

8       221 West Lexington Avenue

9       Suite 400

10      Independence, Missouri 64050

11      816-836-5050

12      dat@hfmlegal.com

13      .

14      Ms. Rebecca M. Randles (via Zoom)

15      Randles Mata, LLC

16      851 NW 45th Street

17      Suite 310

18      Kansas City, Missouri 64116

19      816-931-9901

20      rebecca@randlesmatalaw.com

21      .

22      .

23      .

24      .

25      .



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

```
 1    ON BEHALF OF THE DEFENDANT:

 2        .

 3        Mr. Brian E. Vanorsby

 4        United States Attorney's Office

 5        301 North Main, Suite 1200

 6        Wichita, Kansas 67202

 7        316-269-6481

 8        brian.vanorsby@usdoj.com

 9        .

10        Ms. Kathleen M. Hunter (via Zoom)

11        Department of Veterans Affairs

12          Office of Chief Counsel, Midwest Division

13        1010 Walnut Street, Suite 210

14        Kansas City, Missouri 64106

15        816-572-8699

16        kathleen.hunter@va.gov

17        .

18        .

19    ALSO PRESENT:

20        Mr. Brett Knapp, videographer

21        Ms. Phyllis Creed

22        .

23        .

24        .

25        .
```

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1                               INDEX

2       .

3       .

4    Certificate ----------------------------- 305

5       .

6       .

7                               WITNESS

8    ON BEHALF OF THE DEFENDANT:                      PAGE

9    DASHAUN MCCRAY

10   DIRECT EXAMINATION BY MR. VANORSBY                  7

11   CROSS EXAMINATION BY MR. THOMAS                   271

12   REDIRECT EXAMINATION BY MR. VANORSBY              292

13      .

14      .

15                              EXHIBITS

16   MCCRAY DEPOSITION EXHIBIT NO.:

17   No 1   Plaintiff's Rule 26 Disclosures           15

18   No 2   Scheduling Order                          17

19   No 3   Appointment Affidavits                    56

20   No 4   Board Action 1-7-2016                     68

21   No 5   Board Action 2-16-2017                    69

22   No 6   Board Action 1-18-2018                    71

23   No 7   Board Action 2-15-2018                    72

24   No 8   Memorandum                                74

25   No 9   Proposed Reprimand                        82



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street            6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604                  Suite 101                   Suite 305
785-273-3063               Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com             913-383-1131               316-201-1612

## DASHAUN MCCRAY

1   No 10   Reprimand Decision                        85
2   No 11   Complaint of Employment
3           Discrimination                            93
4   No 12   Notice of Acceptance of
5           EEO Complaint                             95
6   No 13   Written Affidavit                         96
7   No 14   Complaint and Jury Demand                 98
8   No 15   Talent Management System                  117
9   No 16   Deposition of DaShaun McCray              117
10  No 17   Agency's Discovery Requests
11          to Complainant                            134
12  No 18   Various Responses                         135
13  No 19   Email Timeline                            157
14  No 20   Additional Information                    171
15  No 21   Performance Plan and Appraisal            176
16  No 22   Executive Career Field Performance
17          Appraisal Program                         179
18  No 23   Table of Penalties for Title 5 and
19          Title 38 Employees                        183
20  No 24   Follow up to Meeting                      199
21  No 25   Email of Housing and Utilities
22          Expenses                                  207
23  No 26   Notification of Personnel Action          221
24  No 27   Interrogatories to Plaintiff              222
25  No 28   Medical Bills                             253



5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

```
 1   No 29   Affidavit of Custodian of
 2           Medical Records                                    266
 3         .
 4         .
 5         .
 6         .
 7         .
 8         .
 9         .
10         .
11         .
12         .
13         .
14         .
15         .
16         .
17         .
18         .
19         .
20         .
21         .
22         .
23         .
24         .
25         .
```

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

3/24/2023                                                                                    7

## DASHAUN MCCRAY

1          THE VIDEOGRAPHER:  Today is the 24th day

2      of March, 2023, and the time is approximately 9:37

3      a.m.  We are here at the U.S. Attorney's office in

4      Wichita, Kansas to take the deposition of DaShaun

5      McCray in the matter of DaShaun McCray versus

6      Denis McDonough, et al, Case Number 2:22-CV-02154-

7      DDC-ADM.

8          Would counsel please state your appearance

9      for the record.

10          MR. THOMAS:  Danny Thomas for plaintiff.

11          MR. VANORSBY:  Brian Vanorsby on behalf

12      of defendant.  I also have Kathleen Hunter who

13      appears personally by Webex.  And Phyllis Creed is

14      to my right.

15          DASHAUN MCCRAY,

16      was thereupon called as a witness herein, and

17      after having first been duly sworn to testify to

18      the truth, the whole truth and nothing but the

19      truth, was examined and testified as follows:

20      DIRECT EXAMINATION

21      BY MR. VANORSBY:

22      Q.    **Good morning.**

23      A.    Good morning.

24      Q.    **My name is Brian Vanorsby, I represent**

25  **the defendant in this case.  Can you start by**



### DASHAUN MCCRAY

1   giving your name for the record.

2       A.   My name is DaShaun McCray.

3       Q.   Can you spell that as well.

4       A.   D-A-S-H-A-U-N, M-C-C-R-A-Y.

5       Q.   Okay.  And I've seen your name

6   capitalized in various different ways.

7       A.   Capital S in my first name and a capital

8   C for the second C.

9       Q.   Okay.  And we're going to get to some

10   ground rules here in just a second, but what I

11   want to mention is that in order to get a clear

12   record we can't be talking over each other.  So,

13   one thing I'll try to do, is I will try not to

14   interrupt you when you are talking, and for me,

15   just allow me to finish the question before we

16   talk.  I am not being rude, it's just for we got

17   a court reporter here who is going to make sure we

18   get a clear record.  Okay?

19       A.   Understood.

20       Q.   Okay.  Great.  Have you ever taken a

21   deposition before?

22       A.   Yes.

23       Q.   Okay.  And when did you take that

24   deposition, or how many?

25       A.   One.



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    Q.    One.    Okay.    When did you take that
2  deposition?
3    A.    I can't recall the date, but it was
4  within the last year.
5    Q.    Okay.    And what case was that regarding?
6    A.    Elizabeth Dial versus Denis McDonough.
7    Q.    I will make an assumption, based off of
8  what I know, but were you testifying as a witness
9  on behalf of Miss Dial?
10    A.    Yes.
11    Q.    Okay.    So I'll just go through the ground
12  rules pretty quickly since you had your deposition
13  taken before, it's been  pretty recently, but I'll
14  say upfront that, you know, this is a deposition,
15  this is my one time to speak with you before we
16  get to Summary Judgment or to trial.  Do you
17  understand that?
18    A.    Yes.
19    Q.    Okay.  So it's critically important that
20  we get a clear record and that we have open and
21  honest answers and we get all the information that
22  needs to come out today, okay?
23    A.    Yes.
24    Q.    Okay.  One of the ground rules I like to
25  cover kind of starting out is that it is important


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    that you speak audibly, so yeses and nos, no huh-
2    uhs or uh-huhs or nodding, shaking your head.  We
3    do have a camera here today so that's going to
4    come out, but it won't be on the actual written
5    record, so it's  important that we always speak
6    audibly, okay?
7         A.    Yes.
8         Q.    And there may be a time where you give me
9    an uh-huh or huh-uh or you shake your head or say
10   no or shake up and down or left to right and I
11   might ask is that a yes or is that a no.  Again,
12   I'm not being rude I just want to make sure that
13   we get a clear record, okay?
14        A.    Understood.
15        Q.    All right.  This is not the inquisition,
16   if you need a break let me know.  We'll make sure
17   to get you a break whenever you need it.  If
18   there's a question pending, I may ask you to go
19   ahead and answer the question and we can take a
20   break, okay?
21        A.    Understood.
22        Q.    Okay.  Great.  There may be a time during
23   this discussion that I ask a horrible question,
24   happens all the time, something you may not
25   understand, like, what is this guy talking about,



## DASHAUN MCCRAY

1  let me know, okay, if you are confused about a

2  question, okay?

3      A.    Yes.

4      Q.    Okay.  And if you don't let me know I'm

5  going to assume that you understood the question

6  that I asked, is that fair?

7      A.    Yes.

8      Q.    Okay.  There is also going to be times

9  where your counsel is going to object to a

10  question.  Unless you're specifically told not to

11  answer you can go ahead and answer the question,

12  okay?

13     A.    Yes.

14     Q.    All right.  Are you under the influence

15  of any medications or drugs that might influence

16  your ability to tell the truth today?

17     A.    No.

18     Q.    Okay.  Same question with regard to your

19  ability to recall?

20     A.    No.

21     Q.    I want to make sure I am getting that

22  correctly.  So you are not under the influence of

23  any drugs or medications that would influence your

24  ability to recall; is that correct?

25     A.    Yes.


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1    Q.    Okay.  See, that was an example of a bad

2    question.  So I will work on that.

3        Is there any reason at all that you would not

4    be able to give a truthful answer to the question

5    that I ask today?

6    A.    No.

7    Q.    Okay.  Do you understand that you are

8    under oath today?

9    A.    Yes.

10    Q.    Okay.  Do you understand that's the same

11    oath that you might take in a court of law if

12    this case went to trial?

13    A.    Yes.

14    Q.    What did you do to prepare for this

15    deposition today?

16        MR. THOMAS:  I will object to the extent

17    it calls for attorney/client privilege.  You are

18    not to disclose anything that you discussed with

19    me or that you did at my direction.

20    BY MR. VANORSBY:

21    Q.    What did you do to prepare for this

22    deposition today?

23    A.    Traveled to Kansas.

24    Q.    Okay.  Did you review any documents?

25    A.    No.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1       Q.    Did you review any documents at the

2   direction of your counsel?

3       A.    No.

4       Q.    Okay.  Did you speak to anybody, other

5   than your counsel?

6       A.    No.

7       Q.    Okay.  Have you spoken to anyone at all

8   about this deposition?

9       A.    No.

10      Q.    Okay.  Did you speak with Miss Dial?

11      A.    No.

12      Q.    Okay.  When was the last time you spoke

13  with Miss Dial?

14      A.    A month ago.

15      Q.    Okay.  What did you talk about?

16      A.    My mom's eye surgery.

17      Q.    Okay.  Have you talked to Miss Dial about

18  this case at all?

19      A.    No.

20      Q.    Okay.  So it is your testimony today

21  under oath that you haven't had any

22  communications, whether written or oral, with Miss

23  Dial about this case?

24      A.    No.

25      Q.    Okay.  So that would be a yes, that it


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

1  is your testimony under oath that you haven't had

2  any --

3       A.   Oh, I haven't, yes.

4       Q.   Okay.  Do you know an individual by the

5  name a Sheneda Mirador?

6       A.   No.

7       Q.   Okay.  In fact, I'll just do it this way.

8            MS. CREED:  Will this be one?

9            MR. VANORSBY:  What did I just give you?

10 Could you make an extra copy of that?  Yeah, make

11 two copies.

12           BY MR. VANORSBY:

13      Q.   So it is your testimony today that you do

14 not know an individual named Sheneda Mirador?

15      A.   No.

16      Q.   Okay.  Have you talked to Susan Phillips

17 or when is the last time you talked to Susan

18 Phillips?

19      A.   I have not talked to Susan Phillips in

20 over three years.

21      Q.   Okay.

22      A.   And she's deceased.

23      Q.   Thank you for letting me know that.  When

24 was the last time you spoke with Janet Gunter?

25      A.   I haven't spoke to Janet Gunter in over


5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604            Suite 101                   Suite 305
785-273-3063               Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com        913-383-1131                316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

1   three years.

2        Q.    Okay.  And there's a reason why I'm

3   asking these questions, and it will become

4   apparent in just a moment.  When was the last time

5   you spoke with Tenesha Burks?

6        A.    I haven't talked to Tenesha Burks in

7   probably four months.

8        Q.    Have you talked to Tenesha Burks, Miss

9   Burks about this case at all?

10       A.    No.

11            (THEREUPON, Deposition Exhibit No 1 was

12   marked for identification.)

13            MR. VANORSBY:  Let the record reflect

14   we've marked a document, McCray Exhibit Number 1.

15   BY MR. VANORSBY:

16       Q.    I will hand that to you.  Have you ever

17   seen that document before?

18       A.    No.

19       Q.    Okay.  I will represent to you that these

20   are your initial disclosures in this case, and

21   what that means as part of this case you were

22   supposed to identify people who have likely, or

23   likely to have discoverable information that you

24   will use to support your claims.  And this is the

25   list that I am going through with you right now,


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1   the people, have you talked to them and what you

2   talked to them about, okay?

3        A.   Uh-huh.

4        Q.   Do you see an individual on this, on

5   Exhibit 1 named Sheneda Mirador?

6        A.   I do.

7        Q.   Okay.  And it's your testimony today you

8   don't even know who that is?

9        A.   I do not.

10        Q.   Okay.  Do you also see Susan Phillips

11   that's listed on Page 1 of Exhibit 1?

12        A.   I do.

13        Q.   Okay.  And it is your testimony today

14   she's deceased?

15        A.   Yes.

16        Q.   So she wouldn't be testifying in support

17   of your case, correct?

18        A.   No.

19        Q.   Okay.  Would you flip to Page 2 of

20   Exhibit 1, please.

21        A.   (Witness complies).

22        Q.   When was the last time you spoke with

23   Marcia Dickinson?

24        A.   Four years.

25        Q.   And what information does Marcia



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

1   Dickinson have that would support your case?

2           MR. THOMAS:  Objection, foundation.

3   Objection, foundation.  This is a document

4   prepared by lawyers, not by Miss McCray.

5           MR. VANORSBY:  Well, it's object to form,

6   but I note your objection.

7           MR. THOMAS:  You haven't laid the

8   foundation.

9           MR. VANORSBY:  That's fine, you can

10  object to form.

11      BY MR. VANORSBY:

12      Q.    Miss McCray, what information would Miss

13  Dickinson have regarding the case and to support

14  your case?

15          MR. THOMAS:  Objection, vague and

16  ambiguous.

17          MR. VANORSBY:  It's object to form.

18          (THEREUPON, Deposition Exhibit No 2 was

19  marked for identification.)

20      BY MR. VANORSBY:

21      Q.    Before we get to you, I'm going to get

22  you another document and we'll continue off that

23  document.  Okay?

24          MS. CREED:  Do you want copies?

25          MR. VANORSBY:  No, I have copies.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W, 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1        BY MR. VANORSBY:

2            Q.    I'm going to hand you what's been marked

3        as Exhibit 2.  Have you ever seen that document

4        before?  It's okay if you haven't.

5            A.    I have not.

6            Q.    Okay.  I'll represent to you that this is

7        the Scheduling Order in this case.  It's part of

8        what sets out the deadlines, some of the

9        agreements, stipulations between the parties to

10       govern this case, okay?  And part of the reason

11       why I want to talk to you about this is because

12       of the objections, I just want to make sure to

13       note for the record that the objections that are

14       being made aren't proper.

15               MR. THOMAS:  We are not going to do that.

16               MR. VANORSBY:  We are going to do this.

17       BY MR. VANORSBY:

18           Q.    Turn to Page 6.

19               MR. THOMAS:  You can ask questions that

20       you believe will lead to discoverable information.

21       BY MR. VANORSBY:

22           Q.    Turn to Page 6, please.

23               MR. THOMAS:  Get up.  Let me know when

24       you are ready to ask questions that you are here

25       to discover.



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

```
1              MR. VANORSBY:  I'm going to ask a
2    question --
3              MR. THOMAS:  You can ask questions about
4    the case, not to ask her questions about whether
5    or not --
6              MR. VANORSBY:  If you want to walk out,
7    do you need to call the Judge, you can do whatever
8    you want to do.
9              MR. THOMAS:  You are going to ask
10   questions --
11             MR. VANORSBY:  You can do whatever you
12   want to, Mr. Thomas.  We are going to go to Page
13   6.
14             MR. THOMAS:  Stop it.  You are not going
15   to sit here and try to woodshed me about whether,
16   through her --
17             MR. VANORSBY:  Have you looked at Page 6.
18   Do you know what it says?
19             MR. THOMAS:  You are not going to do it.
20   All right.  Let's go.
21             MR. VANORSBY:  Okay.
22             MR. THOMAS:  Tell me when you are ready
23   to ask questions.
24             MR. VANORSBY:  If you want to walk out,
25   that's what you want to do.  But we're going to
```



# DASHAUN MCCRAY

1    talk about.  We're going to get into this case.

2              MR. THOMAS:  Tell me when you are ready

3    to ask questions.

4              MR. VANORSBY:  I am ready to ask

5    questions, but you are making improper objections,

6    so I'm going to make sure we get this on the

7    record.

8              MR. THOMAS:  You need to ask questions

9    about the case.

10              MR. VANORSBY:  Scheduling orders are

11    about the case.

12              MR. THOMAS:  No, you are going to ask

13    questions about her case, not the Scheduling

14    Order.

15              MR. VANORSBY:  Okay.

16         BY MR. VANORSBY:

17         Q.  **Miss McCray, we are looking at subsection**

18    **g --**

19              MR. THOMAS:  No.  Let's go.  Get up.

20         BY MR. VANORSBY:

21         Q.   **It says:  The parties will not state**

22    **objections during the deposition other to, than to**

23    **assert a privilege or to the form of an objection.**

24              MR. THOMAS:  Come on.  Tell me when you

25    are ready to ask questions about the case.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

1          MR. VANORSBY:  We're talking about the

2    case.  If you want to call the judge, we can do

3    that.

4          MR. THOMAS:  I'm not calling the judge.

5          MR. VANORSBY:  Yeah, I know you don't

6    want to call the judge.

7          MR. THOMAS:  I'm not going to bother the

8    judge.  That's what I'm not going to do.

9          MR. VANORSBY:  Well, we'll wait for you

10   guys to come back.

11          MR. THOMAS:  We will wait until you ask

12   questions about the case.  That's fine.

13          MR. VANORSBY:  We will wait for you to

14   come back.

15          MR. THOMAS:  So, tell me when you are

16   ready.

17          MR. VANORSBY:  You can go out to the

18   waiting room.  You can't just walk around

19   unattended.  Let's go off the record.

20          THE VIDEOGRAPHER:  The time is

21   approximately 9:51 a.m.  We are going off the

22   record.

23          (THEREUPON, at 9:51 a.m., a recess was

24   taken, after which, 9:57 a.m., the following

25   proceedings were held:)



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

### DASHAUN MCCRAY

```
 1              THE VIDEOGRAPHER:  Time is approximately
 2    9:57 a.m., we are back on the record.
 3              BY MR. VANORSBY:
 4         Q.    Miss McCray, do you understand you're
 5    still under oath?
 6         A.    Yes.
 7         Q.    Okay.  So can you turn to Page 6 for me.
 8    I'm going to read something --
 9              MR. THOMAS:  I just told you we weren't
10    doing that.
11              BY MR. VANORSBY:
12         Q.    I'm going to read something, I'm going to
13    ask you if I read it correctly?  Okay?
14              MR. THOMAS:  What does this have to do
15    with her case?
16              MR. VANORSBY:  This has to do with the
17    orderly administration of this deposition, so I'm
18    going to read this.
19              MR. THOMAS:  You tell me, is this
20    reasonably calculated to lead to the discovery of
21    admissible evidence.
22              MR. VANORSBY:  You can object to
23    relevance, but the witness still has to answer.
24              MR. THOMAS:  No, no, it's badgering.
25              MR. VANORSBY:  Do you want to call the
```


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

# DASHAUN MCCRAY

1  magistrate?

2         MR. THOMAS:  I won't call the magistrate

3  over something so silly.  I can instruct her not

4  to answer if it's badgering.

5         MR. VANORSBY: If you want to do that,

6  that's your prerogative.

7     BY MR. VANORSBY:

8     Q.   So on Page 6 at the bottom it says:  To

9  encourage the cooperation, efficiency and economy

10  in discovery, to also limit discovery disputes,

11  the court adopts as its order upon procedures

12  agreed to by the parties.  The parties will not

13  state objections during depositions other than to

14  assert a privilege or to the form of the question.

15  The basis for an objection to the form of the

16  question should not be stated, going on to Page 7,

17  except to the request of an examining attorney.

18  Did I read that correctly?

19         MR. THOMAS:  You don't have to answer it.

20     BY MR. VANORSBY:

21     Q.   Are you refusing to answer the question,

22  Miss McCray?

23         MR. THOMAS:  Don't answer it, he's

24  badgering you.

25         MR. VANORSBY:  No, I am making a record.



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

# DASHAUN MCCRAY

1      BY MR. VANORSBY:

2          Q.    **Are you refusing to answer the question,**

3   **Miss McCray?**

4              MR. THOMAS:   Is it reasonably calculated

5   to lead to discovery of admissible evidence?

6              MR. VANORSBY:   I note your relevance

7   objection.

8      BY MR. VANORSBY:

9          Q.    **Are you refusing to answer the question,**

10   **Miss McCray?**

11         A.    Yes.

12         Q.    **Okay.   Thank you.**

13             MR. THOMAS:   And if you are going to keep

14   trying to trick her --

15             MR. VANORSBY:   Danny, I don't need to

16   hear it.

17             MR. THOMAS:   I am going to make a record,

18   Brian.

19             MR. VANORSBY:   That's fine.   You can do

20   that --

21             MR. THOMAS:   No, no, no, I am going to

22   make my record.

23             MR. VANORSBY:   Okay.   Go ahead and make

24   your record.

25             MR. THOMAS:   If you are going to keep



## DASHAUN MCCRAY

1   trying to trick her, like you were just doing with

2   these Rule 26 Disclosures, I am going to make an

3   objection that goes beyond form, I'm sorry.

4           MR. VANORSBY:  No, you are not.  You're

5   going to object to form as we agreed in the

6   Scheduling Order as the deposition guidelines

7   require.

8           MR. THOMAS:  When I agreed to that I

9   didn't know that you were going to try to be

10  tricky.

11          MR. VANORSBY:  No matter the agreement,

12  the deposition guidelines require that you only

13  object to form, and so do the rules of civil

14  procedure.

15          MR. THOMAS:  I believe there's

16  exceptions.

17          MR. VANORSBY:  All right.  If you can

18  point them to me that would be okay.

19          MS. RANDLES:  The exception is found in

20  Cincinnati --

21          MR. THOMAS:  You are not counsel of

22  record.

23          MS. RANDLES:  (Inaudible)  I am counsel

24  of record.

25          MR. THOMAS:  You are not for this depo.



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1          MR. VANORSBY:  Kat, is that Kat?

2          MS. CREED:  Uh-huh.

3          THE VIDEOGRAPHER:  That's on my end.

4          THE REPORTER:  What?

5          MR. VANORSBY:  I am very confused.

6          MR. THOMAS:  You don't have to write what

7    she said.  She is not counsel of record.

8          THE VIDEOGRAPHER:  That is Rebecca

9    Randles.

10         MR. THOMAS:  Oh, I thought it was Kat.

11         MR. VANORSBY:  Well, there you go.  But

12   she's not defending this deposition, it appears

13   so.

14        BY MR. VANORSBY:

15        Q.    What information does Marcia Dickinson

16   have regarding your case that's your reason to

17   support?

18        A.    Hostile work environment.

19        Q.    And what else?

20        A.    Retaliation.

21        Q.    All right.  Miss McCray, did you have a

22   discussion with your attorney after you walked out

23   about how to answer these questions?

24        A.    No.

25        Q.    Okay.  What information does Miss



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

```
 1    Dickinson have about the hostile work environment?
 2              MR. THOMAS:  Vague and ambiguous.
 3              MR. VANORSBY:  That would be form.
 4    BY MR. VANORSBY:
 5    Q.    But go ahead and answer.
 6              MR. THOMAS:  And foundation.
 7              MR. VANORSBY:  Again, form.
 8    BY MR. VANORSBY:
 9    Q.    Go ahead and answer.
10    A.    Personal experience.
11    Q.    Okay.  Can you be more specific about
12    that?
13    A.    Targeted behavior.
14    Q.    By who?
15    A.    Ruth Duda.
16    Q.    Okay.  And what was the targeted behavior
17    that Miss Dickinson would have knowledge about?
18    A.    Personal experience.  Targeted behavior
19    towards her.
20    Q.    Okay.  I am getting you.  So Miss Duda
21    had personally targeted Miss Dickinson?
22    A.    Yes.
23    Q.    Okay.  Janelle Adams is listed.  When was
24    the last time you spoke with Miss Adams?
25    A.    Three years.
```


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1      Q.    Okay.  What information might Miss Adams

2  have to support your claims in this case?

3          MR. THOMAS:  Foundation.  Vague.

4          MR. VANORSBY:  That would be form.

5  BY MR. VANORSBY:

6      Q.    Go ahead and answer.

7      A.    Janelle Adams was approached to state I

8  created a hostile work environment.

9      Q.    Approached by whom?

10     A.    Ruth Duda.

11     Q.    And when did she approach Miss Adams?

12     A.    March 10, 2020.

13     Q.    Okay.  And we'll come back to that.

14  Cynthia Finley, when's the last time you spoke

15  with Cynthia Finley?

16     A.    Over three years.

17     Q.    Okay.  When was the last time you spoke

18  with Heather Schopf, did I say that correctly?

19     A.    Heather Schopf.

20     Q.    Schopf?

21     A.    She's my former employee, so we talk

22  often.

23     Q.    Okay.  When was the last time, do you

24  know?

25     A.    Last week.



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1      Q.    Okay.  Have you talked to Miss Schopf
2  about this case at all?
3      A.    No.
4      Q.    Okay.  When was the last time you spoke
5  with Miss Schopf about Ruth Duda?
6      A.    Over three years.
7      Q.    Okay.  So you consider Heather Schopf a
8  friend; is that right?
9      A.    She's a former staff member of mine.
10      Q.    And I take it to understand you guys
11  speak outside of work?
12      A.    We speak outside of work.
13      Q.    Would you consider her a friend?
14      A.    Yes.
15      Q.    Okay.  When was the last time you spoke
16  with Lori Lewis?
17      A.    Two months.
18      Q.    Okay.  Have you talked to Miss Lewis
19  about this case at all?
20      A.    No.
21      Q.    Okay.  What information does Miss Lewis
22  have, let me use the terminology that she listed
23  here.  Miss Lewis is listed as a person likely to
24  have discoverable information that you would use
25  to support your case.  What information does Miss

3/24/2023                                                                 30

## DASHAUN MCCRAY

1   Lewis have that you would use to support your
2   case?
3           MR. THOMAS:  Vague foundation.
4           MR. VANORSBY:  So it would be form.  I
5   ask you again to make the proper objection as we
6   agreed to in the Scheduling Order.
7           MR. THOMAS:  It's proper under district
8   of Kansas law.
9           MR. VANORSBY:  It's what?
10          MR. THOMAS:  It is proper under district
11  of Kansas law.
12          MR. VANORSBY:  It is not, and I just want
13  you to know I am making a record so that, you
14  know, later, we're going to discuss it with the
15  judge, okay?  Okay.
16      BY MR. VANORSBY:
17      Q.    All right  So what information does Miss
18  Lewis have?
19      A.    Hostile work environment.
20      Q.    Can you be more specific?
21      A.    Personal experience.
22      Q.    What personal experience?
23      A.    Targeted by Ruth Duda.
24      Q.    Miss Lewis was targeted by Ruth Duda?
25      A.    Yes.


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**DASHAUN MCCRAY**

1       Q.    Okay.  And are you saying that created a

2  hostile work environment for Miss Lewis?

3       A.    Yes.

4       Q.    Okay.  I just want to make sure I'm

5  understanding you what you're telling me, okay?

6       A.    Uh-huh.

7       Q.    Toya Butler, when was the last time you

8  spoke with Toya Butler?

9       A.    Over a year.

10      Q.    Have you talked with Miss Butler about

11 this case at all?

12      A.    No.

13      Q.    Okay.  David Crombie, do you know who

14 that is?

15      A.    He is a, he was then a medical support

16 assistant in my unit.

17      Q.    Okay.  When was the last time you spoke

18 with Mr.  Crombie?

19      A.    Over three years.

20      Q.    Three years, okay.  Okay.  I'm going to

21 just speed this up just a little bit.  Alicia

22 Williams, Jacqueline Murphy, Crystal Profit,

23 Rowana Gulley, Katie Smith, have you talked to any

24 of those individuals within the last two years?

25      A.    Alicia Williams.

Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1    Q.    Okay.  When was the last time you spoke
2  with Alicia Williams?
3    A.    Three weeks ago.
4    Q.    Okay.  Have you talked with Miss Williams
5  about this case at all?
6    A.    Not at all.
7    Q.    Okay.  Did Miss Williams work in the, and
8  I am going to call it the OCC, you know what that
9  means, right?  Okay.
10    A.    She was my direct staff, I was her
11  supervisor.
12    Q.    Okay.  So she was a registered nurse?
13    A.    Yes.
14    Q.    All right.  We kind of touched on this
15  earlier whether or not you've reviewed any
16  documents and we talked about specifically in
17  preparation for this deposition, but have you
18  reviewed the complaint in this matter?
19    A.    My personal complaint?
20    Q.    Your complaint, yes, the complaint you
21  filed with the district court.
22    A.    No.
23    Q.    Okay.  Did you review any of your
24  discovery responses prior to this deposition?
25    A.    No.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1    Q.    Okay.   At any point have you reviewed
2    your discovery responses?
3    A.    In 2021.  I am trying to think.  I need
4    to clarify.
5    Q.    So you recently served some discovery
6    responses, I am going to ask bad questions, so I'm
7    just going to move on, okay?
8          Have you reviewed any other deposition
9    transcripts other than your own?
10   A.    No.
11   Q.    Okay.   Okay.   Now I want to take a step
12   back and talk a little bit about your background,
13   okay?
14   A.    Okay.
15   Q.    These should be the easy questions, all
16   right?  So at the beginning of this deposition I
17   asked you to state your name for the record, but I
18   want to know, have you ever gone by any other
19   names?
20   A.    DaShaun McCray Swai.
21   Q.    Can you spell Swai for me?
22   A.    S-W-A-I.
23   Q.    Okay.   Anything else?
24   A.    No.
25   Q.    Okay.   What's your date of birth?

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

3/24/2023                                                                          34

**DASHAUN MCCRAY**

1     A.    3-14 of 1974.

2     Q.    Oh, happy belated birthday.  Did you do

3  anything fun?

4     A.    No.

5     Q.    What's your current address?

6     A.    7575 South Quatar, Q-U-A-T-A-R, Way,

7  Aurora, Colorado 80016.

8     Q.    Okay.  How long have you lived there?

9     A.    2021.

10     Q.    Do you know the approximate month?

11     A.    I signed my documents on June 4th of

12  2021.

13     Q.    Okay.  And by documents do you mean is it

14  a home that you own?

15     A.    My mortgage.

16     Q.    Okay.  What was your address before you

17  lived at 2525 South Quatar Way?

18     A.    It's 7575.

19     Q.    Oh, I'm sorry.  I can't read my own

20  handwriting.  7575 South Quatar Way, what was your

21  address prior to that?

22     A.    16336 East Fremont Avenue, Apartment

23  1317, Aurora, Colorado 80016.

24     Q.    How long did you live at that location?

25     A.    From June 2nd of 2020 to July 12th, 2021.



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1      Q.    Okay.   So approximately a year.   Okay.
2   What was your address prior to the East Fremont
3   location?
4      A.    2205 South Linden Street, Wichita,
5   Kansas, 67207.
6      Q.    Did you own that home?
7      A.    No.
8      Q.    Did you rent it?
9      A.    I cohabitated.
10      Q.    Okay.   What do you mean by that?
11      A.    I lived there with my significant other.
12      Q.    Okay.   Do you know whether or not he
13   rented that home?
14      A.    He owned.
15      Q.    Okay.   He owned that home.   How long did
16   you live at that location?
17      A.    May of 2018 to June of 2020.
18      Q.    Okay.   And where did you live prior to
19   the South Linden Street?
20      A.    1626 North Ash, Wichita, Kansas 67214.
21      Q.    Okay.   There's been an allegation in this
22   case that you have continued to maintain two
23   homes, one in Kansas and one in Colorado.   I want
24   to ask you about the Kansas address that you
25   allegedly continue to maintain.   What is that



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# DASHAUN MCCRAY

1    address?

2        A.    2205 South Linden Street.

3        Q.    Okay.  So that's the same address that

4    you cohabitated with your significant other?

5        A.    Yes.

6        Q.    Are you still dating that person?

7        A.    Yes.

8        Q.    Okay.  And what's his name?  Or her name,

9    I don't mean to assume.

10       A.    Barshey, B-A-R-S-H-E-Y, Bryant, B-R-Y-A-

11   N-T.

12       Q.    Is that where you stayed, let me back up.

13   It's my understanding that this week you have been

14   on spring break; right?

15       A.    That's correct.

16       Q.    Okay.  So you have been here in Wichita

17   for this week?

18       A.    No.

19       Q.    Okay.  Did you just come for the

20   deposition?

21       A.    Yes, my son had knee surgery.

22       Q.    Okay.  We'll get to that, but is your son

23   in Colorado?

24       A.    Yes.

25       Q.    So that kind of ruined your plans for



5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

1  spring break I am guessing?

2      A.    Yes.

3      Q.    All right.  Did you stay at this 2205

4  South Linden Street address since you've been here

5  in Wichita for this deposition?

6      A.    No.

7      Q.    Okay.  And why is that?

8      A.    Because there is someone staying there to

9  maintain the house.  He had to go to New Jersey

10 for an emergency so I stayed at my brother's.

11     Q.    Okay.  I just, I need to unpack that.

12 You said someone is staying there to maintain the

13 house.

14     A.    There is multiple pets in the home and

15 pets that weren't there when I left and so I am a

16 little scared of bull dogs.

17     Q.    Okay.  Fair enough.  Especially if you

18 don't know them.

19     A.    But they are maintained when he's there.

20     Q.    Yeah, okay.  When is the last time you

21 stayed at the 2205 South Linden Street address?

22     A.    January 15th of this year.

23     Q.    Okay.  I think I know the answer to this

24 question, but are you married?

25     A.    No.


5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# DASHAUN MCCRAY

1    Q.    Okay.  Have you ever been married?

2    A.    Yes.

3    Q.    Who is your husband?

4    A.    Gilbert Swai.

5    Q.    I assume that that marriage was ended in

6    divorce?

7    A.    Yes.

8    Q.    Okay.  Approximately when did that occur?

9    A.    My divorce or?

10    Q.    Your divorce, yes.

11    A.    November of 2006.

12    Q.    Are you currently dating anyone?

13    A.    Mr. Bryant.

14    Q.    Have you dated anyone other than Mr.

15    Bryant since you have been in Colorado?

16    A.    No.

17    Q.    And that's your testimony under oath

18    today?

19    A.    Yes.

20    Q.    Okay.  Do you have any children?

21    A.    Two. **

22    Q.    Can you give me their names starting with

23    the oldest.

24    A.    Marquis, M-A-R-Q-U-I-S, McCray.

25    Q.    Okay.  And your other one?



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1      A.   KeSaun, K-E-S, capital S, A-U-N, McCray.

2      Q.   **How old is Marquis?**

3      A.   Twenty-five.

4      Q.   **How old is KeSaun?**

5      A.   Fifteen.

6           MR. THOMAS:   How do you spell Marquis'

7   name again?

8      A.   M-A-R-Q-U-I-S.

9   BY MR. VANORSBY:

10     Q.   **Is KeSaun the one with the knee surgery?**

11     A.   Yes.

12     Q.   **What happened?**

13     A.   Loose bodies behind his patella.

14     Q.   **Shew.   Okay.   Patella?**

15     A.   Loose bodies behind his knee.

16     Q.   **Patella I think is knee.   That's about as**

17  **good as I can get with the medical terminology.**

18  **What does Marquis do for work?**

19     A.   Personal trainer, graduate assistant

20  basketball coach.

21     Q.   **Where does he coach?**

22     A.   Emporia State University.

23     Q.   **Okay.   Does he reside in Emporia?**

24     A.   Yes.

25     Q.   **And does KeSaun reside with you in**



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

# DASHAUN MCCRAY

1    Colorado?

2         A.    Yes.

3         Q.    Have you ever been convicted of a crime?

4         A.    No.

5         Q.    Have you ever been arrested?

6         A.    No.

7         Q.    Other than this lawsuit have you ever

8    sued anyone?

9         A.    No.

10        Q.    Have you ever been sued by anyone?

11        A.    No.

12        Q.    Have you ever filed for bankruptcy?

13        A.    Yes.

14        Q.    Okay.  When did that occur?

15        A.    2010.

16        Q.    Was it here in the district of Kansas?

17        A.    Yes.  No.  That was in Missouri.

18        Q.    Where were you living at the time you

19   filed for bankruptcy?

20        A.    St. Louis, Missouri.

21        Q.    Has anyone ever filed a complaint of

22   discrimination against you?

23        A.    No.

24        Q.    And other than this case, have you ever

25   filed a complaint of discrimination against anyone



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**DASHAUN MCCRAY**

1   else?

2        A.    No.

3        Q.    Ever testified in court before?

4        A.    No.

5        Q.    I am sorry, I didn't get that?

6        A.    Is my previous deposition testifying?

7        Q.    Not in court, that would be a little bit

8   different.

9        A.    Okay.  No.

10       Q.    Okay.  For purposes of getting a clear

11  record many people in this country would refer to

12  people like you and me as either black or African

13  American.  I want to know what your preference is,

14  how you would prefer to be identified?

15       A.    African American.

16       Q.    Okay.  Thank you.  I want to shift to

17  your educational history.  Did you go to high

18  school?

19       A.    Yes.

20       Q.    Where did you go to high school?

21       A.    Wichita Southeast High School.

22       Q.    Where was that at when you went there?

23  The Southeast High School, was it still out there

24  off of Pawnee?

25       A.    On Edgemoor and Lincoln.



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1    Q.    Okay.  Am I right then that Southeast is

2  out there on Pawnee?  There is a high school to

3  the south of me, I think it's Southeast.

4    A.    They moved it, so I don't know exactly

5  where it is now.

6    Q.    Yeah, okay.  It's out in the middle of a

7  field now.

8          MR. THOMAS:  Come on.  Come on.

9          MR. VANORSBY:  Danny, just calm down,

10 okay?

11 BY MR. VANORSBY:

12   Q.    All right.  All right.  So when did you

13 graduate from Southeast?

14   A.    May 22nd, 1992.

15   Q.    Okay.  Did you complete any secondary

16 schooling?

17   A.    Yes.

18   Q.    Where did you go to college?  Right after

19 high school, wherever you went.

20   A.    I worked right after high school.

21   Q.    Okay.  Where did you work?

22   A.    Home health.

23   Q.    How long did you work there?

24   A.    1992 to 1995.

25   Q.    What did you do after you left, well,

Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1  tell me first, what were the circumstances that

2  you left home health?

3      A.    The circumstances that I left home health

4  I was a home aide, I went to school for my LPN.

5      Q.    So you left because you were wanting to

6  go to school?

7      A.    Yes.

8      Q.    Okay.  Where did you go to school?

9      A.    Wichita Area Technical College.

10      Q.    And that would have been '95.

11      A.    '95, graduated in '96.

12      Q.    What was your degree?

13      A.    Licensed practical nurse.

14      Q.    And if I referred to that as an LPN would

15  that be correct?

16      A.    That's correct.

17      Q.    All right.  Okay.  You graduated with

18  your LPN in '96, what did you do after that?

19      A.    October 15th of 1996 I went to the United

20  States Air Force.

21      Q.    October of -- I am sorry, you said that

22  really fast.

23      A.    October 15th, 1996, I went to the United

24  States Air Force.

25      Q.    And when you say you went to the air

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    force that means you enlisted?

2        A.    Yes.

3        Q.    Okay.  All right.  What was your job in

4    the air force?

5        A.    Dental assistant.

6        Q.    Did you go to basic training?

7        A.    Yes.

8        Q.    Okay.  How long were you in the airforce?

9        A.    1996 to 2000.

10       Q.    And those four years did you ever have

11   any other duty station other than dental

12   assistant?

13       A.    No other job other than dental assistant.

14       Q.    Okay.  Where were you stationed?

15       A.    Tinker Airforce Base, Oklahoma.

16       Q.    Is that the same place that you did basic

17   training?

18       A.    San Antonio, Texas is where I did to

19   basic training.

20       Q.    Okay.  What's the base there?

21       A.    Lackland Air Force Base.

22       Q.    Okay.  When you say you were there until

23   2000 --

24       A.    Yes.

25       Q.    Okay.  I assume you were discharged in



### DASHAUN MCCRAY

```
 1    2000?
 2         A.    Honorable discharge in 2000.
 3         Q.    Okay.  What did you do after you left the
 4    air force in 2000?
 5         A.    Returned to Kansas and went to Wichita
 6    State University.
 7         Q.    What, were you pursuing a degree?
 8         A.    I was pursuing a degree in social work.
 9         Q.    Okay.  Did you finish that degree?
10         A.    I changed my major to nursing, I received
11    a Bachelor of Science in nursing from Newman
12    University.
13         Q.    Okay.  So I am just going to unpack that
14    a little bit.  You go to Wichita State for your
15    social work degree, did you start there in 2000?
16         A.    I started there in fall of 2000, yes.
17         Q.    Okay.  And when was your last date of
18    attendance at WSU?
19         A.    May 2001.
20         Q.    And why did you decide to leave WSU?
21         A.    At that time I was being a mother and a
22    student and it was just compromised.
23         Q.    Gotcha.  It was just tough kind of
24    dealing with all of that stuff?
25         A.    Uh-huh.
```



5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

### DASHAUN MCCRAY

1        Q.     Okay.   And then you mentioned you went to
2    Newman.   Did you go directly from WSU to Newman?
3        A.     I went to Butler County for summer
4    courses then I finished out my associates at
5    Cowley County Community College.
6        Q.     I'm going to slow you down.   So you leave
7    WSU, you say you go to Butler County, was that in
8    2001?   Or what year was that, let me ask it that
9    way?
10       A.     It was summer of 2001.
11       Q.     Okay.   What coursework were you pursuing
12   at Butler County?
13       A.     General education.
14       Q.     Okay.   For how long did you attend Butler
15   County?
16       A.     Just summer class.
17       Q.     Okay.   Were you working at the time?
18       A.     Yes.
19       Q.     Where were you working?
20       A.     At that time I was working at Proactive
21   Home Care.
22       Q.     Okay.   So you went back in to home
23   health?
24       A.     Yes, as an LPN.
25       Q.     Okay.   So Butler County and what was the



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1    next college?

2        A.    2003 I started full-time school at Cowley

3    County Community College.

4        Q.    What was the coursework you were pursuing

5    there?

6        A.    General education.

7        Q.    Okay.  Did you receive a degree from

8    Cowley County?

9        A.    No.

10       Q.    Okay.  How long did you attend Cowley

11   County?

12       A.    I completed Cowley County general

13   education requirements December of 2003.

14       Q.    All right.  December of 2003.  Are you

15   still working?

16       A.    Yes.

17       Q.    Are you still in home health?

18       A.    Yes.

19       Q.    All right.  What's the next college you

20   went to?

21       A.    Newman University.

22       Q.    Okay.  What year did you start at Newman?

23       A.    August of 2004.

24       Q.    And what degree were you pursuing at

25   Newman?



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    A.    Bachelor of Science in nursing.

2    Q.    Did you graduate?

3    A.    Yes.

4    Q.    Okay.  What year did you graduate from

5    Newman?

6    A.    I graduated on May 12th of 2006.

7    Q.    All right.  Did you complete any other

8    schooling after you graduated from Newman

9    University?

10    A.    I began schooling in 2012 for master of

11    science of nursing and nurse executive.

12    Q.    And where did you attend, where did you

13    go for that degree?

14    A.    Barnes-Jewish College of Nursing in St.

15    Louis Missouri.

16    Q.    Okay.  Did you say Barnes-Jewish?

17    A.    Barnes-Jewish.

18    Q.    Okay.

19          MR. THOMAS:  B-A-R-N-E-S.

20    BY MR. VANORSBY:

21    Q.    Okay.  I am sorry, I didn't catch it, but

22    can you tell me what the degree was you were

23    pursuing?

24    A.    Master of science nursing, nurse

25    executive concentration.



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    Q.    What type of coursework is involved in
2  pursuing that type of degree?
3    A.    Masters prepared nursing coursework.
4    Q.    Okay. Is it more medical focused or is
5  it --
6    A.    It is medical and business focused.
7    Q.    Okay.  Tell me about the business side of
8  it, what are you learning in that program?
9    A.    Nurse management.  So nurse management in
10 regards to being a nurse executive.  There's
11 understanding population health, understanding the
12 economy, economic value.
13   Q.    Uh-huh.  Okay.  Did you have to complete
14 a thesis of any kind?
15   A.    I actually had to withdraw in May of
16 2013.
17   Q.    For what reason did you need to withdraw?
18   A.    I returned to Kansas.
19   Q.    Okay.  Is there any particular reason why
20 you returned to Kansas?
21   A.    I just came back to Kansas because I
22 chose to.
23   Q.    Okay.  Did you do any other schooling
24 after you withdrew from Barnes-Jewish?
25   A.    Yes.


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    Q.    Okay.  What year?

2    A.    January 25th of 2017.

3    Q.    What coursework were you pursuing?

4    A.    Columbia Southern University, masters

5  business administration healthcare management.

6    Q.    Where is Columbia Southern?  If you know.

7  Well, let me ask you this.  Was it online

8  schooling?

9    A.    It was online schooling.

10    Q.    Okay.  Did you complete that coursework?

11    A.    Yes.

12    Q.    Okay.  When did you graduate?

13    A.    February 20th, 2020.

14    Q.    Okay.  Did you complete any other

15  secondary education after Columbia Southern?

16    A.    No.

17    Q.    Okay.  Do you have any other technical

18  degrees or certificates that would be relevant to

19  your job field?

20    A.    No.  I need to go back.

21    Q.    Okay.

22    A.    I am a CCMC certified, board certified

23  case manager.

24    Q.    CCMC board -- can you tell me what CCMC

25  stands for?



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1    A.    I know it's a care coordination

2    something, I can't remember exactly.

3    Q.    **Fair enough.**

4    A.    So I am a board certified case manager

5    since August of 2015.

6    Q.    **What did you have to do to become board**

7    **certified in CCMC?**

8    A.    Take a, basically another licensure exam.

9    Q.    **I am going to take a step back here for a**

10   **second.  Were you in any other branch of the**

11   **military?**

12   A.    Army reserves.

13   Q.    **Okay.  I think we might have skipped over**

14   **that.  When were you in the army reserves?**

15   A.    September of '20, no, excuse me, yes,

16   September of 2021 to June of 2022 because it just

17   did not work with life for me.

18   Q.    **Okay.  I think you, I am not trying to**

19   **trick you, I think you might have the years wrong.**

20   **Are you trying to say 2011 of 2012 or are you**

21   **saying just within this last year?**

22   A.    Oh, I'm sorry, yes.  I'm so sorry.  2001.

23   Q.    **Okay.  2001 to 2002?**

24   A.    Yes, 2002.

25   Q.    **All right.**


5111 SW 21st Street            6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604              Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

1              MR. THOMAS:  I am sorry, you went Army

2     reserve when?

3        A.    September of 2001.

4              MR. THOMAS:  And when did you get out?

5        A.    I viewed out in June of 2022.

6     BY MR. VANORSBY:

7        Q.    **You said viewed out?**

8        A.    That means you had the opportunity to

9     just be released.

10       Q.    **Okay.  So you asked to be released and**

11    **you were released?**

12       A.    Yes.

13       Q.    **Okay.  And for what reason were you**

14    **asking to be released?**

15       A.    It just wasn't conducive to my, just how

16    life was going, you know, being a parent, and so I

17    just decided to say that that wasn't for me.

18       Q.    **Okay.  We touched on this a little bit,**

19    **but now I want to talk about your employment**

20    **history, okay?**

21       A.    Okay.

22       Q.    **Are you currently employed?**

23       A.    Yes.

24       Q.    **Okay.  Who are you employed with?**

25       A.    Department of Veteran Affairs.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

3/24/2023                                                                53

## DASHAUN MCCRAY

1    Q.    What's your job title?

2    A.    Nurse program manager, office of

3    integrative veteran care, VA central office.

4    Q.    That was a mouthful.  I tried to write

5    that, I couldn't, that's okay.  What date did you

6    start that position?

7    A.    May 23rd of 2020.

8    Q.    Prior to that where were you employed?

9    A.    Robert J. Dole VA Medical Center.

10    Q.    I'm sorry, I want to take a step back to

11    your current position, is that full-time?

12    A.    Yes.

13    Q.    Who is your supervisor?

14    A.    Kerry, K-E-R-R-Y, Inhofe, I-N-H-O-F-E.

15    Q.    Okay.  You say that you were employed at

16    the Wichita VA, I am sorry, the Robert J. Dole?

17    A.    VMAC.

18    Q.    VMAC.  What was your position, is it okay

19    if I call it the Wichita VA?

20    A.    That's fine.

21    Q.    Okay.  Robert J. Dole, trying to say all

22    that, it's just, okay, Wichita VA, what was your

23    position at the Wichita VA?

24    A.    My most recent position at the Wichita VA

25    was nurse manager office community care.



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1      Q.    Okay.  What years did you occupy that
2   position?

3      A.    February of 2019 to May 22nd of 2020.

4            MR. THOMAS:  Can you give those dates
5   again?

6      A.    February the 10th of 2019 to May 22nd of
7   2020.

8   BY MR. VANORSBY:

9      Q.    Okay.  Is that a full-time position?

10     A.    Yes.

11     Q.    Who was your supervisor?

12     A.    Ruth Duda.

13     Q.    All right.  Prior to your job as a nurse
14  manager what was your employment --

15     A.    Staff nurse.

16     Q.    Hold on.  That's one of the rules, let me
17  get the question out.

18     A.    Okay.

19     Q.    Prior to becoming a nurse manager, what
20  was your position or your employment?

21     A.    Prior to becoming nurse manager my
22  employment was staff nurse, office of community
23  care, Wichita VA.

24     Q.    Okay.  And for how long did you occupy
25  that position?



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1      A.    December 28 of 2015 to February 9th,
2    2019.
3      Q.    Did you hold any other positions at the
4    Wichita VA?
5      A.    No.
6      Q.    Have you ever been disciplined in any of
7    your employment before?
8      A.    Yes.
9      Q.    Okay.  Can you tell me about that.
10     A.    Disciplinary action in June of 2017.
11     Q.    And that was while you were staff nurse?
12     A.    Yes.
13     Q.    Okay.  Have you ever been fired from a
14   job?
15     A.    No.
16     Q.    Okay.  Let me back up.  Other than the
17   June 27th, 2017, I am sorry, June 27th, June 2017
18   discipline that you received --
19     A.    July of 2017.
20     Q.    Oh, I am sorry.  July of 2017 discipline
21   that you just mentioned, have you been disciplined
22   at any other job?
23     A.    Never.
24     Q.    Okay.  Okay.  You stated you started at
25   the Wichita VA as a staff nurse in 2015.  Do you



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

1  recall what your appointment date was?

2      A.    My appointment date was December 28th,

3  2015.

4      Q.    Okay.

5          (THEREUPON, Deposition Exhibit No 3 was

6  marked for identification.)

7  BY MR. VANORSBY:

8      Q.    I want the record to reflect I'm handing

9  the witness Exhibit 3.  All right.

10     A.    So I --

11     Q.    Hold on.  No question.  Okay.  Do you

12 recognize the document I just handed you?

13     A.    Yes.

14     Q.    Okay.  What is it?

15     A.    It's the appointment affidavits.

16     Q.    Is it your appointment affidavit?

17     A.    Yes.

18     Q.    And how is it that you can tell it's your

19 appointment affidavit?

20     A.    My signature is there.

21     Q.    Okay.  What is the date of appointment

22 that is reflected in this document?

23     A.    12-27 of 2015.

24     Q.    Okay.  You can put that to the side.  I

25 just wanted that for the record.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1       A.    Do you see this though (indicating) --

2       Q.    I'm sorry.

3       A.    -- this right here?

4       Q.    The witness is pointing to something?

5       A.    I am pointing to subscribed and sworn or

6    affirm before me this 28th day of December of

7    2015.

8       Q.    Right.  And I am not trying to say the

9    28th is the wrong date, this is just a document

10   for the record.  So, I understand that it was

11   signed by the 28th, so you consider that to be

12   your appointment date and that's fine.

13      A.    That was a Monday.

14      Q.    Yep.  That's fine.  And maybe they put

15   the date on there wrong.

16      A.    The pay period started on the 27th.

17      Q.    Gotcha.  Okay.  Now who was your

18   immediate supervisor when you became a staff nurse

19   in 2015?

20      A.    Tenesha Burks.

21      Q.    Okay.  And that's the individual we

22   talked about earlier today, correct?

23      A.    Correct.

24      Q.    Who was your secondary supervisor?

25      A.    There wasn't a secondary supervisor.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    Q.    Okay.  Did Miss Burks report to anybody?

2    A.    The Dental Chief, I am unable to recall

3    his name.

4    Q.    Okay.

5    A.    Dr. Parker.

6    Q.    I don't suppose it's too much to ask for

7    his first name?  That's okay.  Dr. Parker is good

8    enough.  What were your job duties as a staff

9    nurse?

10   A.    Care coordination, care authorization.

11   Q.    Care authorization and care coordination,

12   what does that mean?

13   A.    Give you referrals for medical necessity,

14   authorized care.

15   Q.    Okay.  Were those job duties consistent

16   throughout your tenure as a staff nurse?

17   A.    Yes.

18   Q.    Okay.  So that doesn't change at all?

19   A.    No.

20   Q.    Okay.  And I am speaking on high level,

21   generally, not granular, because obviously some

22   things may have changed from time-to-time as far

23   as policy goes, right?

24   A.    Correct.

25   Q.    Okay.  Does staff nurses have, I don't



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1    know if you call them grades, but my understanding
2    is like level nurse 1, nurse 2, nurse 3, is that
3    right?
4         A.    Correct.
5         Q.    How many grades are there?
6         A.    12.  Nope.  There's five grades.
7         Q.    What was your grade when you hired on at
8    the Wichita VA?
9         A.    Nurse 2, step 6.
10        Q.    Can you explain to me what the difference
11   is in the grades and the steps?
12        A.    Grade one is a newly experienced nurse
13   without any certifications, without any background
14   in that area of career field.  Grade 2 has more
15   experience in the nursing career field, possibly a
16   certification or some other additional length of
17   experience as a nurse.  Grade 3 has more
18   supervisory type of oversight, and more official
19   interaction with the facility at large.  Grade 4
20   is a director level in which you are responsible
21   for a unit and you have the direct contact on the
22   director level for care of your unit or your team.
23        Q.    Okay.  We talked about grades, what's the
24   difference in step?
25             MR. THOMAS:  Grade level 5?



5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

## DASHAUN MCCRAY

1    A.    Grade level 5 is the nurse executive or
2    the nurse executive nurse leader over either a
3    facility or a national unit.
4    BY MR. VANORSBY:
5    Q.    Okay.  So we talked about grades, now
6    what about the steps?  Can you explain the
7    difference in that to me.
8    A.    You get a step every two years --
9    Q.    Okay.
10   A.    -- based on employment.  And you come in
11   with steps based on experience.
12   Q.    Okay.  Now, you say you get a step every
13   two years, does that mean anything specifically
14   like you get a bump in pay?
15   A.    Yes.  Each step is a bump in pay.
16   Q.    Okay.  And any bump in responsibility?
17   A.    Not at the step levels.
18   Q.    Okay.  All right.  Who makes the decision
19   regarding where a nurse might be on their grade or
20   step level?
21   A.    Nurse Professional Standards Board.
22   Q.    Do you know who is on, who would have
23   been on that board during the time that you were?
24   A.    They are just from all departments.
25   Q.    Okay.  Do you know if Ruth Duda was ever


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1    on that board?

2         A.    To my knowledge, no.

3         Q.    Okay.  How could a staff nurse be

4    promoted to the various grades, what do they have

5    to do?

6         A.    Education.

7         Q.    So the more education you get the higher

8    up you could be on the grade level?

9         A.    Education and your achievements showing

10   work in the facility level.

11        Q.    Okay.  And what do you mean facility

12   level --

13        A.    Interaction with --

14        Q.    Whoa, whoa, let me finish.  What do you

15   mean facility level?  Do you mean, like, for

16   example, specifically, the Wichita VA?

17        A.    Interaction with executive leadership

18   team in regards to overall process improvement.

19   Interaction with the VISN in regards to process

20   improvement.

21        Q.    Okay.  Now my question was, do you mean

22   within the Wichita VA so you said the executives

23   and those things, are you talking within the

24   Wichita VA or is there something different that

25   you're talking about?


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**62**

# DASHAUN MCCRAY

 1        A.      I'm speaking of the executive leadership
 2    within the Wichita VA.
 3        Q.      Okay.  Well, this question regarding
 4    steps, but with regard to grades, when you go up a
 5    grade do you get a raise in pay?
 6        A.      Yes.
 7        Q.      Okay.  And from what I understand, based
 8    off your explanation, you have a difference in the
 9    duties that you are assigned, based on the grade
10    that you are at?
11        A.      Yes.
12        Q.      Okay.  Are you subject to different
13    performance standards or expectations?
14        A.      Yes.
15        Q.      Is there anything else that's different
16    between the grades that you haven't already
17    explained to me?
18        A.      No.
19        Q.      Okay.  Now you said Tenesha Burks was
20    your supervisor when you started.  At some point
21    did Ruth Duda become your supervisor?
22        A.      July of 2019.
23        Q.      Miss Duda became your supervisor in 2019?
24        A.      I retract.  Tenesha Burks remained my
25    supervisor until she left the position April of

 **Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    2018 in which Miss Duda became my supervisor.  At

2    that time Miss Duda was the nurse manager of OCC.

3         Q.    Okay.  Do you know when Miss Duda became

4    the nurse manager of OCC?

5         A.    She became the nurse manager of OCC in,

6    when they came over in July, end of June of 2019.

7    I don't have the exact date, but 2017 --

8         Q.    Okay.

9         A.    -- she and Dr. Tran came to office of

10   communicator.

11        Q.    Okay.  So, and correct me if I am wrong,

12   does that mean Miss Duda was your secondary

13   supervisor beginning June or July of 2017?

14        A.    Miss Duda was my overall supervisor of

15   April of 2018 when Miss Burks resigned from her

16   position.

17        Q.    Okay.  Did you report at all to Miss Duda

18   prior to April of 2018?

19        A.    No.

20        Q.    Okay.  Did Miss Burks report at all to

21   Miss Duda prior to April of 2018?

22        A.    No.

23        Q.    Okay.  You kind of alluded to this, but

24   it's my understanding that there was some

25   reorganization within the OCC.  Can you tell me



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street       6420 W. 95th Street      800 E. 1st Street
Topeka, KS 66604          Suite 101                Suite 305
785-273-3063              Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com       913-383-1131             316-201-1612

**DASHAUN MCCRAY**

1  about that?

2      A.    Dr. Tran and Ruth Duda came to OCC end of

3  June 2017.  I can't recall the exact date.  Dr.

4  Parker was still our chief.  Miss Burks reported

5  to Dr. Parker.  Dr. Tran was basically as the, a

6  doctor that they brought over there, but she

7  wasn't our chief at that time until they

8  transitioned from Dr. Parker being the chief to

9  Dr. Tran becoming the chief.  Miss Duda was the

10  nurse manager at that time.  And Miss Burks was

11  never instructed that her immediate report was

12  Ruth Duda, and she continued to report to Dr.

13  Parker and then to Dr. Tran.

14      Q.    Okay.  You said Miss Burks was never

15  instructed that Miss Duda was her immediate

16  report?

17      A.    Correct.

18      Q.    Are you basing, what are you basing that

19  off of?

20      A.    I am basing that off of that Miss Burks

21  reported to Dr. Tran as the supervisor or program

22  analyst.  And Miss Duda reported to Dr. Tran as

23  the nurse manager.

24      Q.    Okay.  I see.  Did you have any specific

25  conversation with Miss Burks about that, the



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    reporting structure?

2        A.    That was in 2018.

3        Q.    Okay.  Well, so my question is a little

4    bit more specific.  I want to know if you had any

5    specific conversation with Miss Burks about the

6    reporting structure issue, whether or not she

7    received any instruction about who she should

8    report to?

9        A.    Yes.

10       Q.    Okay.  You did have a specific

11   conversation with Miss Burks about that?

12       A.    Yes.

13       Q.    Okay.  Can you tell me about that

14   conversation?

15       A.    At that time Miss Burks was still my

16   direct supervisor, Miss Duda did not have any role

17   in regards to our -- she was just coming in to

18   our unit.  And so her role was just to be there

19   as the nurse manager.  And then Miss Burks still

20   ran the daily operations, and she was never given

21   a new, excuse me, a new position description

22   stating her report level except for reporting to

23   Dr. Parker and being the supervisor over all of

24   the staff and office communicator.

25       Q.    Okay.  And that's the discussion that you



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1    specifically had with Miss Burks?

2          A.    Yes.

3          Q.    Okay.  This is going to be a silly

4    question, but when Miss Duda came, did you have

5    any interactions with Miss Duda after she came to

6    the office of the OCC in 2017?  And I mean in the

7    days or weeks after she came.

8          A.    She gave me the disciplinary action.

9          Q.    Okay.  In, that was in 2017 that you

10   received that?

11         A.    Yes.

12         Q.    Okay.  This is going to be a silly

13   question, I know, just bear with me, but when Miss

14   Duda came to the OCC was she aware of your race?

15         A.    Not prior to seeing me.

16         Q.    Right.  But when she came to the OCC if

17   you had a face-to-face interaction in those days

18   and months, was she aware of your race?

19         A.    Yes.

20         Q.    Okay.  Okay.  I want to go back to your,

21   the nurse grades for a second.  Did you ever apply

22   to be promoted from your grade level 2 and on up?

23         A.    Yes.

24         Q.    Okay.  How many times did you apply?

25         A.    I applied once.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# DASHAUN MCCRAY

1    Q.    Okay.    So it is your testimony today that
2  you only applied once to become a nurse level 3?
3    A.    Each time you have a proficiency they
4  look to grade you to the next grade level.
5    Q.    Uh-huh.
6    A.    Being that each time you have a
7  proficiency you are looking to be the next grade
8  level, so grade 2 is looking to be a grade 3.
9    Q.    Uh-huh.
10   A.    So every time I had a proficiency I go
11  for grade 3.
12   Q.    Okay.
13   A.    So --
14   Q.    Now, do you have to apply to be the grade
15  3 or do they just automatically consider you?
16   A.    It's a consideration based on your
17  proficiency.
18   Q.    Okay.    So you don't have to submit any
19  paperwork specifically to say please consider me
20  to be grade 3?
21   A.    No.    You have to have your proficiency
22  meet the criteria and the qualifications.
23   Q.    I am sorry, can you say that again?
24   A.    You have to have your proficiency meet
25  the criteria and the qualifications.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1      Q.    Okay.   Let the record reflect I'm going

2   to hand the witness what's been marked as Exhibit

3   4.

4            (THEREUPON, Deposition Exhibit No 4 was

5   marked for identification.)

6      BY MR. VANORSBY:

7      Q.    I meant to go through this with you

8   earlier, but do you recognize the document I've

9   handed you?

10     A.    Yes.

11     Q.    What is it?

12     A.    It is the board action for my initial

13  proficiency.

14     Q.    Okay.   If you know, does it show what

15  grade and step you were at this time?

16     A.    Nurse 2, step 5.

17     Q.    And where do you see that information?

18     A.    Box 7.

19     Q.    Okay.  I see it.   There we go.   When you

20  were hired on were you a probationary employee?

21     A.    Yes.

22     Q.    For how long?

23     A.    Two years.

24     Q.    So your probation would have ended at

25  what point?   January of 2018?



5111 SW 21st Street            6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604              Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    A.    December, 2017.

2    Q.    Okay.  That sounds right.

3    A.    And I see that I was incorrect in my

4    initial hiring step.

5    Q.    I am sorry, what did you --

6    A.    I was thinking I was step 6, but I was

7    step 5.

8    Q.    Oh, I see.  And I am handing the witness

9    Exhibit 5.

10         (THEREUPON, Deposition Exhibit No 5 was

11   marked for identification.)

12   Q.    You can put that one off to the side.

13   Let's just clean this up a little bit.  I will

14   hand you Exhibit 5.  I'm going to take these and

15   clean these up.

16         MR. THOMAS:  What's the difference?  Oh,

17   nevermind.

18   BY MR. VANORSBY:

19   Q.    Okay.  Do you recognize Exhibit 5?

20   A.    Yes.

21   Q.    What is it?

22   A.    It is the board action from my

23   proficiency for the year of 2016.

24   Q.    And can you tell me the date?

25   A.    2-16-2017.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    Q.    Okay.  And did you have to submit

2    anything to the board, again, the nurse standards

3    board, for them to consider you for nurse level 3?

4    A.    No.  It's based on your proficiency and

5    any documentation that's within the proficiency

6    that shows that you meet the criteria for the next

7    grade.

8    Q.    Okay.  What was the result of this board

9    action?

10   A.    I did not meet the educational

11   requirement and so I remained a nurse 2.

12   Q.    Okay.  Did you meet the years of

13   experience requirement?

14   A.    Yes.

15   Q.    Okay.  Did you meet the performance

16   requirements?

17   A.    It does not, that's based on nurse grade

18   3.

19   Q.    Okay.  The performance requirements to be

20   promoted to nurse 3?

21   A.    Yes.

22   Q.    Okay.  So as the result of this board

23   action is that you were denied the promotion to

24   nurse 3?

25   A.    Well, it's never a denial of promotion to



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

**DASHAUN MCCRAY**

1  nurse 3 unless you appeal it.

2        Q.    Okay.  So it's just --

3        A.    Stating that I remained a nurse 2.

4        Q.    Okay.  As far as what's indicated on this

5  record, if you look on Page 2, does it reflect

6  that you are not promoted?

7        A.    Yes.

8        Q.    And that box is checked?

9        A.    Yes.

10        Q.    Okay.

11              (THEREUPON, Deposition Exhibit No 6 was

12  marked for identification.)

13        BY MR. VANORSBY:

14        Q.    Let the record reflect that I am handing

15  the witness Exhibit 6.  Do you recognize that

16  document?

17        A.    Yes.

18        Q.    What is it?

19        A.    It is my proficiency evaluation from the

20  board from my proficiency of the year 2017.

21        Q.    Okay.  And is this document dated?

22        A.    1-18-2018.

23        Q.    Okay.  So this is approximately a year

24  after the prior Exhibit 5; is that correct?

25        A.    Correct.

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

1    Q.    What was the result of this board action?

2    A.    This board action shows that I did not

3    meet the educational requirements, I do meet the

4    years of experience and time and grade for

5    consideration, and it does not indicate the

6    performance requirements are met or set forth in

7    the nurse qualifications standards board.

8    Q.    Okay.  All right.  And so box 6 reflects

9    that you were not promoted; correct?

10   A.    Correct.

11   Q.    Does it give a time indication for when

12   the board might reconsider you for a promotion to

13   nurse 3?

14   A.    One year.

15   Q.    Can you tell me who was on the board, who

16   made this decision?

17   A.    Heather Brown, Christopher Graves, Pamela

18   Burns and Virginia Hartman and Berry Werringer.

19   Q.    Okay.  And who was it approved by?

20   A.    Norman Forbes.

21   Q.    Who is Norman Forbes?

22   A.    At that time he was the nurse executive.

23   Q.    Okay.

24        (THEREUPON, Deposition Exhibit No 7 was

25   marked for identification.)



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

**DASHAUN MCCRAY**

1     BY MR. VANORSBY:

2         Q.    Let the record reflect I am handing the

3     witness Exhibit 7.  Do you recognize Exhibit 7?

4         A.    Yes.

5         Q.    What is it?

6         A.    It is a board action for a review of

7     documents from my proficiency on 2-15 of 2018.

8         Q.    So approximately a month after Exhibit 6?

9         A.    Yes.

10        Q.    Okay.  Do you know why the board is

11    reconsidering their action just a month later?

12        A.    Due to my performance within the facility

13    level, my documentation was reviewed to show that

14    I did not meet the education requirement, but I

15    meet the years of experience and I actually meet

16    the indicated performance requirements that met

17    for the national qualifications standards.

18        Q.    Okay.  And so the result, what was the

19    result of this board action?

20        A.    Promoted to nurse 3.

21        Q.    Okay.  In the time, between the time that

22    you submitted that, or you were considered, let me

23    get that correct.  For the promotion as shown as

24    Exhibit 6, and as shown in Exhibit 7, so

25    approximately 30 days, did anybody write an appeal

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    on your behalf?

2       A.    I wrote my appeal on my behalf with my

3    nurse mentor, I had to take it to my immediate

4    supervisor because they are the only one who could

5    submit it.

6       Q.    **Did anyone submit an appeal on your**

7    **behalf?**

8       A.    Ruth Duda.

9       Q.    **Okay.**

10          (THEREUPON, Deposition Exhibit No 8 was

11    marked for identification.)

12       A.    And also I was halfway through my

13    master's degree, so they could waiver me as a

14    nurse 3.

15       BY MR. VANORSBY:

16       Q.    **Okay.  Let the record reflect I'm handing**

17    **the witness Exhibit 8.  Do you recognize that**

18    **document?**

19       A.    Yes.

20       Q.    **Okay.  What is it?**

21       A.    It is the appeal.

22       Q.    **What appeal?**

23       A.    My, the appeal for me to, the

24    professional standards board to evaluate me for

25    the nurse 3.



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

### DASHAUN MCCRAY

1      Q.    And you said from me, right?  I want to
2   ask you, it says from chief of care of community
3   care, who was that?
4      A.    Ruth Duda.
5      Q.    Okay.  So this memorandum, although you
6   say you wrote it is going to the appeal board, it
7   is coming from Miss Duda?
8      A.    It has to be submitted by your direct
9   supervisor.
10     Q.    All right.  So it's coming from Miss
11  Duda, correct?
12     A.    Yes.
13     Q.    All right.  Just go ahead and look at the
14  last page on there, it's marked USA 440.  Whose
15  name appears at the end of this document?
16     A.    Ruth Duda.
17     Q.    Okay.  So nurse standards board, they get
18  this appeal as shown on Exhibit 8; is that
19  correct?  I think that's a 8.  And as a result of
20  this document that's coming from Miss Duda they
21  reconsider their decision not to promote you?
22     A.    Correct.
23     Q.    Okay.  So you get promoted to nurse 3,
24  right?
25     A.    Uh-huh.



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street       6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604          Suite 101                 Suite 305
785-273-3063              Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com       913-383-1131              316-201-1612

### DASHAUN MCCRAY

1      Q.     How did job duties change once you were
2  promoted?
3      A.     Promoted to nurse 3, I was more at that
4  time a leader amongst the staff nurses, just a
5  person, a resource person, I was utilized as a
6  resource person by the VISN, utilized as a
7  resource person by the chief of, at that time the
8  chief of GEC, and just as a resource person for
9  the office of community care throughout the
10  facility and throughout the VISN.
11      Q.     Okay.  Did you have your own team?
12      A.     I had a team based on my service line, so
13  at that time my service line was GEC, that was the
14  home health and dialysis and dental.
15      Q.     Okay.  So you already had your own team
16  even when you were a nurse 2?
17      A.     Yes.
18      Q.     Okay.  Did you get a raise in pay as the
19  result of your promotion?
20      A.     Yes.
21      Q.     Who was your supervisor at the time that
22  you received your promotion?
23      A.     Ruth Duda.
24      Q.     Okay.  And again, this may sound like a
25  silly question, but at the time Miss Duda agreed



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    to sign this -- submit this appeal to the board,

2    did she know you were African American?

3          A.    Yes.

4          Q.    Okay.  How long were you a nurse 3?

5          A.    I was a nurse 3 from the date on here, so

6    2-15-2018 to May the 23rd of 2020.

7          Q.    Okay.  Which would have been when you

8    left to go to Colorado, right?

9          A.    Yes.

10         Q.    All right.  As of 2018, how long had you

11   been working with Miss Duda, approximately?

12         A.    Almost ten months.

13         Q.    Okay.  So after those ten months of

14   working with Miss Duda, did you apply for another

15   promotion in the OCC?

16         A.    Not at that time.

17         Q.    Okay.  When did you apply for a promotion

18   in the OCC?

19         A.    When the nurse manager promotion was

20   posted.

21         Q.    Okay.  And when was that?

22         A.    Possibly November or December of 2018.

23         Q.    Okay.  So as of November 2018 for how

24   long had you been working with Miss Duda?

25         A.    About a year and six months.



## DASHAUN MCCRAY

1               MR. THOMAS:  November or December of

2       2019?

3               MR. VANORSBY: 18.

4       A.      '18 because she came there in June of

5       2017.

6       BY MR. VANORSBY:

7       Q.      **During that year and six months, did you**

8       **have daily interactions with Miss Duda?**

9       A.      No.

10      Q.      **Okay.  Tell me about the quantity of**

11      **interactions you would have had with Miss Duda.**

12      A.      Staff meetings once a month.  Response to

13      any congressionals, since I was considered a

14      resource person for the office of community care

15      and actually one of the longest nurses on the

16      unit, I was one that people came to for

17      clarification.

18      Q.      **Okay.  Including Miss Duda?**

19      A.      Including Miss Duda.

20      Q.      **Okay.  So 2018 comes around, you have**

21      **been working with Miss Duda for about a year and**

22      **six months.  You decide to apply for, November of**

23      **2018 you decide to apply for the nurse manager**

24      **position.  What interested you in the position?**

25      A.      I met the criteria.


Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1      Q.    I mean, was there anything else, the
2   reason why you applied for that position?
3      A.    Because I love working in the office of
4   community care and serving our veterans.
5      Q.    Okay.  Tell me about the application
6   process.
7      A.    Application and references.
8      Q.    Okay.  Was there, were their interviews?
9      A.    Yes.
10      Q.    Phone interviews?
11      A.    Face-to-face interview.
12      Q.    Face-to-face interviews.  Do you remember
13   who you might have interviewed with?
14      A.    I don't recall.
15      Q.    Okay.  Was it a panel?
16      A.    I believe it was a panel, but I can't --
17      Q.    The video person is probably mad at me, I
18   keep touching his microphone.
19      A.    I can't remember.  I can't recall.
20      Q.    Okay.  Did you have any understanding
21   regarding whether or not you continue working with
22   Miss Duda if you got the nurse manager position?
23      A.    Yes.
24      Q.    Okay.  What was your understanding?
25      A.    That she would be my direct supervisor.


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

## DASHAUN MCCRAY

1      Q.     Okay.

2      A.     Which she already was at that time.

3      Q.     Okay.  Do you recall at all who offered

4  you the position?  And we know you got the

5  position, I'm assuming things here, but do you

6  recall who offered you the position?

7      A.     Human Resources.

8      Q.     Okay.  Do you recall who the selected

9  official was?

10      A.     Ruth Duda.

11      Q.     Okay.  So Ruth Duda would have selected

12  you for this position?

13      A.     Yes.

14      Q.     Okay.  Is the nurse manager position a

15  promotion, a lateral demotion, what would -- ?

16      A.     It was a lateral in pay for me based on

17  being a nurse 3 already, but then I became the

18  direct supervisor of about 15 nursing staff.

19      Q.     Okay.  So it was essentially a promotion

20  because you were becoming a supervisor?

21      A.     Yes.

22      Q.     Were you a supervisor before becoming a

23  nurse manager?

24      A.     No.

25      Q.     Okay.  Did you have any conversation at

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1    all with Miss Duda about her selection to the

2    nurse manager position?

3         A.    Dr. Raffi told me that you came and you

4    spoke with him in regards to the situation at your

5    desk in April, and he asked me why would I want

6    to promote you knowing that I had, that you had

7    reported me in regards to the situation on April

8    the 5th of 2018, speaking unprofessionally with

9    DaShaun at her work area.

10        Q.    Okay.  Now you just said something there,

11   I assume that what you are saying --

12        A.    The chief of staff.

13        Q.    Wait a second.  I would assume that what

14   you are saying is that Ruth Duda said those words?

15        A.    Yes.

16        Q.    Okay.  Did you have any other discussion

17   with Miss Duda at all about your promotion?

18        A.    She stated that she still felt that I was

19   the most qualified for the position.

20        Q.    Anything else?

21        A.    No.

22        Q.    Okay.  Again, silly question, but we are

23   making a record.  At the time Miss Duda selected

24   you for your promotion, did she know you were

25   African American?

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# DASHAUN MCCRAY

1    A.    Yes.

2    Q.    Okay.  And by what you are telling me

3 today, I assume she knew that you had at some

4 point reported to her supervisor that she did

5 something unprofessional?

6    A.    Correct.

7    Q.    And despite that, she chose you for the

8 promotion?

9    A.    Yes.

10    Q.    Okay.  You talked about this a little bit

11 earlier, that you received a disciplinary action

12 in 2017, right?

13    A.    Yes.

14    Q.    Okay.

15        (THEREUPON, Deposition Exhibit No 9 was

16 marked for identification.)

17    BY MR. VANORSBY:

18    Q.    Do you recall what the discipline was

19 for?

20    A.    Yes.  Access to the chart of someone I

21 was familiar with.

22    Q.    Okay.  I will hand you --

23        MR. VANORSBY:  I will get you one in just

24 a second, Danny.  Exhibit 9.

25    BY MR. VANORSBY:

 5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1      Q.    Do you recall or do you recognize that

2   document?

3      A.    Yes.

4      Q.    Okay.  What is it, what is Exhibit 9?

5      A.    A reprimand.

6      Q.    Okay.

7      A.    A proposed reprimand.

8      Q.    Okay.  And is this the same discipline or

9   reprimand that we've been discussing earlier?

10     A.    Yes.

11     Q.    Can you flip to the last page of Exhibit

12  9.

13     A.    (Witness complies).

14     Q.    Tell me if his name appears at the end.

15     A.    At the end my name.

16     Q.    That's a valid point.  Above your name

17  who signed this document?

18     A.    Ruth Duda.

19     Q.    Okay.  And what date did you receive this

20  document?

21     A.    7-14-2017.

22     Q.    Okay.  Were you given a chance to reply

23  or appeal to this proposed reprimand?

24     A.    Yes.

25     Q.    Okay.  And did you do that?

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park. KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1     A.    Yes.

2     Q.    Did you do that in writing?

3     A.    Yes.

4     Q.    Okay.  And what was the basis for your

5  appeal?

6     A.    Assisting a nurse that was working ortho

7  authorizations, but did not understand the

8  requirements for that.

9     Q.    Okay.  And who did you submit that appeal

10 to?

11    A.    Dr. Revote, Araceli Revote.

12          MR. THOMAS:  Can you spell that?

13    A.    A-R-E-C-E-L-I, I believe.  And the last

14 name Revote.  R-O-V -- R-E-V-O-T-I (verbatim).

15    BY MR. VANORSBY:

16    Q.    On this proposed reprimand, how many

17 times, there's a list of things that said

18 specification, A, B, C, do you understand what

19 those are?

20    A.    Uh-huh.

21    Q.    What are those specifications?

22    A.    Times that I accessed the documents, or

23 this person's chart.

24    Q.    Okay.  And how many of those

25 specifications are listed?



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604              Suite 101                   Suite 305
785-273-3063            Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

### DASHAUN MCCRAY

1        A.     26.

2        Q.     26.    Okay.    And it's your testimony today

3   that you accessed this individual's records 26

4   times merely for training?

5        A.     Yes.

6        Q.     I am going to hand the witness what's

7   been marked as Exhibit 9.    I'm sorry.    Did I say

8   9?    Exhibit 10.

9            (THEREUPON, Deposition Exhibit No 10 was

10  marked for identification.)

11       BY MR. VANORSBY:

12       Q.     Before we talk about Exhibit 10 though,

13  as far as Exhibit 9 goes that's just a proposed

14  reprimand, correct?

15       A.     Right.

16       Q.     It wasn't final yet?

17       A.     Correct.

18       Q.     I have handed you Exhibit 10, do you

19  recognize that document?

20       A.     Yes.

21       Q.     What is it?

22       A.     It's a reprimand decision.

23       Q.     Okay.    So at this point is the reprimand

24  final?

25       A.     Yes.



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1111               316-201-1612

### DASHAUN MCCRAY

1    Q.    All right.    Can you look on Page 3,
2  there's a blank page in there.    Other than your
3  signature who signed the document?
4    A.    Araceli Revote.
5    Q.    Okay.    And that's to make this reprimand
6  final?
7    A.    Yes.
8    Q.    All right.    Are you familiar with the
9  Mission Act?
10    A.    Yes.
11    Q.    Okay.    I know you are.    Can you describe
12  that for me.
13    A.    The Mission Act is based on working to
14  offer veterans care at the earliest point in time
15  that they can receive it within the Department of
16  Veterans Affairs, either for primary care within
17  20 days, for specialty care within 28 days.    If
18  they are unable to be seen within that wait time
19  period they are then offered the opportunity to be
20  appointed with a provider in the community for the
21  primary care or specialty care.
22    Q.    Okay.    I got the care and the community
23  part and I know that's your area, but as far as
24  you are saying veterans are going to be seen
25  within a certain period of time, was that a change

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1    from what was prior to or were the dates

2    shortened, lengthened, what -- can you tell me?

3         A.    The Mission Act was a change, the Mission

4    Act, I believe, came about, early 2019, yeah,

5    because it was basically, there were six criteria.

6    Not a facility that was within driving distance.

7    There are some states that don't have a full-time

8    VA facility.  A veteran that is required to be,

9    the wait time is that the veteran either for

10   primary care wait over 20 days, specialty care

11   wait over 28 days.  The drive time, if they have

12   to drive more than 30 minutes for primary care or

13   more than 60 minutes for specialty care.  If they

14   were grandfathered from the Choice Act as a Choice

15   40 veteran, meaning that they were a 40 miler.

16        Q.    Okay.

17        A.    There is one other criteria, but I don't

18   recall it because it really didn't -- very

19   permanent.

20        Q.    Okay.  Now we live in Kansas, we have

21   three population centers, right, but they are all

22   mostly east side.  So did the Mission Act really

23   have a big impact on your office here in Wichita?

24        A.    Yes.  The Mission Act had a big impact on

25   our office in Wichita based on a large percentage



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    of our catchment is in western Kansas and we do

2    not have CBOCs in those locations, and so those

3    veterans have the right to be able to see, seek

4    care in the community.

5         Q.    Okay.  You said CBOC, what is that?

6         A.    Community based outpatient clinic.

7         Q.    Okay.  So you had a lot of veterans out

8    in western Kansas that you had to take care of,

9    right?

10        A.    Correct.

11        Q.    Did the Mission Act, I guess, expand that

12   number of people that you had to interact with?

13        A.    For community care, yes, because it, we

14   took the responsibility back from the third party

15   administrator, and we had to take on the

16   scheduling and all of that for the veteran

17   population.  Our veteran population is about

18   35,000 for detachment of Wichita going west.

19        Q.    Okay.  Now, how big a change was that?

20   Small?  Big?  Little?

21        A.    It was a big change because our staff at

22   that time had not been required to schedule the

23   veterans, we just sent the authorizations to our

24   third party administrator and they had scheduled

25   the veterans.  But now with us taking on the



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1   scheduling it did change the impact of work
2   required from the staff.
3       Q.   What was required for scheduling?  And by
4   that do I mean, was there additional phone calls
5   that had to be made, things of that sort?
6       A.   Phone calls to identify veteran
7   preference to identify a vendor in the community
8   that is contracted, and to actually inform the
9   veteran of their appointed date and time of their
10  appointment.
11      Q.   Okay.  So would it be fair to say you had
12  more direct, sort of face-to-face, not necessarily
13  face-to-face, but direct contact with the veterans
14  following the implementation of the Mission Act?
15      A.   I always had direct contact with the
16  veterans because even when we had the Choice
17  program, I often did three-way calls so veterans
18  would be properly appointed.
19      Q.   Okay.  Now you mentioned that you had to
20  take over scheduling, was there anything else as
21  far as with the workflow or process that changed
22  with the implementation of a Mission Act?
23      A.   No workflow or process changes other than
24  the scheduling came back to us, we started using a
25  new product called CTM, I can't give you the,



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131                316-201-1612

## DASHAUN MCCRAY

1    other than what the acronym was --

2        Q.    Uh-huh.

3        A.    -- and it just showed us how to monitor

4    our metrics.

5        Q.    Okay.  In my review of some of the

6    communications, my understanding is there may have

7    been some new payment system that you guys had to

8    work through; is that right?

9        A.    eCAMS.

10       Q.    eCAMS, is there a system that you guys

11   started that started with an O, Oscar or something

12   like that?

13       A.    We had a new third-party administrator

14   that came in, Optum.

15       Q.    That's -- that's what I'm looking for.

16   Can you tell me about that.

17       A.    Optum was a third-party administrator,

18   they just was -- before we had been all TriWest in

19   our region and so the veteran class Optum got the

20   contract for regions 1, 2 and 3 and TriWest got

21   the contract for regions 4 and 5.

22       Q.    Okay.  So that had nothing to do with the

23   Mission Act, right?  Okay, one second.

24       A.    No.

25       Q.    Okay.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

### DASHAUN MCCRAY

1          MR. THOMAS:  We have been going an hour

2     and 40 minutes, can we do a break?

3          MR. VANORSBY:  Yes, I just got one

4     question about Optum.

5          BY MR. VANORSBY:

6          Q.    Okay.  My understanding is there was some

7     frustration with Optum, right?  Was there some

8     difficulty with them?

9          A.    To my knowledge, no difficulty with

10    Optum, except we didn't have the same vendors, so

11    we had Optum as one part of the United Healthcare

12    umbrella, so the vendors were basically marketed

13    to vendors that were already under United

14    Healthcare.  So a lot of our TriWest vendors that

15    we had used in the past weren't on Optums -- what

16    was I going to say?  On Optum's qualified vendors,

17    so they weren't, they weren't certified through

18    Optum to be vendors with us.

19         Q.    Okay.  And when did the change to Optum

20    occur?

21         A.    I don't recall the exact date.

22         Q.    Uh-huh.

23         A.    I just know that many of those changes

24    came about between like March of 2019 all the way,

25    you know, between the Optum and rolling out the



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604               Suite 101                    Suite 305
785-273-3063              Overland Park, KS 66212         Wichita, KS 67202
www.appinobiggs.com         913-383-1131                316-201-1612

# DASHAUN MCCRAY

1    CTM.

2        Q.    Okay.

3              MR. VANORSBY: So we can take a break.

4    We'll come back and I'll try to explore CTM a

5    little bit and we'll get more into some of the

6    specific claims in this case, okay.

7              THE VIDEOGRAPHER:  Standby.  The time is

8    approximately 11:28 a.m., we are going off the

9    record.

10             (THEREUPON, at 11:28 a.m., a recess was

11   taken, after which, 11:46 a.m., the following

12   proceedings were held:)

13             THE VIDEOGRAPHER:  Time is approximately

14   11:46 a.m.  We are back on the record.

15   BY MR. VANORSBY:

16       Q.    Okay.  Miss McCray, we took a break, do

17   you understand that you are still under oath?

18       A.    Yes.

19       Q.    Okay.  Before we took a break I told you

20   we would talk about CTM, and I know you don't

21   recall what the acronym stands for, but what --

22   generally what is CTM?

23       A.    Consult tracking manager.

24       Q.    All right.  There you go.  And that was a

25   new process that was implemented sometime after


Appino Biggs Reporting Service. Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

3/24/2023

93

### DASHAUN MCCRAY

1    March of 2019?

2        A.    Yes.

3        Q.    Tell me about that process.  If you can.

4        A.    It just monitored the metrics.

5        Q.    Okay.  Did that CTM process require any

6    additional training?

7        A.    TMS training.

8        Q.    Okay.  What do you mean by TMS?

9        A.    It's the training that they do through

10    the Department of Veteran Affairs' the video.

11        Q.    Okay.  Does that refer to talent

12    management system?

13        A.    Yes.

14        Q.    All right.  Okay.  We're going to go

15    ahead and get into the claims in this case.  Let's

16    mark the next two as well.

17            (THEREUPON, Deposition Exhibit No 11 was

18    marked for identification.)

19        BY MR. VANORSBY:

20        Q.    I will hand you a series of documents and

21    have you identify them, and then as we kind of

22    talk about your claims we'll go through those.  So

23    I've handed you what's been marked as Exhibit 11.

24    Do you recognize that document?

25        A.    Yes.



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604            Suite 101                   Suite 305
785-273-3063               Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com        913-383-1131                316-201-1612

## DASHAUN MCCRAY

1      Q.    What is it?

2      A.    Complaint of Employment Discrimination.

3      Q.    Whose complaint is it?

4      A.    Mine.

5      Q.    Did you write this or did you author this

6  document?

7      A.    Yes.

8      Q.    When is it dated, if you can tell me

9  that?

10      A.    3-30-2020.

11      Q.    Did you sign Exhibit 11?

12      A.    Yes.

13      Q.    And which box does it show your

14  signature?

15      A.    18.

16      Q.    Box 18.  Does this document show the date

17  of your initial contact with anyone in the EEO

18  office regarding this claim?

19      A.    1-31 of 2020.

20      Q.    Okay.  And again, this is a document that

21  you filled out that you signed?

22      A.    Yes.

23      Q.    Okay.

24            MR. VANORSBY: I think I gave you the

25  wrong document, Danny, I think I gave you the one



## DASHAUN MCCRAY

```
 1   with the sticker on it.
 2        A.   No, you gave me the one with the sticker
 3   on it.
 4        Q.   We are getting ready to move on to
 5   another document.
 6        A.   Oh.
 7             (THEREUPON, Deposition Exhibit No 12 was
 8   marked for identification.)
 9        A.   All right.
10   BY MR. VANORSBY:
11        Q.   I'm going to hand you Exhibit 12.  Do you
12   recognize that document?
13        A.   Yes.
14        Q.   And by that document I mean Exhibit 12.
15   Have you seen it before?
16        A.   Yes.
17        Q.   Do you see where in this document it
18   shows, well, what is this document?  I guess we'll
19   just start there.
20        A.   It's the Office of Resolution Management,
21   it is my initial claim.
22        Q.   Okay.  Is this the notice of acceptance
23   of the complaints that you made in Exhibit 11?
24        A.   Yes.
25        Q.   And do you see where in this document it
```



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

1   shows the claims are accepted?

2       A.    Events 1 through 8 is accepted for

3   investigation.  Number 4 on 000041.

4       Q.    Okay.  And events Number 1 through 8 are

5   those showing in the paragraph 2 and its subparts?

6       A.    Yes.

7       Q.    Okay.  Did you notify anyone with the EEO

8   that you believe the claims were improperly

9   formulated, incomplete or incorrect in any

10  fashion?

11      A.    No.

12      Q.    And you were given an opportunity to do

13  that, correct?

14      A.    Yes.

15      Q.    Okay.  I'm going to give you, at some

16  point during the EEO process did you give a

17  written statement under oath?

18      A.    I do not recall.

19      Q.    Okay.  I am going to hand you what's been

20  marked as Exhibit 13.

21           (THEREUPON, Deposition Exhibit No 13 was

22  marked for identification.)

23  BY MR. VANORSBY:

24      Q.    Do you recognize Exhibit 13?

25      A.    Yes.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1       Q.     Okay.  What is it?

2       A.     It is Office of Resolution Management

3   written affidavit of DaShaun McCray in the matter

4   of EEO Complaint of Discrimination filed by

5   DaShaun McCray.

6       Q.     Okay.  Is this the written statement that

7   you gave in the EEO proceedings?

8       A.     Yes.

9       Q.     If you look at the bottom of Page 1 on

10  Exhibit 13, does it show that you swore or

11  affirmed that the information given in response to

12  the following questions -- should be are --

13      A.     Yes.

14      Q.     -- are true and correct to the best of

15  your knowledge and belief?

16      A.     Yes.

17      Q.     Are those your initials, DM?

18      A.     Yes.

19      Q.     All right.  Would you flip to the last

20  page of Exhibit 13.

21      A.     (Witness complies).

22      Q.     Does exhibit, does Page 75, that's the

23  page that's marked 75 of Exhibit 13, reflect that

24  you made this statement under penalty and perjury

25  on July 15 of 2020?


Appino  Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# DASHAUN MCCRAY

1      A.    Yes.

2      Q.    Is that your electronic signature there

3   at the bottom?

4      A.    Yes.

5      Q.    Okay.  All right.

6            (THEREUPON, Deposition Exhibit No 14 was

7   marked for identification.)

8      BY MR. VANORSBY:

9      Q.    This is Exhibit 14 and you can hold on to

10  those because we'll refer to those.  Or just put

11  them over there (indicating).  Do you recognize

12  Exhibit 14?

13     A.    (Witness reviews documents).  Yes.

14     Q.    Okay.  What is it?

15     A.    It is the Complaint and Jury Demand.

16     Q.    Is that the complaint that you filed in

17  this case --

18     A.    Yes.

19     Q.    -- that sets out your claims that you are

20  bringing?

21     A.    Yes.

22     Q.    Okay.  Have you reviewed it before?

23     A.    I have seen it and I believe I had to

24  have it notarized, I am not sure.

25     Q.    Okay.  We'll kind of go through this



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

**DASHAUN MCCRAY**

1    document.   I want you to go, first, we'll go

2    through the specific claims, counts that you

3    brought in this case, okay?  And that starts on

4    Page 6 of Exhibit 14.  Okay.  Count one, what

5    type of claim are you bringing against the VA in

6    this case?

7              MR. THOMAS:  Objection.  Calls for a

8    legal conclusion.  Go ahead and answer.

9        A.    Race discrimination, disparate treatment.

10   BY MR. VANORSBY:

11       Q.    So the basis of this claim is that you

12   were treated differently from people outside of

13   your race group being African American?

14       A.    Yes.

15       Q.    Okay.  What does count 2 allege?

16       A.    Racially hostile environment.

17       Q.    Okay.  Do you understand that the court's

18   dismissed that claim?

19       A.    Yes.

20       Q.    Okay.  Go to count 3, please.  What does

21   count 3 allege?

22       A.    Retaliation.

23       Q.    Okay.  And specifically retaliation for

24   what?

25              MR. THOMAS:  Calls for a legal


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

# DASHAUN MCCRAY

1  conclusion.  Objection.  Form.  Foundation.

2  Answer if you can.

3      A.    Retaliation for going to her direct

4  supervisor with my complaint.

5      BY MR. VANORSBY:

6      Q.    Okay.  And when did you do that, the

7  date?

8      A.    January 24th, 2020, and January 30th,

9  2020.  Approximately.

10     Q.    Okay.  What's Count 4 allege?

11     A.    Constructive discharge.

12     Q.    Okay.  And do you understand that the

13  court's dismissed that claim with prejudice?

14     A.    Yes.

15     Q.    Going back to your retaliation claim, you

16  mentioned that you mentioned some pronouns there,

17  her, her supervisor, who are you talking about?

18     A.    Ruth Duda's supervisor, Dr. Robert

19  Cummings.

20     Q.    Okay.  All right.  I want to look back to

21  Page 2, okay?  Of Exhibit 14.  And I want to go

22  through the events that you have alleged in this

23  case to be discriminatory or retaliatory, okay?

24  And I understand that to be set out in starting in

25  paragraph 12, so that's what we'll go through,



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1  okay?  All right.  Paragraph 12(a) says from,

2  well, why don't we do it this way.  Can you read

3  paragraph 12(a)(i) for me?

4       A.    From April 2018 through the present, Ruth

5  Duda, community care service chief, attempted to

6  intimidate plaintiff when she spoke with her in

7  her workplace.  Ruth Duda yelled at her in a

8  public area while discussing another employee's

9  pay, and Ruth Duda stated if she wants to get paid

10  you better tell her to send us the form.

11      Q.    Okay.  So the event shown in Paragraph

12  12(a)(i).  Tell me about that event.

13      A.    Tenesha Burks left on medical leave,

14  chose to not return to the facility.  There was

15  some human resources documentation that was

16  required of her.  And Ruth Duda came to me telling

17  me to inform her.

18      Q.    Inform her what?

19      A.    To sign the, send the paperwork or she

20  would not get paid.

21      Q.    Okay.  When did that event happen?

22      A.    April 5th, 2018.

23      Q.    Okay.  Now, the allegation says from 2018

24  to present, are there any other events that you

25  are contending that fall under paragraph 12(a)(i)?

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1      A.      Ruth Duda standing over me in my work

2    station.

3      Q.      Okay.  When did that event occur?

4      A.      Well, this event that I speak of occurred

5    in January of 2020.

6      Q.      Okay.

7      A.      Where she came to me in regards to a

8    meeting that we had had the previous day with the

9    executive leadership team in which Mr. Ament asked

10   me to speak and asked Ruth to let me speak.  And

11   she was not happy with that situation and so she

12   came to me on that day and stated that you just

13   stay here and worry about these metrics, and Dr.

14   Cummings doesn't want you to be a part of the

15   meeting that I'm having today with Via Christi.

16     Q.      Okay.  Did you also receive a E-mail

17   directly from Dr. Cummings that asked you not to

18   attend some meeting?

19     A.      The E-mail that came from Dr. Cummings

20   was wanting a plan of action for the metrics in

21   regards to the decline.

22     Q.      Okay.  So you've told me about an event

23   April 5th, 2018, and an event in January of 2020.

24   Are there any other events that you believe fall

25   under this paragraph that we are talking about?

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1          A.     March of 2020.

2          Q.     Okay.  Tell me about that event.

3          A.     We were working on our Telework

4     agreements, and Susan Phillips asked her lead a

5     question in regards to filling out the

6     documentation for Telework.  The lead informed

7     Ruth Duda of this information.  Ruth Duda goes out

8     to the floor amongst many staff in which staff

9     across the cubicle could hear her tell Susan

10    Phillips that I have heartache allowing you to go

11    Telework if you don't understand how to fill out

12    this documentation.

13         Q.     Okay.  So tell me how that event was Miss

14    Duda attempting to intimidate you?

15         A.     In that event Miss Phillips sent an E-

16    mail to me in regards to how she felt in that

17    situation.  Miss Williams sent an E-mail to me in

18    how she felt in that situation.  Miss Schopf sent

19    an E-mail to me in how she felt in that situation.

20    And when I asked Miss Duda in regards to it she

21    says, that's not your staff.

22         Q.     Okay.  Was Miss Phillips your staff?

23         A.     No.

24         Q.     Okay.  Where were you at when you asked

25    Miss Duda about, where you had that conversation



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

1    with Miss Duda?

2        A.    In my office.

3        Q.    Okay.   It was you and Miss Duda in your
4    office?

5        A.    Me and Miss Duda in my office.

6        Q.    And she said to you that's not your
7    staff?

8        A.    Correct.

9        Q.    Okay.   And my understanding is that
10    you're claiming that that was an attempt to
11    intimidate you?

12        A.    That was an attempt to basically
13    intimidate me in regards to me asking her a
14    question in regards to the staff that has been
15    used to working with me.   And as we know, Miss
16    Duda hadn't been -- just a lot of things, so the
17    staff just came to me.

18        Q.    Okay.   Okay, so we've talked about, as
19    far as this paragraph goes, this an attempt at
20    intimidation, we talked about April 5th, 2018,
21    January 2020, March 2020.   Are there any other
22    events?   And that's just this paragraph, I'm not
23    saying regarding any other claims that you've
24    brought.

25        A.    She, on February 14th, 2020, called me to



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

1  a meeting and then she said, I want you to know
2  that I invited Heather Brown.  Heather Brown is my
3  mentor within the facility.  The person who
4  actually wrote my appeal for the nurse 3, and the
5  person who I went to with things on a regular
6  basis, so, you know, helped me with coping with my
7  work situation.  Heather Brown was there.  She set
8  there.  Ruth spoke about when stating that I took
9  the leadership from Janelle Adams during a
10 meeting.  And when she stated that I had something
11 in regards to informing her that she was incorrect
12 in a meeting, and when Mr. Ament had requested
13 that I speak, that I should always leave the
14 opportunity to speak to the chief.
15     Q.    Okay.
16     A.    So and then she followed that with an E-
17 mail that she sent me, with everything written out
18 in regards to what was discussed in that meeting
19 and the idea of bringing Heather Brown there
20 because she's your mentor, I felt was
21 inappropriate, because that was defamation of
22 character.
23     Q.    Okay.  And you said, and so you are
24 saying that this February 14 event was an attempt
25 to intimidate you?


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

```
 1        A.    Yes.

 2        Q.    Okay.  Slight tangent -- if you look on

 3  Page 3 of Exhibit 14, at the bottom there is a

 4  paragraph marked vii --

 5        A.    Uh-huh.

 6        Q.    -- is that the event that you are talking

 7  about right now?

 8        A.    Yes.

 9        Q.    Okay.  So we'll get to that in a minute.

10        A.    Okay.

11        Q.    All right.  Very good.  So we talked

12  about April 5th, January 2020, March 2020, and

13  February 14th of 2020.  Any other events under

14  this paragraph?

15        A.    I don't recall.

16        Q.    Okay.  So of the four events that we have

17  talked about, regarding this subparagraph, did any

18  of the events result in a reduction to your pay?

19        A.    No.

20        Q.    Okay.  Did any of the events result in a

21  demotion?

22        A.    No.

23        Q.    Have you ever been demoted?

24        A.    No.

25        Q.    Okay.  Did any other events result in a
```

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1    disciplinary action?

2        A.    No.

3        Q.    Okay.   Decrease in the benefits that you

4    received?

5        A.    No.

6        Q.    Okay.   The April 5th, 2018, event, well,

7    tell me why you believe that that event, if you

8    do, was because of your race.

9        A.    She came to me in regards to Tenesha

10   Burks, who is also an African American female, and

11   telling me what I need to do in regards to

12   informing Tenesha Burks.   In situations I had

13   never seen her approach any of my Caucasian

14   counterparts in that way in regards to any

15   situation, not even in an open forum would she

16   speak to my Caucasian counterparts that way.

17       Q.    What do you mean by that way?

18       A.    Demanding that I be in contact with

19   somebody in regards to their pay, their situation

20   with their work.

21       Q.    Okay.   Is there any other event, that you

22   know of, where, and in this situation it's someone

23   whose not returning to work; let's say, for

24   example, a Caucasian, or any race or person

25   decided not to return to work and Miss Duda had to



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

### DASHAUN MCCRAY

1    approach them about it?  That was a bad question.

2    Let me ask it this way.

3         Are you aware, who are the similar situated

4    employees that you believe Miss Duda should

5    approach?  Or could have approached?

6         A.    Nobody within the unit.

7         Q.    Okay.  Did you have a good working

8    relationship with Miss Burks?

9         A.    Yes.

10        Q.    Did you communicate to her outside of

11   work?

12        A.    Yes.

13        Q.    Did you text?

14        A.    Not during that time.

15        Q.    Okay.

16        A.    Because she was under duress.

17        Q.    You had her phone number?

18        A.    Yes.

19        Q.    Okay.  And is it fair to say that your

20   testimony is because you're black and Tenesha was

21   black, I'm sorry -- African American, and the fact

22   that Miss Duda approached you, that must be

23   because of race.

24        A.    Yes.

25        Q.    Okay.  So January of 2020 event where



Appino  Biggs Reporting Service, Inc.

5111 SW 21st Street          6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604             Suite 101                   Suite 305
785-273-3063                 Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com          913-383-1131                316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

### DASHAUN MCCRAY

1    Miss Duda is standing over you, we discussed that.

2    What's the basis for your conclusion that Miss

3    Duda stood over you because of your race?

4         A.    Her desire to intimidate and make people

5    feel beneath her.  And that's it.

6         Q.    Okay.  Now you said people.

7         A.    And so -- okay.  Her desire to intimidate

8    and to make people of color intimidated by her.

9    Her ability to do how she had done.  I mean.

10        Q.    And this is the same Ruth Duda who we've

11   talked about, submitted appeal on your behalf so

12   you could get a promotion, right?

13        MR. THOMAS:  Asked and answered.

14   BY MR. VANORSBY:

15        Q.    Go ahead and answer.

16        A.    As I stated, the appeal was written by me

17   and had to be signed by her.

18        Q.    And she signed it?

19        A.    Correct.

20        Q.    And she sent it in?

21        MR. THOMAS:  Asked and answered.

22   BY MR. VANORSBY:

23        Q.    So we got a clear record.  She sent it

24   in?

25        A.    Yes.



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1      Q.    Okay.  And she personally selected you

2   for a promotion, correct?

3      A.    Yes.

4      Q.    Okay.  Let's go to paragraph ii.  Can you

5   read that paragraph for me?

6      A.    Pertaining January 28 of 2019 and January

7   4th, 2020, Ruth Duda required plaintiff to

8   complete the staffing model duty without providing

9   her nurse manager training.

10      Q.    Okay.  What is staffing model duty?

11      A.    Staffing model is how we would input our

12   numbers for identifying staffing needs.  I was not

13   trained on that duty or task.  She would sit

14   there, do the task, have me watch her and, oh,

15   that's how you do it.

16      Q.    Okay.  So based off of what you are

17   telling me, there is at least some situation where

18   she performed a task in front of you, so that you

19   could see how it was being performed and said this

20   is how you do it?

21      A.    Yes.

22      Q.    Okay.

23      A.    Although I was never given the

24   opportunity to actually do it because she kept

25   doing it every month until it came up to where she

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    just wanted me to do it.

2        Q.    Okay.  So she would do the staffing model

3    duty month-to-month and then -- well, how many

4    times did you get to observe it?

5        A.    Once.

6        Q.    Once.  Okay.  And then at some point she

7    said, okay, now it's time for you to do it?

8        A.    And that was in January of 2020.

9        Q.    Okay.  So when it says between the 28th,

10   January 28th of 2019 and January 4 of 2020 really

11   what we're talking about is January 4 of 2020,

12   when you were required to do it?

13       A.    Uh-huh.

14       Q.    Okay.  And it says you weren't provided

15   nurse manager training, right?  Is that what the

16   allegation says?

17       A.    Yes.

18       Q.    Okay.  So this being required to complete

19   the staffing model duty, did that result in any

20   reduction in your pay?

21       A.    No.

22       Q.    Okay.  Result in any demotion?

23       A.    No.

24       Q.    Any disciplinary action?

25       A.    Not a formal disciplinary action.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

# DASHAUN MCCRAY

1    Q.    Okay.   Tell me about that?

2    A.    A meeting with Dr. Cummings in which he

3 told me, reared back in his chair and said, when

4 are you leaving because Miss Duda has an

5 organization to run.

6    Q.    Okay.   And you consider that informal

7 discipline?

8    A.    Yes.

9    Q.    Okay.   And was there any mention

10 specifically of the staffing model duty?

11    A.    Yes.

12    Q.    Okay.   What did he say about it?

13    A.    It was in regards to being able to get

14 with HR to see how many staff we needed to meet

15 our metrics.

16    Q.    Uh-huh.   Okay.   Had you already told Dr.

17 Cummings that you were planning on leaving the,

18 the office?

19    A.    I never informed Dr. Cummings that I was

20 planning on leaving the office.

21    Q.    Okay.

22    A.    I had no desire to leave.

23    Q.    Did you tell Dr. Cummings that you had no

24 desire to continue working with Miss Duda?

25    A.    Yes.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street            6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604              Suite 101                  Suite 305
785-273-3063                  Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com           913-383-1131               316-201-1612

## DASHAUN MCCRAY

1      Q.    And was it after that he made his
2  comment?
3      A.    No.  It was before that.
4      Q.    And that's your testimony under oath
5  today?
6      A.    That is my testimony under oath today.
7      Q.    Okay.  Did you receive any decrease in
8  benefits as a
9  result of this completing the staffing model duty?
10     A.    No.
11     Q.    Okay.
12           MR. THOMAS:  What was that last question?
13           MR. VANORSBY:  Did you receive a decrease
14  in benefits.
15           MR. THOMAS:  Oh.
16  BY MR. VANORSBY:
17     Q.    Do you recall being asked during the EEO
18  proceedings whether or not you had any problem
19  with completing the staffing model duty?
20     A.    I don't recall.
21     Q.    Okay.  Let's look at your witness
22  statement, and just for the record can you tell
23  the court reporter what that's marked?  I believe
24  it's still over there.
25     A.    Written affidavit of DaShaun McCray.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1    Q.    Just the Exhibit Number.

2    A.    Exhibit Number 13.

3    Q.    All right.  Very good.  I want you to go

4    to the page that's been marked 67 of Exhibit 13.

5    Okay.  Do you see an event there that's marked

6    event 2?

7    A.    Yes.

8    Q.    Is event 2 of exhibit -- I'm sorry, can I

9    see that for a second?  One day I'll remember

10   this, Exhibit 13, event 2, is that the same event

11   that we have been discussing?

12   A.    Yes.

13   Q.    Okay.  If you want to turn to Page 68.

14   Do you see Number 4 there?

15   A.    Yes.

16   Q.    Okay.  What is the question and answer,

17   if you can.

18   A.    Do you have a problem completing this

19   duty?  No.

20   Q.    Well, does it actually say did you have a

21   problem completing this duty?

22   A.    Did you have a problem completing this

23   duty?  No.

24   Q.    Right.  So your testimony under oath at

25   that time was that you had no problem completing



Appino Biggs Reporting Service, Inc.    TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street    6420 W. 95th Street    800 E. 1st Street
Topeka, KS 66604      Suite 101              Suite 305
785-273-3063          Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com   913-383-1131           316-201-1612

3/24/2023                                                                    115

## DASHAUN MCCRAY

1    the staffing model duty; is that correct?

2        A.    That's correct.

3        Q.    Okay.  We talked about this earlier, but

4    how was training provided at the VA?

5        A.    Training is provided at the VA, we go to

6    a training in regards to our role, but the daily

7    duties we are to be trained by our immediate

8    supervisor.

9        Q.    Okay.  And the training that you received

10   facility wide, that's through the TMS in the

11   talent management system?

12       A.    Through TMS and in person.

13       Q.    Okay.  Are the classes, even in person,

14   they are offered through TMS?

15       A.    The classes are, that are in person?

16       Q.    Right.  That was a bad question.  So the

17   training through TMS, it's not just virtual there

18   is some training that's provided that's in person?

19       A.    Yes.

20       Q.    Okay.  How does this TMS system work?

21       A.    You can have the training in person and

22   then go self certify in TMS.

23       Q.    Okay.  It's a system that you log in to

24   and the classes are pushed out and it says here's

25   the classes available, right?



### DASHAUN MCCRAY

1        A.    Yes.

2        Q.    Okay.  And sometimes when they are in

3   person they are not always available, they kind of

4   come on a rolling basis; is that right?

5        A.    Yes.

6        Q.    All right.  Who controls TMS, if you

7   know?

8        A.    Education department.

9        Q.    All right  Was Ruth Duda ever a part of

10  the education department, if you know?

11       A.    Was she ever a part of the education

12  department?

13       Q.    Yes.

14       A.    Not to my knowledge.

15       Q.    Okay.  Who decides when trainings are

16  available or what trainings are offered and when

17  they are available?

18       A.    We are, as the manager, informed of what

19  trainings are required for the specific job

20  descriptions.

21       Q.    Sure.  My question is a little bit

22  different.  The training that's offered through

23  TMS, who decides, if you know, what trainings are

24  offered and when they are offered?

25       A.    Education department.

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

### DASHAUN MCCRAY

1       Q.    Okay.  All right.  And again, that would
2   not include Ruth Duda?
3       A.    No.
4       Q.    All right.  I am going to hand you what's
5   been marked as Exhibit 15.
6             (THEREUPON, Deposition Exhibit No 15 was
7   marked for identification.)
8       BY MR. VANORSBY:
9       Q.    Do you recognize Exhibit 15?
10      A.    Yes.
11      Q.    Okay.  What is it?
12      A.    My learning history.
13      Q.    And what do you mean by learning history?
14      A.    TMS modules which were a requirement of
15  my employment.
16      Q.    Okay.  So it's a record of the trainings
17  classes that you have taken?
18      A.    Yes.
19      Q.    All right.  One of the reasons you know
20  it's yours is because your name appears on the
21  front page?
22      A.    Yes.
23      Q.    Okay.
24            (THEREUPON, Deposition Exhibit No 16 was
25  marked for identification.)



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# DASHAUN MCCRAY

1    BY MR. VANORSBY:

2       Q.    I'm going to hand you what's been marked

3    as Exhibit 16.

4              MR. THOMAS:    What number is this

5    (indicating)?

6              MR. VANORSBY:    That's 15.

7    BY MR. VANORSBY:

8       Q.    Okay.  I am handing you Exhibit 16, do

9    you recognize what that is?

10      A.    Yes.

11      Q.    What is it?

12      A.    This is my deposition in regards to

13   Elizabeth Dial's case.

14      Q.    Okay.  And I will represent to you that

15   it's not the whole thing, but its selected

16   portions, okay?

17      A.    Okay.

18      Q.    I didn't copy the whole thing and kill

19   all the trees.  Okay.  Can you go to page, it's

20   the page marked 19 of Exhibit 16.  Can you read

21   lines 12 through 15.

22      A.    Did you receive any training once you

23   were a nurse manager.  I was sent to nurse

24   managers training, and I was sent to HR diversity

25   training.  Did Miss Duda send you to those

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604             Suite 101                   Suite 305
785-273-3063                 Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com          913-383-1131                316-201-1612

## DASHAUN MCCRAY

1  trainings?  Yes.

2       Q.    Okay.  And now I want you to go to Page

3  34.

4       A.    (Witness complies.)

5       Q.    Read lines 14 through 24.

6       A.    I mean, you said that Miss Duda sent you

7  to training, right?  Yes, the training was

8  available offered for nurses, for nurse managers

9  is a facility wide training, it is not specific to

10 OCC.

11      Q.    I meant to say 18, that's where I wanted

12 you to stop right there.  Okay.  So this, what

13 you just read this was your testimony under oath,

14 correct?

15      A.    Uh-huh.

16      Q.    Okay.  Going back to your complaint, it

17 is Exhibit 14.  I want to talk about event that's

18 marked three iii's, right there, Number 3.  Can

19 you read that event for me.

20      A.    From January 2019 through the present

21 Ruth Duda usurped plaintiff's supervisory

22 authority by instructing her, plaintiff's staff,

23 to complete different actions in which she was

24 initially instructed her staff to do.

25      Q.    Okay.  So tell me about this event, when

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

3/24/2023                                                                 120

**DASHAUN MCCRAY**

1    did that occur?

2         A.    So, this occurred when I had shoulder

3    surgery, so in between me going from the staff

4    nurse position to the supervisory role, I had

5    shoulder surgery.

6         Q.    Uh-huh.

7         A.    And there was documentation that Miss

8    Duda informed the staff that they did not have to

9    review.   I informed all staff that all

10   documentation coming from a provider in the

11   community must be reviewed by a nursing staff for

12   the chart to be complete.

13        Q.    Okay.   What did -- when did you have

14   shoulder surgery?

15        A.    I had shoulder surgery I believe in, it

16   was January 20th, 2019.   I can't recall exactly,

17   it could have been anywhere between the 10th and

18   the 20th, but my role as a nurse manager, the pay

19   date I believe started on 20, January of 2019.

20        Q.    Oh, okay.   And so would it be fair to say

21   that based on your testimony and my understanding,

22   you had informed the nurses that they needed to

23   review certain documentation for it to be

24   completed and then there was some form of

25   communication from Miss Duda where she said



**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

1    certain documents don't need to be reviewed?

2         A.   Yes.

3         Q.   **Okay.  You said there was documentation,**

4    **what did you mean by documentation?**

5         A.   Clinical documentation that completes the

6    veterans' care record.

7         Q.   **Okay.  So you didn't mean that there was**

8    **documentation of Ruth's instruction?**

9         A.   I was notified by the nursing staff that

10   while you were out Ruth told us that we weren't

11   required to review each clinical document.

12        Q.   **Okay.  And you said nursing staff, who**

13   **are you referring to?**

14        A.   I'm referring to all the nursing staff in

15   which were supervised by me.

16        Q.   **Who specifically reached out to you?**

17        A.   Alicia Williams, Jessica Clasen, Heather,

18   her last name was Bandy then.

19        Q.   **What's her last name now?**

20        A.   Schopf.

21        Q.   **Okay.  Anyone else?**

22        A.   Jo, I can't remember Jo's last name right

23   now.

24        Q.   **Okay.**

25        A.   And she actually came to my office when I

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

```
 1    got back with the national director.
 2         Q.    So you said Jo and then you said she, is
 3    Jo short for Joann?
 4         A.    No, Jo, I can't remember her last name
 5    right now.
 6         Q.    Okay.
 7         A.    And she has been in the VA a long time.
 8    She came to my office with the national directive
 9    and I already had the national directive that
10    requires the RN to review all documentation from a
11    clinical source.
12         Q.    Okay.  Any other events that fall under
13    this paragraph?
14         A.    When she went to Janelle Adams at her
15    desk and told Janelle, do you feel that DaShaun
16    treated you hostile in the meeting on Friday,
17    which was February the 7th.
18         Q.    Okay.  So February 7th.  Tell me how that
19    is Miss Duda usurping your authority by
20    instructing staff to complete different actions.
21         A.    She should know what the directive is.
22         Q.    You are going over my head.  What
23    directive are we talking about?
24         A.    A national directive that all
25    documentation that comes in to the VA medical
```



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1   center must be reviewed by an RN clinical staff

2   before it's entered into a veterans' record.

3       Q.    So we're still talking about the 2019

4   event.  I want to move forward to event that you

5   just talked about with Janelle.  I want to know

6   how that Midd Duda usurped your authority by

7   instructing --

8       A.    She put words in Janelle's mouth.

9       Q.    Let me finish the question, I'm sorry.

10  Usurping your authority by instructing your staff

11  to complete a different action than what you

12  initially instructed.  What I want to know is how

13  is this event, this February 7th, event that you

14  are describing fits within that description.

15      A.    In the meeting I was just moving the

16  meeting along and discussing the process in which

17  we were doing the care for veterans that are

18  hospitalized in the community and how we are to

19  document and get the notification and communicate

20  with the community hospital.  And so when Janelle

21  was speaking on some things I, in turn, stated

22  that this information needs to be done

23  specifically like this.  And that is when I am

24  giving out the directive and the information that

25  is how it has to be done, even though Janelle had


**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

**DASHAUN MCCRAY**

1    garnered a presentation on her ideation of how it
2    should be done.  And so in the correct manner I
3    let her know that we have to do it this way per
4    the directive.  And then because we're to that
5    retaliatory point with Miss Duda trying to state
6    that I am now creating hostile environment, she
7    goes directly to a staff and says, do you feel
8    that DaShaun did this to you?  And then Janelle,
9    in turn, went to Cynthia and told Cynthia Finley
10   this exact information.  Cynthia, which is another
11   African American, came to me and said what exactly
12   happened.  I talked to Janelle on the phone two
13   days later, after business hours, and she informed
14   me that Ruth Duda came to her desk and she didn't
15   understand what the purpose of it was.
16         **Q.    Okay.  Let me get at it this way.  What**
17   **was the specific instruction that Miss Duda gave**
18   **that you contend falls under this paragraph?**
19         MR. THOMAS:  Form and foundation.  Go
20   ahead.
21         A.    When you are talking to a staff and when
22   you usurp my authority, that means you are
23   basically going to my staff and informing them
24   that something that I did caused the hostile
25   situation amongst me and them.  So that's



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    basically saying that I have no authority to

2    inform my staff of the accurate process and what

3    follows the directive.

4         Q.    Okay.  And that's an assumption that you

5    are kind of drawing out of the statements, right?

6    You are not testifying that Ruth Duda said DaShaun

7    has no authority to tell you what to do?

8         A.    No.

9         Q.    Okay.  You mentioned Janelle Adams and

10   Cynthia Finley.

11        A.    Yes.

12        Q.    In this kind of realm that you are

13   talking about here.  It's true, isn't it, that

14   both of those individuals gave sworn statements in

15   the EEO proceedings?

16        A.    Yes.

17        Q.    And they specifically denied that the

18   event that you talked about ever happened?

19        A.    Correct.

20        Q.    Okay.  With regard to this event, isn't

21   it true that during the EEO proceedings you

22   testified, or you provided a written statement

23   under oath, that you believe Miss Duda's

24   motivation for this event was just that she

25   strived on power?



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

1            MR. THOMAS:  Form and foundation.  Do you

2     have a document you can show her?

3          **Q.    Is that a yes or a no?**

4            MR. THOMAS:  I don't think it's a fair

5     question unless you can show her the document.

6            MR. VANORSBY:  I noted your objection.

7     The witness can answer.

8            MR. THOMAS:  Vague and ambiguous.

9            MR. VANORSBY:  And also it's object to

10    form.  Thank you.

11         A.    Can you repeat the question?

12    BY MR. VANORSBY:

13         **Q.    Did you give a witness statement under**

14    **oath where you were asked what was Miss Duda's**

15    **motivation, and you testified I provided a sworn**

16    **statement that the motivation was that she was not**

17    **knowledgeable and strives on power?**

18         A.    Correct.

19         **Q.    You didn't mention race, did you?**

20         A.    Not in that statement.

21         **Q.    Is there another statement that you gave**

22    **under oath where your -- where you refer to this**

23    **incident as being because of race?**

24         A.    This event was referred to as

25    retaliation.


**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1      Q.    Okay.  So it is your testimony that

2  event, the event in February 7th of Janelle and

3  Cynthia, is based on retaliation, it is not based

4  on race?

5      A.    Correct.

6      Q.    Okay.  Okay.  Still under this paragraph

7  3, are there any other events where Miss Duda

8  usurped your authority by instructing your staff

9  to complete different actions from what you

10  initially instructed your staff to do?

11      A.    There is dental.

12      Q.    Okay.

13      A.    In which there should be documentation

14  between myself and Jessica Clasen in regards to

15  the dental directives.  Ruth states that I will

16  reach out to the VISN because I am on only going

17  by what DaShaun told me.  She reached out to the

18  VISN, I reached out to the national program office

19  and the national program office came back with I

20  was correct.

21      Q.    Okay.  You said Ruth states she was going

22  to reach out to VISN.  Who does she state it to

23  and when did she state it?

24      A.    She documented it in the E-mail.

25      Q.    Okay.  So in an E-mail she says I'm going



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

1    to reach out to VISN for what reason?

2        A.    Because she was going by what DaShaun had

3    instructed her, in regards to the dental practices

4    and the national guidelines.  And Jessica was

5    going with actually the directive, in which I had

6    actually stated to her, and Ruth was going on what

7    the new dental chief was doing, which was

8    inappropriate.

9        Q.    Okay.  So you said Ruth, I am a little

10   confused, you said Ruth says she's going to reach

11   out because I am going by what DaShaun told --

12       A.    Yes.

13       Q.    -- when you say DaShaun is that are you

14   trying to use  --

15       A.    That's myself.

16       Q.    Okay.  Okay.  So she says the E-mail says

17   I am going to reach out to VISN for what purpose,

18   to get clarification?

19       A.    To get clarification.

20       Q.    Okay. I'm going to reach out to VISN to

21   get clarification on some process?

22       A.    Dental.

23       Q.    Dental process?

24       A.    Dental authorizations, yes.

25       Q.    Okay.  I'm going to reach out to VISN to

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604            Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

**DASHAUN MCCRAY**

1  get some clarification on what dental process

2  because I'm going by what she believed you told

3  her?

4       A.    Uh-huh.

5       Q.    But it is your testimony today that you

6  told your staff to do something else?

7       A.    I had never told Ruth the information

8  where she told my staff.  This is all documented

9  in an E-mail, Ruth responded back to Jessica

10  Clasen, removing me from the E-mail and stating

11  that she was going to reach out to VISN, because

12  she was going based on what DaShaun told her.

13  When I got that E-mail I reached out to the

14  national program office for dental --

15       Q.    Uh-huh.

16       A.    -- VA central office, and they said you

17  are absolutely correct, DaShaun, and they

18  appreciate my knowledge base.

19       Q.    Okay.  How long did it take from the E-

20  mail Ruth saying I am reaching out to VISN to you

21  getting the E-mail back that you just discussed

22  saying you are correct?

23       A.    One day.  And she never received anything

24  back from the VISN.

25       Q.    Okay.  And so there is an E-mail chain to

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    this?

2         A.    Yes, between myself, Ruth and Jessica

3    Clasen.

4         Q.    All right.  So this is something we can

5    find we can all look out for ourselves?

6         A.    Yes.

7         Q.    All right.  We talked January 2019.

8    February 7th.  And then this dental issue.  And I

9    don't know, I don't have it written down, I am

10   sorry, the date for this dental issue.

11        A.    I do not recall.

12        Q.    Okay.  2019?  2020?

13        A.    I believe 2020.

14        Q.    Okay.  Any other events under this

15   paragraph 3?

16        A.    Yes.

17        Q.    What other events?

18        A.    In the January 24, 2020, I had been

19   working on the staffing in regards to how we would

20   complete our backlog and when I had taken that

21   information to Dr. Cummings he did not feel that

22   that was appropriate.  So I, that's when we had

23   the meeting with the executive leadership team at

24   HR to see how we would get additional staff or

25   staff from the hospital to be able to come and

Appino  Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1    work overtime in our unit, or people that were on

2    light duty, so that we could get our backlog taken

3    care of.  And that's when the medical center

4    director had requested to her to allow me to

5    speak.  And that's when she became upset.

6          Q.    Okay.  I think we're getting kind of far

7    afield.  Let me get at it this way.  This event

8    you're describing, what was the specific

9    instruction that you made to your staff?

10         A.    This is not under the usurp authority.

11         Q.    Okay.  Well, that's still what we are

12   talking about now, okay?

13         A.    Okay.

14         Q.    So I want to make sure we're still under

15   this idea that Miss Duda usurped your authority by

16   instructing staff to do something different than

17   what you instructed, okay?  Is there anything else

18   under there?

19         A.    Oh, no.

20         Q.    No, okay.  Is that a no to my question?

21         A.    No.

22         Q.    Okay.  I just want to make sure we have a

23   clear record.  Would you go to Exhibit 13, please.

24   That would be your witness statement.  I am

25   looking at Page 68 going on Page 69.  Do you see

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    at the bottom where it shows event 3?

2        A.    Uh-huh.

3        Q.    Is that the same event we've been

4    discussing?

5        A.    Yes.

6        Q.    Okay.

7             MR. THOMAS:   What Exhibit Number is that

8    again?  I am sorry.

9             MR. VANORSBY:   13.

10       A.    And it's Page 68.

11   BY MR. VANORSBY:

12       Q.    So looking at Page 68 going on to 69.  It

13   asks you to explain the event, right?

14       A.    Uh-huh.

15       Q.    At any point in this written statement

16   did you identify an event on February 7th, this

17   event regarding or this event regarding dental?

18       A.    Covering dental services.

19       Q.    Okay.  What is the event that you

20   actually describe here?  Is it actually where you

21   are not, where you are not in the office?

22       A.    This one I was in the office.

23       Q.    Uh-huh.

24       A.    And the veterans did not meet criteria

25   for dental and the dental chief was trying to



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

## DASHAUN MCCRAY

```
 1    authorize the care and Miss Clasen was coming back
 2    to me in regards to the care being authorized.
 3    And I informed her that it did not meet the
 4    criteria under the dental directive and the actual
 5    dental law.
 6         Q.   Okay.  So I'm going -- I'm looking at
 7    paragraph 1(a).  And I will ask you to describe
 8    the event and circumstance.  It says:  Miss Duda
 9    would discredit information that I would give the
10    staff to complete tasks.  Oftentimes informing
11    staff to do something against the process as a
12    workaround and then I would return on site and
13    have to correct.
14         So what you are describing is something where
15    you're not in the office and Miss Duda gives some
16    instruction?
17         A.   That was the incident when she told them
18    that they no longer had to review the medical
19    records.
20         Q.   Okay.  And it says:  This particularly
21    happened with Jessica Clasen nurse covering dental
22    services.  Heather Bandy RN covering neurology and
23    pain management services, right?
24         A.   Correct.
25         Q.   Okay.
```



**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1              (THEREUPON, Deposition Exhibit No 17 was

2     marked for identification.)

3         **Q.    Let the record reflect I have handed the**

4     **witness Exhibit 17.  Do you recognize that**

5     **document?**

6              MR. THOMAS:  Which one is 17?

7              MR. VANORSBY:  This one right here

8     (indicating).

9     BY MR. VANORSBY:

10    A.    Yes.

11        **Q.    Okay.  What is it?**

12    A.    It is the Agency's Discovery Requests to

13    Complaint, it's a complainant.

14        **Q.    So are these some discovery requests you**

15    **responded to in the underlying EEO proceedings?**

16    A.    Yes.

17        **Q.    Okay. I want you to go to the page that's**

18    **marked USA 000128.  Do you see that?  Question**

19    **Number 6, can you read that?**

20    A.    Admit that Ruth Duda never usurped your

21    authority, see issue three.

22        **Q.    And your response was denied; correct?**

23    A.    Admit that Ruth Duda never usurped your

24    authority so I denied that she never usurped my

25    authority because she did.  I was under the

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1   impression if I put admit that I would be saying

2   otherwise.

3        Q.    Right.  You did that right.

4        A.    Okay.

5        Q.    I am not taking issue with that at all.

6   Can you go to the page marked USA 000130 and read

7   the first question.

8        A.    With respect to each request for

9   admission that you did not admit, describe in

10  detail why you did not admit it.

11       Q.    Okay.  You can put that one away for now.

12  I am going to hand you what has been marked as

13  Exhibit 18.

14            (THEREUPON, Deposition Exhibit No 18 was

15  marked for identification.)

16       BY MR. VANORSBY:

17       Q.    Do you recognize that document?

18       A.    I do.

19       Q.    Okay.  What is it?

20       A.    It is my responses in regards to just

21  everything in which I had claimed.

22       Q.    And so, consistent with the question on

23  Exhibit 17 that we just read, you provided a

24  response to any request for admission that you

25  denied, right?

Appino & Biggs Reporting Service, Inc.    TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1      A.    Right.

2      Q.    And with regard to issue 3, which we've

3  been discussing, you deny question 6, what was

4  your reason for denying question 6?

5      A.    I was out on leave for rotator cuff

6  repair, staff informed me that Mrs. Duda informed

7  them to complete different things different for

8  how I had instructed, and I had a call in and be

9  on staff meeting while on leave to correctly

10 explain the process.

11     Q.    Okay.  And so in your written response

12 here, is there any reference to an event on

13 February 7th for this dental issue?

14     A.    (Witness reviews documents).

15     Q.    And by response I mean response to this

16 issue 3 to question 6.

17     A.    (Witness reviews documents).  So on

18 response 3 I just wrote in that area that there

19 are E-mails and Skype messages regarding the

20 continued conduct that present a hostile work

21 environment for documentation of discrimination

22 and access to privilege information related to

23 disciplinary action that was harmful all in a

24 review in my folder, yeah.

25     Q.    So you've kind of flipped the pages to go

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1  on to another question.  My question was
2  specifically regarding this Paragraph 6, which
3  corresponds to the request for admission that you
4  denied.  Just to make it simple, I mean, what you
5  mention is you were out on leave for rotator cuff
6  repair.
7      A.    Uh-huh.
8      Q.    When were you out on leave for rotator
9  cuff repair?
10     A.    January of 2019.
11     Q.    Okay.  So you weren't out on leave for
12  rotator cuff repair on February 7th of 2020,
13  right?
14     A.    No.
15     Q.    And you weren't out on leave for rotator
16  cuff repair on January 24 of 2020; correct?
17     A.    No.
18     Q.    Okay.  And isn't it actually correct that
19  you would instruct your staff to see Miss Duda for
20  any questions when you were out?
21     A.    Yes.
22     Q.    So it wouldn't be inappropriate for those
23  individuals to go to Miss Duda and for Miss Duda
24  to provide some instruction, right?
25     A.    Correct.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

# DASHAUN MCCRAY

1        Q.    Okay.   Any of these events that we've

2    discussed with regard to this paragraph, did any

3    of them result in any reduction to your pay?

4        A.    No.

5        Q.    Demotion?

6        A.    No.

7        Q.    Okay.   Decrease in benefits?

8        A.    No.

9        Q.    Any disciplinary action?

10       A.    No.

11       Q.    Okay.   Let's talk about paragraph 4 on

12   the complaint. Let me more specific which is

13   Exhibit 14.   We're still on Page 3.

14            MR. THOMAS:   Roman numeral IV?

15            MR. VANORSBY:   Roman Numeral IV.   Kind of

16   clunky to say IV.

17       BY MR. VANORSBY:

18       Q.    Can you read that paragraph for me.

19       A.    Yes.   On January 24th 2020, Ruth Duda

20   increased plaintiff's workload after plaintiff had

21   a meeting with chief of staff to discuss Ruth

22   Duda's behavior.

23       Q.    Okay.   And tell me about your meeting

24   with the, well, first, who's the chief of staff

25   that you're discussing?


**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                     Suite 305
785-273-3063                 Overland Park, KS 66212        Wichita, KS 67202
www.appinobiggs.com          913-383-1131                   316-201-1612

### DASHAUN MCCRAY

1    A.    Robert V. Cummings.

2    Q.    Okay.  And tell me about the meeting that

3 you had with Dr. Cummings?

4    A.    Myself and another staff had our meeting

5 with Dr. Cummings in regards to Miss Duda's

6 behavior in the workplace in regards to making it

7 to look as if the backlog was a result of our

8 negligence and the daily work in managing our

9 staff.

10    Q.    Okay.  When did that meeting occur?

11    A.    January 24th of 2020, myself, Dr.

12 Cummings and Elizabeth Dial.

13    Q.    Did you discuss anything else with Dr.

14 Cummings on January 24th of 2020?

15    A.    Asking him to talk to her in regards to

16 her behavior toward us.

17    Q.    Okay.  Anything else?

18    A.    Not to my knowledge.

19    Q.    Okay.  Were there any discussion

20 regarding asking Miss Duda to stop micromanaging?

21    A.    Get out of the weeds.

22    Q.    Get out of the weeds, is that a quote,

23 can I quote you on that, that's what was

24 discussed?

25    A.    Correct.  Yes.

 5111 SW 21st Street    6420 W. 95th Street    800 E. 1st Street
Topeka, KS 66604    Suite 101    Suite 305
785-273-3063    Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com    913-383-1131    316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

DASHAUN MCCRAY

1    Q.    Okay.  And what did you mean by get out

2  of the weeds?

3    A.    Micromanagement and blame, because we had

4  went to her multiple times requesting an

5  opportunity to work on the backlog, offer overtime

6  to our staff to work on the backlog, and be able

7  to decrease the backlog before it got to this

8  level in which she was being asked about it by her

9  direct supervisor.

10    Q.    Okay.  So is it fair to say you wanted

11  Miss Duda to take a higher level approach to stop

12  kind of meddling in your business?

13    A.    Yes.

14    Q.    Okay.  And by that you mean, let you

15  handle the staff; is that right?

16    A.    Allow us to meet the needs by just take

17  the recommendation, so take the recommendation of

18  our need for overtime for our staff so that we

19  could be able to decrease our backlog.

20    Q.    Okay.  So this was about Miss Duda not

21  taking a recommendation that overtime was needed?

22    A.    Yes.

23    Q.    Okay.  And there would be specific E-mail

24  communications about that?

25    A.    We did that in our face-to-face meeting.

Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**DASHAUN MCCRAY**

1          Q.    Okay.  How else was, if at all, was Miss

2    Duda micromanaging, or in the weeds?

3          A.    I mean, things she would say and do, but

4    then come back to us after she was, express

5    something that wasn't correct.  So I mean, that's

6    just, her expression of incorrect information, and

7    then having to come back in.  Basically we had to

8    clean it up.

9          Q.    Okay.  And that's something that you

10   wanted Miss Duda to stop?

11         A.    Yes.

12         Q.    Okay.  Did you give any recommendations

13   about how that should happen?

14         A.    Yes.

15         Q.    What were your recommendations?

16         A.    My recommendations were to just evaluate

17   us once we establish the process to get our

18   backlog worked.

19         Q.    Okay.  I mean, I am understanding what

20   you are saying is you wanted Miss Duda to take a

21   step back and let you do the work?

22         A.    Correct.

23         Q.    Okay.  Did you discuss anything else with

24   Dr. Cummings?

25         A.    He told us to go to EEO for a mediation

Appino Biggs Reporting Service, Inc.

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

```
1   and ultimately that was declined.
2        Q.    Declined by whom?
3        A.    Declined by myself and declined by Mrs.
4   Dial.
5        Q.    Okay.  Did you discuss anything else with
6   Dr. Cummings?
7        A.    Not on that date.
8        Q.    Okay.  So this paragraph IV, or four,
9   says your workload increased.  How did your
10  workload increase?
11       A.    So there are things, as you have
12  mentioned that are mandated by education
13  department.  And I actually have that here in my
14  response Number 8.
15       Q.    And just for sake of clarity your saying
16  response --
17       A.    Exhibit Number 8.
18       Q.    I am sorry, you are saying Exhibit 18 and
19  response 8?
20       A.    Yes.
21       Q.    Okay.  So how did your workload increase?
22  And you can reference that paragraph, if you need
23  to.
24       A.    Miss Duda was informed that I reached out
25  to Dr. Cummings 1-24-20.  Miss Duda returned to
```



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1    the office at 1551 and sent an E-mail to Dean
2    Rhein asking if I had sent a list of TMS that new
3    OCC staff need to be assigned.  1-24-20 Mr. Rhein
4    responded that I had not sent E-mail.  1-25-20
5    responded with a TMS training needed for the
6    staff.  2-12, it was '20, it is not '21 --
7         Q.   Uh-huh.
8         A.   -- sent further information to Mr. Dean
9    Rhein requiring the courses that are needed to be
10   added for the RN staff.  Received response from
11   Mr. Rhein that his supervisor would be
12   constructing an E-mail to Miss Duda as this was
13   not the appropriate way to assign the trainings.
14   I responded that I would await the E-mail and
15   proper process from his supervisor.  No work
16   deadlines missed.  1-28-20 E-mail sent to Dr.
17   Cummings, Mr. Ament and Mr. Neal Simmons to
18   discuss Miss Duda's continuation of hostile work
19   environment.  This E-mail was in collaboration
20   with Elizabeth Dial.  1-28-20 response from Mr.
21   Ament requesting a chance to resolve locally as I
22   am a valued employee.
23        Q.   Okay.  Okay.  So you're saying your
24   workload increased because Miss Duda sent an E-
25   mail on 1-24 of 2020 to Dean Rhein asking if you



Appino Biggs Reporting Service. Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1  had sent a TMS list?

2      A.    So basically that she just started

3  picking more stuff, not only that it was other

4  things but I couldn't just remember them at this

5  time.

6      Q.    Okay.  And it says, I mean, you are

7  saying that the E-mail was sent 1-24 asking if you

8  had already sent the list.  Would it be fair to

9  say that you were already asked to send the list

10 prior to 1-24?

11     A.    I had never been asked to send a list.

12     Q.    Okay.  And all of this is by E-mail, so,

13 right?

14     A.    Yes.

15     Q.    So we can see the E-mails for ourselves,

16 right?

17     A.    Yes.

18     Q.    All right.  And it's your testimony today

19 that you had never been asked to send this list to

20 Dean Rhein prior to 1-24 of 2020?

21     A.    That's correct.

22     Q.    Okay.  How else did your workload

23 increase?

24     A.    There was just little things that she

25 just came up with, you know, out of her head.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604            Suite 101                Suite 305
785-273-3063              Overland Park, KS 66212        Wichita, KS 67202
www.appinobiggs.com           913-383-1131              316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

### DASHAUN MCCRAY

1    Q.    What little things?

2    A.    I can't recall.  I just know that all of

3    a sudden it was like (indicating).

4    Q.    Okay.  So we talked about Dean Rhein.

5    We, you've mentioned little things that you just

6    can't recall.

7    A.    So the CTM, the consult tracking manager,

8    identifying the metrics, figuring out a way to

9    reduce the metrics, but not having an opportunity

10   to actually give our employees overtime.  Just

11   work on different things in regards to readiness.

12   And in response to after Dr. Cummings had looked

13   at how far our outliers were.  And basically now

14   it was all my and Elizabeth's responsibility that

15   we were behind.

16   Q.    Okay.  Was that a result of Miss Duda

17   getting out of the weeds?

18   A.    That was not a result of Miss Duda

19   getting out of the weeds, that was Miss Duda

20   basically removing herself from taking any

21   responsibility of the things that had occurred

22   based on us asking her for the opportunity to

23   offer the overtime, and then she just decided

24   that, well, it wasn't her issue because we are the

25   supervisors.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                     Suite 305
785-273-3063                 Overland Park, KS 66212        Wichita, KS 67202
www.appinobiggs.com          913-383-1131                   316-201-1612

**DASHAUN MCCRAY**

1      Q.    Okay.  So were you allowed to give
2   overtime?
3      A.    No.  We weren't allowed to give overtime.
4   We ended up getting staff that came from the
5   facility that were on light duty, disciplinary
6   actions, all kind of different things.
7      Q.    Okay. So you did get additional staff?
8      A.    We got additional staff.
9      Q.    Was that the result of Miss Duda
10   requesting additional staffing?
11      A.    That was the result of the meeting in
12   which was had on the 30th with Mr. Ament in HR.
13      Q.    Okay.  And, then, it's your testimony
14   today that you were not allowed to give overtime?
15      A.    I'm not allowed to give overtime without
16   the supervisor's, the chief's approval.
17      Q.    I think we're talking past each other
18   here.  Were you allowed to give overtime at any
19   point after 2020?
20      A.    Never.
21      Q.    Okay.  Were you allowed to give overtime
22   at any point in 2019?
23      A.    Never.
24      Q.    Okay.  And that's your testimony under
25   oath today?



5111 SW 21st Street       6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604              Suite 101                 Suite 305
785-273-3063          Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

## DASHAUN MCCRAY

1       A.     That's my testimony under oath.

2       Q.     Okay.  So we've talked about E-mail to

3  Dean Rhein, little things that you can't recall.

4  CTM, tracking metrics for readiness.  What else?

5       A.     (Witness reviews documents).  Nothing

6  else.  But if you look at Number 11 on Exhibit

7  18.

8       Q.     Okay.  Tell me about Paragraph 11.  What

9  are we looking at?

10      A.     So in regards to the meeting that was had

11 on 1-30, and then her on 1-31 coming in to my

12 office and standing over me, Mr. Ament wrote a

13 response on 2-1 regarding the interactions with

14 Miss Duda and Dr. Cummings that he felt good about

15 the interchange and addressed the difference in

16 approach provided by Miss Duda of throwing bodies

17 at the problem rather than fixing the real problem

18 and addressing staff accordingly in which I had

19 stated.  He states my analysis and articulate were

20 right on target.

21      Q.     Okay.  And.  Okay.  There is also

22 something else going on in the background in this

23 time frame, right?  Covid?  That right?  It's

24 about the time Covid started coming out?

25      A.     This is about the time that Covid



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

**DASHAUN MCCRAY**

1  happened.

2      Q.    So were there Covid related increases to
3  your workload?

4      A.    The Covid increases in regards to an
5  inability to schedule in the community, but these
6  outliers and information were metrics from fiscal
7  year 2019.

8      Q.    Yeah, and sure, I'm not speaking directly
9  to your metrics regarding how fast you could get
10  scheduled and those things.  I just mean, Covid
11  hit, you got appointments being cancelled, people
12  starting to Telework, a bunch of changes at work.
13  I mean, that contributed to your increase in your
14  workload, right?

15      A.    No.

16      Q.    Why not?

17      A.    The increase in the workload of myself,
18  when the Covid changes came about I was staffed in
19  the office working daily.

20      Q.    Okay.

21      A.    So it didn't -- nothing changed.  These
22  metrics are from 2019.

23      Q.    Sure.  I understand that.  And I am not
24  speaking directly to your metrics, but there was
25  additional things you had to do in the workplace

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    because of Covid?

2         A.    Yes.  We had to prepare the staff for

3    Telework and decrease the amount of people that

4    were onsite allowing others to go home.

5         Q.    So that took extra work, right?

6         A.    Yes.

7         Q.    And was there a process for getting

8    people certified to Telework?

9         A.    A TMS, and then to do the self-

10   certification and to fill out the documentation in

11   regards to what they had available in their home

12   and in regards to a work space and bandwidth for

13   their Internet.

14        Q.    And did you have any involvement in that

15   process whatsoever?

16        A.    Yes.

17        Q.    Okay.  So that was an additional duty

18   that got kind of put on you because of the change

19   that's happening.  Unprecedented change.

20        A.    But I didn't see that as an additional

21   duty.  That telework is fairly easy to prepare the

22   staff for.

23        Q.    Okay.  Did you receive any additional

24   assignments after your meeting with Dr. Cummings

25   on January 24, 2020?



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1      A.    Just to work on the metrics.

2      Q.    Okay.  Anything else?

3      A.    No.

4      Q.    Okay.  So these changes, this increased

5  workload or this obligation to look at the

6  metrics, these events did they result in a

7  reduction of your pay?

8      A.    No.

9      Q.    Demotion?

10     A.    No.

11     Q.    Decrease in benefits?

12     A.    No.

13     Q.    Did you -- were you disciplined?

14     A.    No.

15     Q.    Do you recall in your witness statement

16  that you were asked whether or not you had any

17  problem with the increased workload?  And your

18  witness statement is there.  If you need to look

19  at it, that's fine.

20     A.    I'm sure I denied it.

21     Q.    Okay.

22     A.    Based upon, I work, I'm a working person.

23     Q.    Okay.  So you stated under oath you

24  didn't have a problem with increased workload?

25     A.    No problem with increased workload, but

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

## DASHAUN MCCRAY

1  feeling that it was retaliation.

2        Q.    Okay.  You know what, I missed something.

3  Can you tell me about an initial OCC leadership

4  meeting that might have happened on October 28th

5  of 2019.

6        A.    That was the first ever meeting that she

7  actually met with myself and Elizabeth formally to

8  document the meetings.

9        Q.    Okay.  What was the purpose of that

10  meeting?

11        A.    For her to start the training of us --

12        Q.    Okay.

13        A.    -- in regards to our roles.  After we had

14  been in the meeting since January 2019 and

15  Elizabeth, whatever day she came.  I am not sure.

16  I don't recall.

17        Q.    Okay.  So you discussed training, did you

18  discuss anything else?

19        A.    Just the different things that were

20  rolling out.  We had at that, you know, at that

21  time in October we were getting ready to, I

22  believe, change over to the eCAM system, which was

23  the different payment system.  In which when

24  Nicole Aliseo {PH} from the VISN came, Ruth Duda

25  had taken a week's leave and left me in charge to

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1    handle all of the processes in regards to rolling
2    out the new system.  She also, Nicole said, well,
3    why would she leave, take leave this week when
4    it's such an important time for your department?
5    That was the standard.  When we rolled out CTM she
6    took leave and I was responsible to roll it out to
7    the department.  When we changed over to Optum
8    from TriWest, she took leave and I was
9    responsible.

10        Q.    Uh-huh.  I think we are getting kind of
11   far afield.  My question was specifically what was
12   discussed at this October 28th, 2019, meeting and
13   I know we talked about training, we talked about
14   things that were rolling out, eCAM.

15        A.    Uh-huh.

16        Q.    Discuss anything else?

17        A.    No.

18        Q.    Did you take notes of the meeting?

19        A.    Yes.

20        Q.    Do you think you still have those notes?

21        A.    No.

22        Q.    Okay.  Who else was present?

23        A.    Elizabeth Dial and Crystal Profit.

24        Q.    Okay.

25        A.    And the other lead, I can't remember her



5111 SW 21st Street          6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604             Suite 101                   Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                316-201-1612

### DASHAUN MCCRAY

1  name right now.

2      Q.   Okay.  Fair enough.  And you say other

3  lead, was she an MSA lead?

4      A.   Uh-huh.  MSA lead.

5      Q.   And what does MSA stand for?

6      A.   Medical support assistant.

7      Q.   Okay.

8          MR. VANORSBY:  And our court reporter

9  wanted a break, I am getting ready to switch to

10 another event, I think now is probably a good time

11 to do that.

12         THE VIDEOGRAPHER:  Standby.  Time is

13 approximately 1:14 p.m.  We are going off the

14 record.

15         (THEREUPON, at 1:14 p.m., a recess was

16 taken, after which, 1:38 p.m., the following

17 proceedings were held:)

18         THE VIDEOGRAPHER:  Time is approximately

19 1:38 p.m.  We are back on the record.

20     BY MR. VANORSBY:

21     Q.   Okay.  We took a break, we are back on

22 the record.  Miss McCray, do you understand you

23 are still under oath?

24     A.   Yes.

25     Q.   Okay.  Just as we took a break I was told



**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1    we were getting ready to move on to the next event
2    that you had listed on paragraph 12.  Which is
3    event 5 which is marked with a v, okay?  And we
4    are still looking at Exhibit 14, which is your
5    complaint.  Can you read Paragraph 5?
6          A.    On January 30th of 2020, Ruth Duda
7    refused to allow plaintiff to speak during a
8    meeting with the medical center director.  Even
9    though the director asked Ruth Duda to allow
10   plaintiff to speak.
11         Q.    Okay.  So tell me about this event on
12   January 30th of 2020.
13         A.    We were in the meeting in regards to the
14   outliers, the staffing in regards to trying to
15   figure out if we were to get overtime or if we
16   would be able to if HR had staff that were on
17   light duty or under any other reason why they
18   would need to be in a different department for a
19   period of time.  So that's when that meeting
20   occurred.  And I was, the medical center director
21   stated to Miss Duda to allow me to speak, and she
22   voiced that she was the chief and that's how that
23   happened.  We had further discussion with HR, you
24   know, trying to think about things.  Miss Duda was
25   wanting the director just to allow us to hire or

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street      6420 W. 95th Street      800 E. 1st Street
Topeka, KS 66604         Suite 101                Suite 305
785-273-3063             Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com      913-383-1131             316-201-1612

### DASHAUN MCCRAY

1   get more staff, but that really ultimately isn't

2   the, wasn't the best idea, but that's what

3   happened.

4       Q.   And so earlier you talked about some,

5   Miss Duda throwing bodies at the problem rather

6   than fixing the real problem.  Is that kind of

7   what, is that what we are talking about here?

8       A.   Correct.

9       Q.   Okay.  Who was the medical director at

10  that time?

11      A.   Ricky Ament.

12      Q.   Okay.  Can you spell his last name for

13  me?

14      A.   A-M-E-N-T.

15      Q.   Okay.  And so it is your testimony he

16  said, please, well, not quote, but words to the

17  affect, please allow Miss McCray to speak?

18      A.   Yes.

19      Q.   And what was Ruth Duda's response?

20      A.   I don't recall her specific response, but

21  it was basically I am the one here to speak

22  because I am the chief.

23      Q.   Okay.  And so you were not allowed to

24  speak at all?

25      A.   Not at that moment.



5111 SW 21st Street        6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604           Suite 101                   Suite 305
785-273-3063               Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com        913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

1      Q.    Well, you said at that moment, were you

2  allowed to speak?

3      A.    Later when HR started talking.

4      Q.    Okay.  So it's your testimony that you

5  did not -- you were not allowed to speak until HR

6  started talking?

7      A.    Yes.

8      Q.    So tell me about how you were allowed to

9  speak.

10      A.    Because HR actually just asked me

11  directly what I thought.

12      Q.    Okay.  Was anyone else speaking at this

13  presentation on January 30th of 2020?

14      A.    Dr. Cummings, the nurse executive,

15  Julianna Cotton {PH}.

16      Q.    Was anyone under Ruth Duda's supervision

17  speaking during this January 30th of 2020 --

18      A.    No.

19      Q.    -- meeting?  Now --

20      A.    Not that I recall.

21      Q.    Okay.  Was there an itinerary generated

22  for this meeting regarding who was supposed to be

23  speaking?

24      A.    No.

25      Q.    Okay.  What information was Director

**Appino ‖ Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1    Ament asking you to get?

2        A.    My thought process --

3        Q.    Uh-huh.

4        A.    -- and how we could reach a goal in

5    regards to attacking our outliers.

6        Q.    Okay.

7        A.    And there is an E-mail with his

8    documentation.

9        Q.    What do you mean by that?

10       A.    In regards to what I stated, that's

11   directly from his E-mail.

12       Q.    I am not following.

13       A.    Number 11.

14       Q.    Okay.

15       A.    I received E-mail response from Mr.

16   Ament, so there is an E-mail.

17       Q.    Okay.  Okay.  And when you say Number 11

18   you are referring to --

19       A.    Exhibit Number 18.

20       Q.    -- Exhibit Number 18, Paragraph 11 on the

21   first page?

22       A.    Yes.

23       Q.    All right.

24            (THEREUPON, Deposition Exhibit No 19 was

25   marked for identification.)



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# DASHAUN MCCRAY

1       BY MR. VANORSBY:

2          Q.    Let the record reflect that I have handed

3       the witness Exhibit 19.  Do you recognize Exhibit

4       19?

5          A.    Yes.

6          Q.    Okay.  What is it?

7          A.    It is an E-mail to the ORM, Natalina

8       Alford, from myself.

9          Q.    Okay.  And there is an entry in this E-

10      mail that's dated January 30, 2020.  Do you see

11      that?

12         A.    Uh-huh.

13         Q.    Okay.  And this entry it refers to this

14      meeting that  we've been discussing, right?

15         A.    Uh-huh.

16         Q.    Okay.  Can you read that entry for me.

17         A.    Attended meeting with chief nurse, Ruth

18      Duda, with Pentad.  Discussion was going as

19      planned and Miss Duda was reporting information

20      without plan for resolution.  Medical center

21      director placed his hand up to ask her to allow me

22      to speak.  I gave the information in perspective

23      to a department workflow and he understood

24      recommendation and requests myself and Miss Duda

25      to have information to the Pentad 131.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

### DASHAUN MCCRAY

1    Q.    And this is an E-mail that you authored,
2    right?
3    A.    This is an E-mail that I authored.
4    Q.    Okay.  Where on this entry, that you read
5    for me, does it say that you were not allowed to
6    speak?
7    A.    It's not there.
8    Q.    It shows the opposite, doesn't it?
9    A.    It does show the opposite.  But it was
10   completed, this E-mail ten days later.
11   Q.    And your memory would be better ten days
12   after rather than two or three years, right?
13   A.    Right.
14   Q.    All right.  I want you to find your
15   Agency's Discovery Requests to Complainant.  What
16   exhibit is that?
17   A.    Exhibit Number 17.
18   Q.    Okay.  On Exhibit 17 I want you to go to
19   page marked USA 128.  And do you see a question
20   10?
21   A.    Uh-huh.
22   Q.    Can you read that one for me.
23   A.    Admit that you took over answering
24   questions for Ruth Duda without a request to do
25   so.  And I put deny.



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

# DASHAUN MCCRAY

1    Q.    Okay.  And so same with issue 3, actually

2    let me back up.  It says this is in regards to

3    issue 5, right?

4    A.    Yes.

5    Q.    And issue 5 is the same meeting that

6    we've been talking about, correct?

7    A.    Correct.

8    Q.    All right.  And so just like with issue 3

9    you denied it, so you provided a written response

10   for the reason you denied it, correct?

11   A.    Yes.

12   Q.    All right.  So I want you to go to those

13   responses, Exhibit 18 and read paragraph 10.

14   A.    Mr. Ricky Ament raised his hand and asked

15   Miss Duda to allow me to respond to the question

16   during the meeting on 1-30 of 2020.  I did not

17   speak out of turn, my input was requested from the

18   medical center director.

19   Q.    And then it ends with that?

20   A.    Yes.

21   Q.    Can you show me where in here it shows

22   that you were not allowed to speak?

23   A.    It doesn't show that I was not allowed to

24   speak.

25   Q.    Okay.



5111 SW 21st Street      6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604         Suite 101                 Suite 305
785-273-3063             Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com      913-383-1131              316-201-1612

## DASHAUN MCCRAY

```
 1              MR. THOMAS:  Brian, is this 20 or 19?
 2              MR. VANORSBY:  19.
 3              MR. THOMAS:  Okay.
 4      BY MR. VANORSBY:
 5      Q.    So this event that we have been
 6  discussing, this refusal, alleged refusal to allow
 7  you to speak, did it result in a reduction of your
 8  pay?
 9      A.    No.
10      Q.    Did it result in a demotion?
11      A.    No.
12      Q.    Disciplinary action?
13      A.    No.
14      Q.    How about a decrease in any of your
15  benefits?
16      A.    No.
17      Q.    Okay.  We are going to go on to event 6
18  in your complaint, which is again Exhibit 14.  Can
19  you read the event that's marked 6?
20      A.    On January 31st, 2020, Ruth Duda violated
21  plaintiff's personal space when she looked over
22  her so she could see her computer and Ruth Duda
23  yelled at her, you did not allow me to talk during
24  the meeting with the Pentad, and you gave
25  incorrect information.  Are you offended?
```



**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1    Q.    Okay.  I think we may have talked about
2    this a little bit earlier, but can you tell me
3    about that event.
4    A.    She had returned from morning report and
5    she came in to my office and came behind my desk
6    standing over my shoulder attempting to see an E-
7    mail.  And then she states that I didn't, that I
8    didn't allow her to talk with the Pentad and that
9    I gave incorrect information.  And then with the
10   E-mail, I don't know, it must have been the E-
11   mail, are you offended?  I mean.
12   Q.    Okay.  What was the E-mail that Miss Duda
13   was trying to look at?
14   A.    The E-mail that she was trying to look at
15   was one in regards to getting the plan for the how
16   to clear up the backlog by close of business on
17   January 31st.
18   Q.    Okay.  Now, I am trying to visualize your
19   office, okay, and where your computer was
20   situated.  Is there any way possible that she
21   could have viewed that E-mail without standing
22   over your shoulder?
23   A.    But that E-mail wasn't -- it wasn't sent
24   to her.
25   Q.    Sure.  I understand that.  But my



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

```
 1    question is, is there any way she could have
 2    viewed the E-mail without standing behind you over
 3    your shoulder?
 4         A.    Coming behind my desk she couldn't, there
 5    is no way she could have viewed the E-mail.
 6    Because my computer was going this way, my cross
 7    space from my desk to my door opening is right
 8    here (indicating).
 9         Q.    Okay.  So she would have had to come
10    behind your desk and behind you to even get a look
11    at your computer?
12         A.    Right.
13         Q.    Okay.  Why was she -- why was she looking
14    at the E-mail?
15         A.    I don't know.
16         Q.    Okay.  And so we're talking about an
17    isolated event here, just one event January 31st,
18    2020.  Did that event have any material effect on
19    your employment?
20         A.    It affected my mental status.
21         Q.    Okay.  And we'll talk a little bit about
22    that when we get to your damages, but my question
23    specifically is regarding your employment.
24         A.    No.
25         Q.    Okay.  I want to go to the next event.
```

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1   Which is, where are we at now?  7?

2       A.   Uh-huh.

3       Q.   Okay.  Can you read that event, please?

4       A.   On February 10th and 14th, 2020, Ruth

5   Duda undermined plaintiff's ability as a

6   supervisor as she stated, you took all leadership

7   away from Janelle Adams, co-worker.  It appears

8   you were also taking credit for all the progress

9   made, that was to be implemented in the future

10  with little input from the staff.  And when she

11  falsely, and when she falsely accused plaintiff of

12  taking over a February 7, 2020, meeting and did

13  not allow another employee to speak.

14      Q.   And at the end it says another employee

15  to speak, is that referring to Janelle Adams?

16      A.   Yes.

17      Q.   Okay.  So I want to first start, and we

18  go kind of linear here, start at the February 7th,

19  2020, meeting.

20      A.   Yes.

21      Q.   I think we might have discussed this

22  earlier.

23      A.   Uh-huh.

24      Q.   So tell me about that meeting.

25      A.   The meeting was in regards to the

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street     6420 W. 95th Street     800 E. 1st Street
Topeka, KS 66604        Suite 101               Suite 305
785-273-3063            Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com     913-383-1131            316-201-1612

### DASHAUN MCCRAY

1    notifications for veterans that were in community

2    hospitals, for inpatient stays and the process for

3    how that would be documented, how we would be

4    notified, notification within 72 hours of the

5    patient presenting to the facility and just

6    following the directive and the practice.

7        Q.    Okay.  And with regard to that

8    information, and this meeting, was Janelle Adams

9    given some leadership responsibility for either

10   getting the information or presenting the

11   information?

12       A.    Janelle Adams put together a chart.

13       Q.    Okay.  Well, my question is, was she

14   given some responsibility for giving information?

15       A.    She was given some responsibility for the

16   information, she was the nurse in transition care.

17       Q.    Okay.  It is my understanding that part

18   of the reason that she was given some of this

19   responsibility was to allow her to get promoted up

20   to nurse 2; is that right?

21       A.    Responsibility in actions, yes, is to

22   allow to show responsibility in work processes, to

23   be promoted.

24       Q.    That was a specific thing for Nurse Adams

25   to get promoted, right?  The -- bad question.  Let

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    me back up.

2        The decision to give her some leadership

3    responsibility on the information was a specific

4    decision made in order to allow Nurse Adams to be

5    promoted up to nurse 2?

6        A.    We always give our staff an opportunity

7    to take leadership roles in the service line in

8    which they worked in, so yes.

9        Q.    Okay.  So that was a yes to my question?

10       A.    Yes.

11       Q.    Okay.  Is it true that Janelle Adams was

12   actually slated to present the information?

13       A.    No.

14       Q.    So is it your testimony today that Miss

15   Adams was just speaking out of turn?

16       A.    Her and Miss Lewis were both speaking in

17   regards to the work processes of their unit.

18       Q.    Okay.  So maybe we are speaking past each

19   other, but based off what you are saying, to me it

20   sounds like Miss Adams was slated to make some

21   sort of presentation during the meeting?

22       A.    Yes.

23       Q.    Okay.  And that was my question, was she

24   supposed to make some presentation?

25       A.    Uh-huh.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1      Q.    Okay.  And then part of your allegation
2  is that Miss Duda falsely accused you of taking
3  over the meeting?
4      A.    Yes.
5      Q.    Okay.  Why do you say it's a false
6  accusation?
7      A.    The meeting continued to go on and we
8  resolved the issue and resolved all of the making
9  sure that we were in line with the processes, and
10  then she goes to Janelle's desk with the problem
11  Monday --
12      Q.    Okay.  And we're getting a little bit out
13  of the meeting.  I want to focus on the meeting.
14      A.    Okay.
15      Q.    Based on our discussion earlier, it
16  sounded like you felt that Miss Adams was not
17  providing the right information, so you had to
18  step in and provide the correct information; is
19  that right?
20      A.    That's correct.
21      Q.    Okay.  And it is your testimony today
22  that saying that you took over the meeting would
23  be false?
24      A.    Yes.
25      Q.    Okay.  And that's your personal opinion,

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604            Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com          913-383-1131              316-201-1612

# DASHAUN MCCRAY

1    right?

2        A.    Yes.

3        Q.    Okay.  So what happened on February 10th?

4        A.    Miss Duda went to Janelle Adam's desk and

5    asked her if I presented a hostile work

6    environment and took over the meeting as if the

7    information was my own.

8        Q.    Okay.  And we talked about this earlier

9    but Janelle Adams says that didn't happen, right?

10       A.    She says that happened, that, she says

11   that she went to -- that Ruth Duda came to her

12   desk, oh, in her testimony?  She says I do not

13   recall.

14       Q.    Okay.  So she says I don't recall that

15   ever happening, right?

16       A.    That's correct.

17       Q.    All right.  And that was sworn testimony?

18       A.    That's sworn testimony.

19       Q.    And that Cynthia Finley also says I don't

20   recall that ever happening, right?

21       A.    That's correct.

22       Q.    And that was sworn testimony?

23       A.    Yes.

24       Q.    Okay.  Did this February 10th event

25   result in any material consequence to your



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1    employment?

2        A.    I've seen it as defamation.

3        Q.    Okay.  I see that, what you are saying.

4    But my question is whether or not there was a

5    material consequence to your employment.

6            MR. THOMAS:  Asked and answered.  You can

7    answer again, if you need to.

8        A.    No.

9    BY MR. VANORSBY:

10       Q.    So the next day we have here is February

11   14th, 2020, what happened there?

12       A.    She decides to have a meeting with me and

13   invite the ADPCS, associate deputy of patient care

14   services.

15       Q.    Associate deputy --

16       A.    Of patient care services.

17       Q.    Okay.  And who is that?

18       A.    Heather Brown.

19       Q.    And for what purpose did Ruth Duda invite

20   Miss Brown, if you know?

21       A.    It's still unknown to myself and Heather

22   Brown why she was invited.

23       Q.    Okay.  Did Miss Brown attend the meeting?

24       A.    Yes.

25       Q.    Okay.  Who is Miss Brown to you?


5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

### DASHAUN MCCRAY

1      A.    She's my mentor.

2      Q.    **How did Miss Brown become your mentor?**

3      A.    We worked on the panel to hire nursing,

4   when I came in there were five nurses.

5      Q.    **Okay.**

6      A.    We worked on a panel, with myself, Mrs.

7   Burks and one of the doctors to interview six

8   nurses to increase the nursing in our unit.

9      Q.    **Okay.**

10     A.    And she then got to know me, and I got to

11  know her and then she just helped me to navigate

12  the VA health system.

13     Q.    **All right.  So Nurse Brown, would it be**

14  **fair to say is someone you're close to?**

15     A.    Yes.

16     Q.    **Someone you look to for direction?**

17     A.    Yes.

18     Q.    **Someone you look to for help when you are**

19  **kind of struggling with your work, if you do at**

20  **all.  I don't mean to imply that you struggle with**

21  **your work.**

22     A.    I confide in her to say that I would not

23  be reactionary and point with understanding the

24  VA.

25     Q.    **Okay.  And that's a good way to put it,**

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    she's somebody you confide in, right?

2        A.    Yes.

3        Q.    Okay.  Did Miss Duda know that, if you

4    know?

5        A.    No.  She just knew that Heather was my

6    mentor.

7        Q.    Okay.  So at some point, you assume, you

8    had informed Miss Duda this is my mentor?

9        A.    I informed her that Heather was my mentor

10   when I came back with my appeal and she said it

11   was written very well, and I said Heather assisted

12   me with completing this.

13       Q.    Okay.  All right.  Good context.  So who

14   was at the meeting other than Miss Brown, yourself

15   and Miss Duda?

16       A.    Myself and Miss Brown and Miss Duda.

17       Q.    Okay.  What was discussed at the meeting?

18       A.    I don't recall.  There is an E-mail to

19   the effect though of the meeting, a complete E-

20   mail from Miss Duda to myself.

21       Q.    We may have that.  Let me see.

22            (THEREUPON, Deposition Exhibit No 20 was

23   marked for identification.)

24   BY MR. VANORSBY:

25       Q.    I'm going to hand you what's been marked

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

```
 1    as Exhibit 20.   Have you ever seen that document
 2    before?
 3         A.    Yes.
 4               MR. VANORSBY:   Is Exhibit 20 correct?
 5               MS. CREED:   20.
 6         A.    I see a 19 here.
 7               MR. VANORSBY:   We are on Exhibit 20.
 8         BY MR. VANORSBY:
 9         Q.    What is this document?
10         A.    This document is an E-mail that I
11    forwarded to my ORM representative, Miss Natalina
12    Alford.
13         Q.    Okay.   And what is the E-mail that you
14    forwarded?
15         A.    It's the meeting recap from Ruth Duda in
16    regards to the meeting in which she held with
17    myself on February 14th of 2020.
18         Q.    Okay.   Is this the E-mail that you were
19    just discussing?
20         A.    Yes.
21         Q.    All right.   Did you ever send any E-mail
22    to Miss Duda saying, no, this isn't what we
23    discussed at this meeting, you are wrong?
24         A.    I sent an E-mail to Miss Duda stating
25    that it was inappropriate for her to invite my
```

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1    mentor and to slander me in front of my mentor in

2    regards to the allegations in which she made for

3    the information in regards to Miss Adams, and just

4    number 5, several things on here, I sent a

5    response to her.

6         Q.    Okay.   As part of your response did you

7    say what you recounted at this meeting, no, that's

8    not correct, something else happened?

9         A.    What my response was is that I felt

10   intimidated being --

11        Q.    Sure, and I don't mean it -- I'm sorry to

12   cut you off.

13             MR. THOMAS:   Please let her finish her

14   answer, you did cut her off.

15             MR. VANORSBY:   Just stop.   Just stop.

16   Just stop.

17             MR. THOMAS:   You interrupted her answer.

18             MR. VANORSBY:   Stop.

19   BY MR. VANORSBY:

20        Q.    I just want to make sure you heard my

21   question.   I feel like we are getting off on a

22   tangent, and I don't mean to keep you longer than

23   you need to be, okay.   So, I just want to make

24   sure you answer the question that I ask.

25             My question was as part of any E-mail you

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

```
 1    sent did you say anything to the effect of, this
 2    recap that you have here, what you said we
 3    discussed, or what you said I said, that didn't
 4    happen, that's what I am asking about.
 5         A.   Yes.
 6         Q.   So it is your testimony under oath you
 7    sent the E-mail, this recap here, no, that's not
 8    what happened?
 9         A.   Yes.
10         Q.   Okay.  Have you produced that E-mail in
11    discovery?
12         A.   I am, yes, I'm sure I did.
13         Q.   Okay.  We'll check on that.  This
14    February 14th, 2020, meeting have any material
15    effect on your employment?
16         A.   It had affect on my performance
17    appraisal.
18         Q.   Okay.  Tell me about that.
19         A.   From induction to being at the Robert J.
20    Dole VA from the first performance appraisal I
21    ever had, I was always outstanding.
22         Q.   Uh-huh.
23         A.   Once all of this occurred, I was then to
24    fully, because I don't have a proficiency anymore,
25    I had an executive career field.  And my executive
```


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1  career field had went to a fully successful and

2  documented information in regards to inability to

3  complete the tasks of my employment.

4      Q.    Okay.  So you are saying this February

5  14th, 2020, meeting caused you to have a fully

6  successful performance appraisal?

7      A.    Yes.

8      Q.    Okay.  Did you receive any reduction in

9  your pay as a result of either this meeting that

10  you're fully successful performance appraisal?

11      A.    I did not receive my annual award.

12      Q.    Okay.  And when would that have been?

13      A.    It would have been December of 2020.

14      Q.    And you were no longer working for the --

15      A.    But Miss Duda's information was part of

16  my executive career field as she had been my

17  supervisor from the beginning of the fiscal year

18  to May of 2020.

19      Q.    Okay.  Did you receive a performance

20  appraisal from your supervisor when you returned

21  to Aurora, Colorado?

22      A.    I received a performance, no, ECF, I am

23  now a director, so I am on an executive career

24  field, and so I received that in regards to input

25  from Ruth Duda and just the basic working



### DASHAUN MCCRAY

```
1    processes with my new supervisor.
2        Q.    Okay.  So your new supervisor provided
3    you a performance appraisal, correct?
4        A.    Yes.
5        Q.    Okay.  And that was regarding the work
6    that you performed at your new job, correct?
7        A.    Along with the information that she got
8    from Miss Duda's ECF.
9        Q.    What leads you to believe that the
10   information that, who was your supervisor at that
11   time?
12       A.    Jennifer Peppiatt.
13       Q.    Okay.  And what -- what basis do you have
14   to conclude that Miss Peppiatt relied on any
15   information from Miss Duda?
16       A.    I received the ECF, the documentation, it
17   states that it was information also from previous
18   supervisor.
19       Q.    Okay.
20             (THEREUPON, Deposition Exhibit No 21 was
21   marked for identification.)
22       BY MR. VANORSBY:
23       Q.    I will hand you Exhibit 21.  Can you show
24   me, well, tell me what Exhibit 21 is?
25             MR. THOMAS:  What's Exhibit 20?
```



5111 SW 21st Street     6420 W. 95th Street     800 E. 1st Street
Topeka, KS 66604        Suite 101               Suite 305
785-273-3063            Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com     913-383-1131            316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

1      A.     21 is -- Exhibit 21 is my Executive

2  Career Field Performance Appraisal.

3      BY MR. VANORSBY:

4      Q.     Okay.  Now, would you show me where in

5  this document it says this is based off

6  information I received from prior supervisor?

7      A.     (Witness reviews documents).  So, Miss

8  McCray has a long history at her facility with

9  being a change agent.  She received multiple

10 letters of thanks and accomplished acknowledgment

11 for her help within the own station and throughout

12 VISN 15 during this rating period prior to coming

13 to OCC.  She was known as a go-to person in

14 community care in VISN 15.  After coming aboard

15 she has done an excellent job.  She managed -- so

16 I guess I would have to go and get the E-mail

17 that came from Ruth to Jennifer Peppiatt, which

18 was given to me by -- I would have to go get it.

19 I do have the E-mail from Ruth to Jennifer

20 Peppiatt.

21     Q.     Okay.  Have you produced that?

22     A.     No, I never produced it.

23     Q.     And why is that?

24     MR. THOMAS:  Objection.  Foundation.

25     Q.     Go ahead and answer.

**Appino   Biggs** Reporting Service, Inc.  TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street     6420 W. 95th Street     800 E. 1st Street
Topeka, KS 66604        Suite 101               Suite 305
785-273-3063            Overland Park, KS 66212 Wichita, KS 67202
www.appinobiggs.com     913-383-1131            316-201-1612

### DASHAUN MCCRAY

 1          MR. THOMAS:  Have you established that it
 2   was asked for?
 3          MR. VANORSBY:  I am just asking why she
 4   hasn't produced it.
 5          MR. THOMAS:  Well, why didn't you produce
 6   the statement that you read to her earlier?
 7          MR. VANORSBY:  I don't know what you are
 8   talking about, but anyway.
 9          MR. THOMAS:  You read a statement to
10   her --
11          MR. VANORSBY:  I am not going to argue
12   with you on the record.  Just stop.  Just stop.
13   We'll withdraw the question.  I am not going to
14   argue with you on the record.
15      BY MR. VANORSBY:
16      Q.  **Can you tell me when this performance**
17   **appraisal was provided?**
18      A.   This performance appraisal was provided
19   11-15 of 2020.
20      Q.  **When did you receive this fully**
21   **successful performance appraisal from Miss Duda?**
22      A.   There is an interim performance
23   appraisal.
24      Q.  **Okay.  And when did you receive it?**
25      A.   It was sent directly to my new chief, so



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# DASHAUN MCCRAY

1    I don't know.

2        Q.    You don't know when she might have

3    received it?

4        A.    Correct.

5        Q.    Okay.

6            (THEREUPON, Deposition Exhibit No 22 was

7    marked for identification.)

8        BY MR. VANORSBY:

9        Q.    I am going to hand you what has been

10   marked as Exhibit 22, okay?  Is this the interim

11   appraisal that you were discussing?

12       A.    Yes.

13       Q.    And I want you to go to page marked USA

14   462.

15       A.    Yes.

16       Q.    Okay.  And when was that rating done?  Do

17   you see that date?

18       A.    5-24-2020.

19       Q.    The date that it's signed there, the date

20   it was issued.

21       A.    11-16 of 2020.

22       Q.    Okay.  All right.

23       MR. VANORSBY:  Let's go off the record

24   for a couple of minutes and figure something out

25   here.



### DASHAUN MCCRAY

```
1              THE VIDEOGRAPHER:  The time is
2      approximately 2:13 p.m.  We are going off the
3      record.
4              (THEREUPON, at 2:13 p.m., a recess was
5      taken, after which, 2:21 p.m., the following
6      proceedings were held:)
7              THE VIDEOGRAPHER:  Standby.  Time is
8      approximately 2:21 p.m.  We are back on the
9      record.
10             MR. THOMAS:  Hold on a second.  The way
11     you were reading the question, I thought, I was
12     interpreting as Miss Adams had filed a complaint.
13     I did not realize you were reading from Miss
14     McCray's own statement from her own complaint.  So
15     that's why I was all up in arms.
16             MR. VANORSBY:  Okay.  All right.
17     BY MR. VANORSBY:
18         Q.  Just to make sure we covered this.  We
19     are talking about the February 14th, 2020,
20     meeting, between yourself, Miss Heather Brown and
21     Miss Duda.  That meeting, did it result in a
22     reduction of your pay?
23         A.  No.
24         Q.  Okay.  Demotion?
25         A.  No.
```



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

**DASHAUN MCCRAY**

1    Q.    Disciplinary action?

2    A.    No.

3    Q.    Any decrease in your benefits?

4    A.    No.

5    Q.    Okay.

6    A.    We actually got to this (indicating).

7    Q.    **You can put that to the side.  Okay.  We**

8    **are going to go back to your complaint, which**

9    **is --**

10    MR. VANORSBY:  I am sorry, I will put the

11    microphone on so people will hear me.

12    MR. THOMAS:  I am sorry, I forgot to put

13    mine on, too.

14    BY MR. VANORSBY:

15    Q.    **The complaint is Exhibit 14, and we are**

16    **now looking at the event that's marked vii, I am**

17    **sorry, we just did that one.  We are on Page 4**

18    **now.  That would be event 8.  Can you read that**

19    **for me, please.**

20    A.    Eight.  On March 2nd, 2020, Ruth Duda

21    threatened to fire plaintiff when she asked Ruth

22    Duda how to proceed with an employee's expired

23    nursing license, and Ruth Duda stated to her, I

24    find your response interesting, as I was told to

25    fire you when you violated the HIPPA law.  Yet I



**Appino & Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1  chose a merciful route, (name unknown) because

2  that's another staff member, could produce a

3  license tomorrow and you would have lost a

4  valuable employee.

5      Q.    Okay.  And we already discussed this

6  HIPPA law event --

7      A.    Uh-huh.

8      Q.    -- that occurred in 2017, correct?

9      A.    Yes.

10      Q.    So any decision regarding your

11  termination would have happened around the events

12  where we show the proposed reprimand and

13  dismissal?

14      A.    That's correct.

15      Q.    I said that wrong, proposed reprimand and

16  the final decision?

17      A.    Correct.

18      Q.    Okay.  So it's true that Miss Duda didn't

19  threaten to fire you on March 2nd, 2020, she just

20  referred to an event in 2017?

21      A.    I was told to fire you when you violated

22  HIPPA law.

23      Q.    Right.

24      A.    And so by bringing that back up after

25  that has been removed from my ELPF in August, or



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1   in 2019, that's a moot point.

2       Q.    Okay.  I understand it's a moot point.

3   But what she is discussing is an event that

4   occurred in 2017, right?

5       A.    Yes.

6       Q.    And where she was told you need, you

7   should fire this person?

8       A.    Yes.

9       Q.    And at that time, despite a

10  recommendation to do so, she chose not to fire

11  you?

12      A.    Yes.

13      Q.    All right.  And again, that was for

14  violation of HIPPA law; is that correct?

15      A.    Yes.

16      Q.    Okay.

17          (THEREUPON, Deposition Exhibit No 23 was

18  marked for identification.)

19      BY MR. VANORSBY:

20      Q.    Let the record reflect I'm handing the

21  witness what has been marked as Exhibit 23.  Have

22  you ever seen this document before?

23      A.    Yes.

24      Q.    Okay.  What is it?

25      A.    It's a Table of Penalties For Title 5 on


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1    Title 38 Employees.

2         Q.    Okay.  And were you a Title 38 employee

3    in 2017?

4         A.    Yes.

5         Q.    Okay.  Now, what, what is the penalty for

6    violating the privacy act of HIPPA laws?

7         A.    Reprimand to removal.

8         Q.    So it would be fair to say that Miss Duda

9    received a recommendation that you should receive

10   the highest penalty of removal, right?

11              MR. THOMAS:  Form, foundation, calls for

12   speculation.

13        BY MR. VANORSBY:

14        Q.    You can go ahead.

15        A.    I don't know what she received.

16        Q.    At least you've been told, hey, this is

17   the recommendation I got, right?

18        A.    Yes.

19        Q.    And Miss Duda issued to you the lowest

20   penalty for violating HIPPA laws, correct?

21        A.    Yes.

22        Q.    And that would be a reprimand?

23        A.    Yes.

24        Q.    And that was Miss Duda's choice, right?

25              MR. THOMAS:  Foundation, vague and

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1  ambiguous, or vague, excuse me.

2       A.    She had just came to the unit, so I can't

3  say.

4       Q.    Okay.  So you don't know one way or

5  another?

6       A.    I don't.

7       Q.    Okay.  So if Miss Duda testified to that

8  effect you would have no reason to deny that?

9       A.    I wouldn't know.

10      Q.    Okay.  There has been an allegation in

11 this complaint that you were subjected to intense

12 scrutiny that similar situated white employees

13 were not.  Can you tell me about that?

14      A.    We had other nurses that worked in our

15 department that had been with the VA for an

16 extended period of time that were Caucasian and

17 they, at times, they were under my supervision,

18 but they went to Miss Duda primarily as the person

19 to, in which they would take their issues to.  And

20 instead of her redirecting those staff members to

21 me, with me being their direct supervisor, she

22 would, you know, investigate issues and not

23 discuss those issues with myself; and then another

24 staff that she felt that, you know, may have

25 needed disciplinary action, then she was quick to

Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1    discuss the situation with me and desire me to

2    provide disciplinary action to the staff members,

3    which were also Caucasian, because I only had

4    three black nurses.

5         Q.    So you're telling me that Miss Duda

6    recommended disciplinary action to Caucasian

7    nurses?

8         A.    She recommended disciplinary action for

9    Caucasian employees, yes.

10        Q.    Okay.  And you are talking about nurses,

11   and I want to make sure we are both thinking about

12   the same time frame.  You were a nurse manager,

13   correct?

14        A.    Correct.

15        Q.    Other people that were nurses under your

16   supervision; is that correct?

17        A.    Yes.

18        Q.    Were they subject to the same performance

19   standards that you were?

20        A.    No.

21        Q.    Did they have the same responsibilities

22   that you did?

23        A.    No.

24        Q.    How about pay?  What's the difference in

25   pay, or was there a difference?



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1      A.    I was their supervisor but my pay, I
2   can't say what my pay is compared to their's based
3   on the amount of time they had been in the VA.
4      Q.    Fair enough.  Do you know whether any of
5   those individuals were nurse 3s?
6      A.    Yes.
7      Q.    Okay.  Which ones?
8      A.    Chad Keller.
9      Q.    Anyone else?
10      A.    That's the only one.
11      Q.    Okay.  What similar situated white
12   employees are you alleging in this case were not
13   subject to scrutiny or the level of scrutiny you
14   were subjected to?
15      A.    Since I am the nurse manager, and the
16   staff, even though they were supervised by myself,
17   they had the opportunity to circumvent me and go
18   to Miss Duda in regards to issues that they should
19   have come to me about.  And then when I would
20   speak to Miss Duda and ask her to redirect the
21   staff, that was never accomplished.
22      Q.    Okay.  And so my question was, who were
23   the similar situated white employees that you're
24   alleging were not subjected to the same scrutiny?
25            MR. THOMAS:  Asked and answered.



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    A.    There were no other supervisors.

2    BY MR. VANORSBY:

3    Q.    Okay.  Okay.  And so the scrutiny that

4    we've been discussing, did it have any material

5    effects on your employment?

6    A.    Not financially.

7    Q.    **Any material effect was my question.**

8    A.    I became more, had more anxiety, work

9    anxiety, performance anxiety in the workplace,

10   ability to just understand what was required of

11   me.

12   Q.    Okay.  You said no financial

13   ramifications.  Did you get a demotion as a result

14   of the scrutiny?

15   A.    No.

16   Q.    **Any disciplinary action?**

17   A.    No.

18   Q.    And I assume this is under the umbrella

19   of financial, but did you receive a decrease in

20   benefits?

21   A.    No.

22   Q.    Okay.  Now, there is one other

23   allegation, that you were assigned duties that

24   could not be completed within the time allotted.

25   What duties were those?



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1       A.    The review of the metrics and getting a
2   plan back to Dr. Cummings in a timely fashion.   I
3   was given one day.

4       Q.    Okay.   Okay.   A review of the metrics and
5   getting a plan back, are those two separate events
6   or is that one?

7       A.    That's one event.

8       Q.    One event.   Okay.   What other duties were
9   you given?   Or assigned, I guess I should say.

10      A.    No other duties.

11      Q.    Okay.   So this assignment to review
12  certain metrics and get a plan back to Dr.
13  Cummings, who assigned that duty?

14      A.    Dr. Cummings.

15      Q.    Dr. Cummings assigned that duty to you?

16      A.    Yes.

17      Q.    Okay.   When did he assign it?

18      A.    On the -- I believe it was the same day
19  in which she came and she was talking over, you
20  know, she came in to my personal space behind my
21  desk.

22      Q.    Okay.   That would have been January 31st?

23      A.    Yes.

24      Q.    Does that sound right?

25      A.    Uh-huh.

**Appino** **Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604              Suite 101                  Suite 305
785-273-3063            Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com         913-383-1131              316-201-1612

## DASHAUN MCCRAY

1    Q.    Okay.  And you said that you were given

2  one day to do it?

3    A.    Yes.

4    Q.    Okay.  How did Dr. Cummings give you that

5  assignment?  Was it by E-mail?  Phone?

6    A.    I believe it was by E-mail.

7    Q.    Okay.  What were the metrics that you

8  were asked to review?

9    A.    The outliers in regards to appointment

10  setting.

11    Q.    What do you mean by outliers?

12    A.    Veterans with needing appointments

13  greater than 60, 90, anything over 30 days.

14    Q.    Okay.  So the outliers would be, I am

15  trying to sum this up, any veterans whose

16  appointments went past or needing to be assigned,

17  scheduled, went past 30 days?

18    A.    Correct.

19    Q.    Okay.  So is 30 days kind of when you

20  guys would want to get the schedule done?

21    A.    Yes.

22    Q.    Okay.  Or the scheduling, I should say.

23  Did this assignment have any material effect on

24  your employment?

25    A.    No.



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**DASHAUN MCCRAY**

1         Q.    Is it your contention that the assignment
2    that was made was based on your race?
3         A.    No.
4         Q.    Okay.  Is it your contention that it was
5    made, based for retaliation?
6         A.    Yes.
7         Q.    Okay.  Tell me about that.
8         A.    To be given one day to complete a task
9    that I had already approached them in regards to I
10   felt that they were trying to start building a
11   paper trail in regards to my inability to complete
12   my work task.
13        Q.    Okay.  Let's jump down to count one,
14   looking at Exhibit 14.  And that's Page 6.  Sorry.
15   Okay.  All right.  So for count one you claim
16   that you were subjected to disparate treatment on
17   the basis of your race, correct?
18        A.    Yes.
19        Q.    And you base that claim on this idea that
20   you were treated less favorably than other
21   similarly situated non African American employees;
22   right?
23        A.    Yes.
24        Q.    Okay.  So which employees do you contend
25   were similarly situated to you?


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street       6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604          Suite 101                 Suite 305
785-273-3063              Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com      913-383-1131              316-201-1612

### DASHAUN MCCRAY

```
 1        A.    None in my unit.
 2        Q.    Okay.  And by unit do you mean the office
 3   of community care?
 4        A.    Yes.
 5        Q.    Okay.  All right.  If you look at
 6   paragraph 31, please, still on Page 6.  It says:
 7   Plaintiff suffered adverse job actions to
 8   management, and there is a subparagraph list here.
 9   And I just kind of want to go through these and
10   discuss them, but the first one says, failed to
11   train plaintiff in the job duties of her new
12   position.  Is there anything other than what we
13   have been discussing today regarding this failure
14   to train idea?
15        A.    (Witness reviews documents).  Budget
16   reports, consult data, tracking and labor mapping.
17        Q.    Budget reports?
18        A.    Consult data, tracking and labor mapping.
19        Q.    Is tracking just a stand along category?
20        A.    It's not a stand along category.
21        Q.    Okay.  I am just trying to understand
22   what you are telling me, that's why I am asking
23   you.  So I am just sorry, just tell me again.
24        A.    Budget reports, I was never trained on
25   and then these became a part of things that I
```



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

 1    should do after January 24th.  The labor mapping I
 2    was never trained on fully.  And this become a
 3    part of the thing that was expected of me to do
 4    after January the 4th.  Consult data tracking, at
 5    a large scale, I was never trained on, but I was
 6    trained to utilize the consult tracking manager,
 7    which was training that we received outside of,
 8    not from our direct supervisor.
 9        Q.    Okay.  So from consult data tracking, you
10    received some training, it was just outside
11    training?
12        A.    Uh-huh.
13        Q.    Okay.  Budget reports, what do you mean
14    by budget reports?
15        A.    Budget reports in regards to the staffing
16    model in regards to the number of staff needed for
17    the number of consults that come through our
18    department.
19        Q.    And then labor mapping, what's that mean?
20        A.    The amount of employees that we have per
21    month actually working within their full FTE.
22        Q.    Okay.  And so what would you need to do
23    with regard to labor mapping?
24        A.    Those all then became reasons, or part of
25    my job, they were already part of my job



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1   descriptions, but I had not been formally trained

2   to do them by Miss Duda, and in the document where

3   I was graded fully successful she states that I

4   relied on the OCT for budget reports, consult data

5   tracking and labor mapping.  And these are things

6   that she did not train me in.

7        Q.   Okay.  So Miss Duda completed those

8   things?

9        A.   Yes.

10       Q.   Okay.  And we discussed earlier this time

11  where she sat down and did something on a computer

12  and said this is how you do this thing?

13       A.   And later we never got to where you need

14  to do it, but I never got to where I need to do

15  it until I spoke with Dr. Cummings and it was like

16  do this and do this and do this.

17       Q.   Okay.  My question was going to be, that

18  event, and sitting down and doing it, does that

19  relate all to this labor mapping and budget

20  reports?

21       A.   Yes.

22       Q.   Okay.

23            MR. THOMAS:  What number is that?

24       A.   Exhibit Number 22.

25  BY MR. VANORSBY:



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    Q.    So there was at least sometime where Miss
2  Duda sat down regarding budget reports and labor
3  mapping and she did something on the computer and
4  said this is how you do it and that was what you
5  got?

6    A.    That's all I got.

7    Q.    All right.  Okay.  Anything else?

8    A.    Nope.

9    Q.    Okay.  So going to paragraph 31(b) under
10 complaint, Exhibit 14, it says suffered adverse
11 job action when you were given duties that could
12 not be completed within the time allowed.
13 Anything different than what we already discussed?

14   A.    No.

15   Q.    Okay.  There is Paragraph C, forced
16 plaintiff to work many hours overtime without
17 compensation.  Do you understand that the Court
18 has dismissed that claim?

19        MR. THOMAS:  Asked and answered.

20        MR. VANORSBY:  I haven't asked about this
21 at all.

22        MR. THOMAS:  Sorry.  I withdraw my
23 objection.

24   A.    I am not aware that the Court dismissed
25 this claim.


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

# DASHAUN MCCRAY

1      BY MR. VANORSBY:

2          Q.    Okay.   That's fair.

3          A.    I thought it was to be constructive

4      discharge that was.

5          Q.    We can come back to that, if we need to,

6      but we'll allow the court's order to be what it is

7      but.   Paragraph 31(d), I think we talked about

8      this but I just want to make sure you are not

9      contending it's something different.   It says,

10     caused her to be constructively discharged.   Do

11     you understand that that claim has been dismissed?

12         A.    That's the only --

13               MR. THOMAS:   That one has been asked and

14     answered.

15     BY MR. VANORSBY:

16         Q.    Sure.   Go ahead and answer.   You can go

17     ahead and answer.

18         A.    Can you explain what constructively

19     discharged is?

20         Q.    That's a very hairy area.   You brought a

21     constructive discharge claim.   Okay?   My question

22     is, and if it's not your understanding that's

23     fine, you can say that.   But my question is, if

24     you understand it, that this suffered adverse job

25     action with management caused you to be

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1    constructively discharged, is it your

2    understanding that that claim has been dismissed?

3        A.    Yes.

4        Q.    Okay.  And then 31(e) says, other events

5    as set forth in the statement of facts.  Is there

6    anything else, other than what we've already

7    discussed?

8        A.    No.

9        Q.    All right.  Let's go to Page 8, which is

10   your retaliation claim.  Page 8 of Exhibit 14.

11   And just let me know when you are there.

12       A.    (Witness reviews documents).

13       Q.    Are you there?

14       A.    I am here.

15       Q.    Okay.  With regard to your retaliation

16   claim, the first thing I want to ask you about is

17   what is the protected activity that you are

18   alleging you were retaliated for, you were

19   retaliated against for?

20       A.    For bringing my complaint to her direct

21   supervisor.

22       Q.    Okay.  And is that the January 24th,

23   2020, meeting that we discussed earlier?

24       A.    Yes.

25       Q.    Okay.  And I don't know if I asked this

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    earlier, but who all was present at that meeting

2    on January 24th?

3        A.    Myself, Dr. Cummings and Elizabeth Dial.

4        Q.    Okay.  Did you ever tell Dr. Cummings,

5    yeah, did you ever tell Dr. Cummings that you

6    believed Miss Duda was retaliating against you?

7        A.    Yes.

8        Q.    Okay.  And what did he say?

9        A.    That was in the meeting on January 30th,

10   2020, and he reared back in his chair and he said,

11   well, when are you leaving because Miss Duda has

12   an organization to run.

13       Q.    Did you send Dr. Cummings an E-mail at

14   some point prior to that meeting, okay, indicating

15   that you believed that Miss Duda was retaliating

16   against you?

17       A.    That was the E-mail to Dr. Cummings and

18   Mr. Ament.

19       Q.    Okay.  Do you recall Dr. Cummings asking

20   you how Ruth Duda would even know what we talked

21   about?

22       A.    Yes.

23       Q.    Okay.  So do you recall that E-mail?

24       A.    Yes.

25       Q.    Okay.  What was your response?  If you

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1   know.  If you don't, that's okay.

2        A.    Because she used the same verbiage that

3   he did, getting out of the weeds.

4        Q.    Okay.  What was Dr. Cummings' response to

5   that?  If you know, if you don't that's okay.

6        A.    I don't recall.

7        Q.    Okay.  That's the one.

8              (THEREUPON, Deposition Exhibit No 24 was

9   marked for identification.)

10       BY MR. VANORSBY:

11       Q.    All right.  There we go.  I have handed

12  the witness Exhibit 24.  Have you seen this

13  document before?

14       A.    Yes.

15       Q.    Okay.  And is this the E-mail chain we

16  were just discussing?

17       A.    Yes.

18       Q.    Okay.  What was Mr., Dr. Cummings'

19  response there at the top?

20       A.    This says, she met with us on 1-27 of

21  2020 and stated that she needs to back off and get

22  out of the weeds.  Was the general theme I

23  discussed/coached without ever mentioning a 1-24

24  meeting or any other discussion.

25       Q.    Okay.  So this is Dr. Cummings telling

Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1  you on January 28th that he didn't discuss the
2  meeting with her, he told her she needed to get
3  out of the weeds, which is something that you
4  wanted, right?
5      A.   Correct.
6      Q.   Okay.  And you don't have any basis to
7  contest what Dr. Cummings was telling you here, do
8  you?
9      A.   Like I said, she came back and said the
10 exact same thing that he said to us.
11     Q.   Get out of the weeds?
12     A.   Yes.
13     Q.   Okay.  What I am asking is, you don't
14 have any basis to contest what Dr. Cummings is
15 telling you on Exhibit 24, that hey, I didn't
16 discuss the 1-24 meeting, I told her she needs to
17 get out of the weeds and let you -- let you
18 manage?
19     A.   As soon as she met with him she came back
20 and started pounding on stuff so.
21     Q.   Okay.  And you weren't present at the
22 meeting between Dr. Cummings and Miss Duda, right?
23     A.   Nope.
24     Q.   You don't know what was said?
25     A.   Yes, I don't know what was said.

**Appino** **Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1      Q.    Okay.  Going back to Exhibit 14,
2  paragraph 40.  Again, you list some adverse
3  actions that you believe were retaliatory.  It's
4  failed to train, looking at 40, sub paragraph a,
5  failed to train plaintiff in the job duties of the
6  new position.  Tell me how you think that was
7  retaliatory for your January 24th, 2020, meeting?
8      A.    Just as I stated, that she then came back
9  and made it a requirement of me to do the things
10  that I hadn't been trained in, which was the
11  budget reports, the labor mapping, the consult
12  tracking data and, but I always had did CTM for
13  consult tracking, but if there was any other
14  consult tracking data, I had not done.
15      Q.    Okay.
16      A.    No spreadsheets or graphing charts, which
17  now she was saying that I needed to get those
18  completed.
19      Q.    Okay.  For the --
20      A.    It's all right here.
21      Q.    Yes, I understand.  Okay.  So 40(b), it
22  says go pull up the low performance appraisal,
23  that's the appraisal that you are pointing to on
24  Exhibit 22, right?
25      A.    Correct.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1      Q.    Okay.  And again, that was a fully
2   successful performance appraisal?
3      A.    Yes.
4      Q.    And at the time you were not even under
5   the supervision of Miss Duda?
6      A.    I was under the supervision of Miss Duda
7   from March until May.  And part of the
8   documentation there states that the fully
9   successful was based on 4 out of 19 performance
10  reviews of nurses were late to the rate of 80
11  percent timely, which is a fully successful.
12  Actually I was rectified and actually I was only
13  two performance appraisal reviews that were late.
14     Q.    Okay.  But my question was, you weren't
15  under Miss Duda's supervision at the time this
16  performance appraisal was issued were you?  You
17  were gone by November 16th of 2020?
18     A.    I was gone.
19     Q.    Yes.  That's my question.  You weren't
20  under Miss Duda's supervision?
21     A.    She didn't sign it until November the
22  16th, but she based it upon March to May.
23     Q.    Okay.  So the appraisal was issued
24  November 16 of 2020; right?
25     A.    Correct.


Reporting
Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604                Suite 101                    Suite 305
785-273-3063              Overland Park, KS 66212        Wichita, KS 67202
www.appinobiggs.com           913-383-1131              316-201-1612

## DASHAUN MCCRAY

1    Q.    And you were not under Miss Duda's
2    supervision, correct?
3    A.    That's correct.
4    Q.    Okay.  40(c) says, 40, subparagraph c,
5    says caused plaintiff to be constructively
6    discharged.  Again, that's been dismissed,
7    correct?
8    MR. THOMAS:  Asked and answered like
9    three or four times.  She does not know, don't
10   answer it again.
11   MR. VANORSBY:  Danny, don't start this,
12   you know that's not proper.
13   MR. THOMAS:  It is proper, if the witness
14   is being badgered.  I can instruct her not to
15   answer.
16   MR. VANORSBY: Okay.  Are you done?  I am
17   not badgering her.
18   MR. THOMAS:  You are badgering her.
19   MR. VANORSBY:  I am making sure I covered
20   the complaint.  I already said, again, this is my
21   understanding, but if she has a different
22   understanding I need to know that because this is
23   the one time I get to speak with her.
24   MR. THOMAS: You ask it a number of times.
25   She's not answering it again.  Do not answer the


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1    question again.

2              MR. VANORSBY:  Do you want to get the

3    Judge on the line?  Don't -- yes or no, do you

4    want to get the Judge on the line?

5              MR. THOMAS:  She's not answering it

6    again.

7              MR. VANORSBY:  All right.  We'll get the

8    Judge on the line.  We are going off the record.

9              THE VIDEOGRAPHER:  The time is

10   approximately 2:55 p.m.  We are going off the

11   record.

12             (THEREUPON, at 2:55 p.m., a recess was

13   taken, after which, 3:01 p.m., the following

14   proceedings were held:)

15             THE VIDEOGRAPHER:  Time is approximately

16   3:01 p.m., we are back on the record.

17             MR. THOMAS:  Just so we're clear, you

18   need an answer to this question for the seventh

19   time so badly that you want to get the Judge on

20   the line; is that right?

21             MR. VANORSBY:  Is that what you want to

22   ask?  I am not going to answer your questions.

23             MR. THOMAS:  Fine.  We are on your clock

24   now.

25             MR. VANORSBY:  All right.



**DASHAUN MCCRAY**

1    BY MR. VANORSBY:

2    Q.    We'll come back to paragraph 40(c), let's

3    talk about sub paragraph (d), says she was

4    disciplined for matters for which other similarly

5    situated white employees were not disciplined.

6    What discipline did you receive?

7    A.    No disciplinary action.

8    Q.    Okay.

9    A.    That I am aware of.

10    Q.    And then again, so, 40(e), it says, other

11    events as set forth in Statement of Facts.

12    Anything other than what we have already

13    discussed?

14        MR. THOMAS:  Vague.  Foundation.  Sorry.

15        MR. VANORSBY:  That's form.

16    A.    No.

17    BY MR. VANORSBY:

18    Q.    Okay.  I think I forgot to cover this

19    earlier, but who is Heather Bandy?

20    A.    Heather Schopf.

21    Q.    Okay.  You did say that Heather Bandy is

22    now Heather Schopf, right?

23    A.    Yes.

24    Q.    And what is Miss Schopf's race, if you

25    know?



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**206**

**DASHAUN MCCRAY**

1         A.    Caucasian.

2         Q.    Okay.  Who is Lori Lewis?  You talked

3    about her earlier.

4         A.    Caucasian, nurse.

5         Q.    She's a nurse?

6         A.    Uh-huh.

7         Q.    And then Marcia Dickinson, did you talk

8    about her earlier today?

9         A.    Yes.

10        Q.    What was her position?

11        A.    Caucasian, MSA.

12        Q.    Okay.  MSA, that was her job position?

13        A.    Yes.

14        Q.    And what was her race?

15        A.    Caucasian.

16        Q.    Okay.  So we've gone over allegations in

17   your complaint, okay?  I kind of want to return to

18   the relief that  you're requesting.  What damages

19   are you claiming in this case?

20        A.    Emotional damages, separation of family.

21        Q.    Anything else?

22        A.    Financial damages of maintaining two

23   separate households.

24        Q.    Anything else?

25        A.    Just overall physical displacement.

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    Q.    Okay.  Are you claiming any, I am sorry,

2    were you getting ready to say something?

3    A.    No.

4    Q.    Okay.  Are you claiming any lost wages?

5    A.    No.

6    Q.    And then so as far as --

7    A.    Well, just a second, like times that I

8    had to leave for mental health days.

9    Q.    Okay.

10    A.    Of course, that's not documented in VATAS

11    how many leaves I took in regards to what it was

12    for, it would have just been sick leave.  Those

13    increased towards the end of my time there.

14    Q.    Are you aware that you actually withdrew

15    your claim for lost wages?

16    MR. THOMAS:  Objection, calls for a legal

17    conclusion, misstates the evidence, vague,

18    foundation.

19    MR. VANORSBY:  It's object to form.  I

20    will note that for the record.  Phyllis, can you

21    mark that, please.

22    (THEREUPON, Deposition Exhibit No 25 was

23    marked for identification.)

24    BY MR. VANORSBY:

25    Q.    Okay.  I will hand you what's been marked

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1  as Exhibit 25.

2        MR. THOMAS:  I withdraw my objection.

3     A.   I understand.

4        MR. THOMAS:  I apologize, counsel, I

5  apologize.  I misheard your question.  I withdraw

6  my objection and I apologize.

7     BY MR. VANORSBY:

8     Q.   So my question was, are you aware that

9  you withdrew your claim for lost wages?

10    A.   Yep.

11    Q.   Okay.  Your answer kind of changed here

12 based off, I think, I think you may have answered

13 me, but based off your receipt of this document

14 that's been marked as Exhibit 25.

15    A.   Yes.

16    Q.   Okay.  And what is, is that an E-mail

17 from your counsel?

18    A.   Yes.

19    Q.   Okay.  So we've got emotional damages and

20 then you said financial damages of maintaining

21 the, well, let me back up.  You said emotional

22 damages, separation of family.  The, when you say

23 separation of family, is that part of your

24 emotional damages?

25    A.   Yes.



5111 SW 21st Street    6420 W. 95th Street    800 E. 1st Street
Topeka, KS 66604       Suite 101              Suite 305
785-273-3063           Overland Park, KS 66212 Wichita, KS 67202
www.appinobiggs.com    913-383-1131           316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

**DASHAUN MCCRAY**

1     Q.    Okay.  And then the financial damages you

2  said maintain two homes?

3     A.    Even with our combined income, we did

4  well to maintaining that.

5     Q.    Okay.

6  BY MR. VANORSBY:

7     Q.    Do you need a break?

8     A.    No.

9     Q.    Okay.

10     A.    Maintaining of two homes based on

11  utilizing our financial, limited financial

12  resources for me to be living in Colorado and for

13  him to be living here.

14     Q.    Okay.  So maintaining two homes, anything

15  else regarding like financial damages?  I believe

16  you said one other thing, but I could be

17  incorrect.

18     A.    No.

19     Q.    Okay.  So would it be fair to call the

20  financial damages, damages related to your

21  relocation to Colorado?

22     A.    Yes.

23     Q.    Okay.  So I will call it, for short,

24  relocation damages, okay, is that fair?

25     A.    That's fair.

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1113

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1      Q.   All right.  And is it your contention
2 that you suffered these relocation damages as the
3 result of the forced transfer, if you will, to
4 Colorado?
5      A.   Yes.
6      Q.   Okay.  Now, I want to talk a little bit
7 about the items that you are claiming of damages
8 for relocation.  Just to clear up the record, you
9 were discussing a combined income with him, and
10 you said your damages are based on, you living
11 essentially separate from him, and when you are
12 saying him who are you referring to?
13     A.   Barshey Bryant.
14     Q.   Okay.  Okay.  And so tell me what items
15 are you claiming as damages for these relocation
16 damages?
17     A.   Household expenses.
18     Q.   And so I will tell you I received an
19 Excel sheet from your counsel yesterday showing
20 some costs relating to various household items.
21 Is that what you're claiming?
22     A.   Yes.
23     Q.   Okay.  So whatever would be in that Excel
24 sheet?
25     A.   Yes.



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**DASHAUN MCCRAY**

```
1        Q.   Did you receive a raise as the result of
2   your transfer to Colorado?
3        A.   Yes.
4        Q.   Do you know approximately how much that
5   raise was?
6        A.   40 grand.
7        Q.   So as a result of your transfer to
8   Colorado you started getting an additional $40,000
9   per year from the VA?
10       A.   Yes.
11       Q.   What was your salary prior to that, well,
12  that's a bad question.  Scratch that.  Okay.
13       A.   Do you consider the cost of living in
14  Colorado?
15       Q.   So I want to ask you about some specific
16  items that were on the Excel sheet.  For your
17  items that you have listed under Kansas I saw gas,
18  electric and water bills; is that correct?
19       A.   Yes.
20       Q.   And in whose name are those bills?
21       A.   Barshey Bryant.
22       Q.   Okay.  So if I understand it, it was
23  probably Mr. Bryant who was using those utilities?
24       A.   Yes.
25       Q.   Okay.  And how much time did you spend in
```

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    **Kansas?**

2        A.    In the past three years I have been to

3    Kansas and stayed weeks at a time.  So I would

4    say approximately two weeks in the winter, two

5    weeks in the summer and then one week in the

6    spring.

7        **Q.    Okay.  So what you are telling me is you**

8    **spent approximately five weeks per year in Kansas?**

9        A.    Based on the ability of relief, yes.

10       **Q.    Okay.  And then during the times you**

11   **weren't in Kansas it would have been Mr. Bryant**

12   **who would have been the one solely using those**

13   **utilities?**

14       A.    Yes.

15       **Q.    Al right.  And it is your position that**

16   **the VA should be responsible for the use of those**

17   **utilities?**

18       A.    Rephrase your question.

19       **Q.    Yeah, you are claiming damages relating**

20   **to those bills, okay?  So my question is, are you**

21   **contending as a result of this lawsuit that the VA**

22   **should be responsible for the use of those**

23   **utilities at the home in Kansas?**

24            MR. THOMAS:  Vague.

25       A.    It's just put a burden on our life.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

```
 1        BY MR. VANORSBY:

 2        Q.    Okay.  Well, I --

 3        A.    Yeah.

 4        Q.    -- I understand what you are saying, but

 5   my question is, you are claiming that the VA has

 6   to reimburse you for those utilities, right?

 7        A.    Yes.  That's what I am requesting.

 8        Q.    Okay.  That expense, well, let me, how

 9   did you pay the gas, electric and water bills?

10        A.    Via a checking account.

11        Q.    And you paid them directly?

12        A.    For in Wichita?

13        Q.    Yes.  I am sorry.  In Kansas.

14        A.    No.

15        Q.    Who paid them?

16        A.    Mr. Bryant.

17        Q.    Okay.  And you guys aren't married,

18   right?

19        A.    No, but we have cohabitated over five

20   years.

21        Q.    Okay.  And Mr. Bryant was the one

22   primarily using the utilities, right?

23        A.    Yes.

24        Q.    Okay.  And it is your testimony today

25   that if these bills were paid Mr. Bryant paid them
```

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street       6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604            Suite 101                  Suite 305
785-273-3063          Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com       913-383-1131              316-201-1612

### DASHAUN MCCRAY

1  directly?

2        A.    Yes.

3        Q.    Okay.  Did any money at all come out of

4  your bank account for these bills?

5        A.    I maintain the cable and the trash.

6        Q.    Okay.  I saw on your Excel sheet that

7  there is a line item for X-Box.  Can you tell me

8  about that.

9        A.    That's his, that was, I think he pulled

10  those directly from his bank account.

11        Q.    Okay.  So did Mr. Barshey actually create

12  the Excel sheet?  Mr. Bryant, I'm sorry.

13        A.    We created the Excel sheet together.

14        Q.    Okay.  So he assisted you in creating the

15  Excel sheet?

16        A.    Yes.

17        Q.    And so it's your testimony today that Mr.

18  Bryant is the one that included the line items for

19  X-Box on there, on the Excel sheet?

20        A.    Yes.

21        Q.    Are you contending as a part of this

22  lawsuit that the VA should be responsible for, let

23  me back up.  Do you play X-Box?

24        A.    My son, so, he does the X-Box Live

25  through that account.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1    Q.    Okay.  So the X-Box line item is for your

2    son?

3    A.    Yes.

4    Q.    Okay.  And are you contending that the

5    part of this lawsuit that the VA should pay for

6    your son's X-Box account?

7    A.    No.

8    Q.    Okay.  There is a line item for AT&T.

9    It's listed for Kansas and Colorado.  Can you tell

10   me what that item is for?

11   A.    It was for our Internet in Kansas and our

12   mobile device.

13   Q.    Okay.  And you said our, who would you --

14   A.    The home at 220 --

15   Q.    Sorry, my question is going to be a

16   little bit different.  Who would you be referring

17   to with regard to mobile?

18   A.    My son and I.

19   Q.    And as far as mobile goes, that would be

20   an expense you were going to incur no matter where

21   you lived, right?

22   A.    Yes.

23   Q.    Okay.  And then Internet, is that for

24   your house in Kansas and for Colorado, right?

25   A.    Yes.

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1      Q.    Okay.  And is it your contention in this

2   lawsuit that the VA is responsible for both Kansas

3   and Colorado or one or the other?  I just want to

4   make sure I understand correctly.

5      A.    Primarily Colorado.

6      Q.    Okay.  You said primarily, I want to make

7   sure we are getting a clear --

8      A.    Colorado.

9      Q.    Okay.  All right.  And then there's a

10  line item for Vivint, which I understand to be a

11  security system.

12     A.    Uh-huh.

13     Q.    Can you tell me about that?  Let me ask a

14  better question.  At which location, Kansas or

15  Colorado, did you have a Vivint security system?

16     A.    Kansas.

17     Q.    Okay.  Whose name, in whose name is the

18  Vivint security system?

19     A.    Barshey Bryant.

20     Q.    Okay.  Is it your contention as a part of

21  this case that the VA is responsible for paying

22  the bill for the Vivint?

23     A.    No.

24     Q.    I also noticed a line item for Netflix.

25  Are you contending that the VA is responsible for

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604               Suite 101                    Suite 305
785-273-3063              Overland Park, KS 66212        Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1    the Netflix bill?

2         A.    It's used in Kansas and Colorado.

3         Q.    Okay.

4         A.    But, no.

5         Q.    Okay.  Trash.  There is some items listed

6    for Waste Connections, I know Waste Connections is

7    available here in Kansas and in Colorado, so I was

8    wondering for that item, is it both or just

9    Kansas?

10        A.    Just Kansas.

11        Q.    Okay.  In whose name is the trash Waste

12   Connections in?

13        A.    It was in mine for the last three years.

14        Q.    Okay.  Is it --

15        A.    Today it's not.

16        Q.    Okay.  When did it go out of your name?

17        A.    Just in February of this year because

18   I've changed checking accounts.

19        Q.    Okay.  And are you contending in this

20   case that the VA's responsible for the trash at

21   the Kansas address?

22        A.    It's an expense of mine, yes.

23        Q.    Okay.  And the person primarily using the

24   trash, again, would have been Mr. Bryant?

25        A.    Yes.



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

3/24/2023

### DASHAUN MCCRAY

1    Q.    There is also a line item for Direct TV.

2    Is that Kansas or Colorado?

3    A.    Kansas.

4    Q.    Whose name is the Direct TV account?

5    A.    Mine.

6    Q.    Is that account still running?

7    A.    No.

8    Q.    When did it, when did you get rid of that

9    account?

10    A.    Probably early 2022, I can't say exactly

11    when.

12    Q.    Now, are you contending as a part of this

13    lawsuit that the VA is responsible for your Direct

14    TV bill?

15    A.    Yes, I have maintained cable.

16    Q.    You had to maintain --

17    A.    Well, I have it at both locations.

18    Q.    Okay.  And that was the next item I saw

19    ComCast, is that what you have in Colorado?

20    A.    Yes.

21    Q.    I assume that account is in your name?

22    A.    Yes.

23    Q.    Is Mr. Bryant sharing any expenses

24    related to your Colorado home?

25    A.    Related to my Colorado home he assists me

Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

1    in my house note.

2         Q.    Okay.  So he pays part of your mortgage?

3         A.    Yes.

4         Q.    How does he do that?  Does he send you

5    money?

6         A.    He sends me money periodically at times.

7    So it's like, you know, instead of sending it like

8    each month he like sends me anywhere from like

9    2,000, just depends on the needs.

10        Q.    And does he do that by direct transfer?

11   Or how does he do that?

12        A.    Either Cash App or when I am here

13   locally.

14        Q.    Okay.  So Cash App or he might give you

15   cash?

16        A.    Yes.

17             MR. THOMAS:  Hold on one second.  Are you

18   okay?

19             THE WITNESS:  Yes.

20             MR. THOMAS:  Do you need a break?  Do you

21   need to eat anything?

22        A.    I am fine.

23             MR. THOMAS:  Are you sure?

24        A.    I am sure.

25             BY MR. VANORSBY:



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604              Suite 101                Suite 305
785-273-3063           Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com         913-383-1131            316-201-1612

### DASHAUN MCCRAY

1    Q.    Okay.  All right.  And then I see several

2    items for rent and for mortgage, right?

3    A.    I rented from 6-2020 to 6 of 2021.

4    Q.    Okay.  And to this date you're still

5    continuing to draw a salary from the VA; correct?

6    A.    Yes.

7    Q.    And it would be fair to say that your

8    salary it's meant to cover these every day

9    expenses that we've been talking about, like the

10   trash, the water, utilities, mortgage, right?

11   A.    Yes.

12   Q.    Okay.  There is something on the Excel

13   sheet regarding furniture.  Can you tell me about

14   that.

15   A.    I had to purchase furniture when I first

16   moved to Colorado.  That created financial, you

17   know, I had to, you know, furnish beds and.

18   Q.    Okay.  And are you contending in this

19   case that the VA is responsible for paying for

20   your furniture?

21   A.    No.

22   Q.    Okay.

23          MR. VANORSBY:  We are going to get in to

24   another topic here.  So let's just take a quick

25   break.  I need to use the restroom.  Let's take

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1    five minutes.

2            THE VIDEOGRAPHER:  Standby.  The time is

3    approximately 3:25 p.m.  We are going off the

4    record.

5            (THEREUPON, at 3:25 p.m., a recess was

6    taken, after which, 3:38 p.m., the following

7    proceedings were held:)

8            THE VIDEOGRAPHER:  Time is approximately

9    3:38 p.m.  We are back on the record.

10           (THEREUPON, Deposition Exhibit No 26 was

11   marked for identification.)

12   BY MR. VANORSBY:

13       **Q.    I am handing the witness Exhibit 26.**

14   **Miss McCray, have you seen this document Exhibit**

15   **26 before?**

16       A.    Yes.

17       **Q.    Okay.  What is it?**

18       A.    It is my notice of Personnel Action from

19   when I transferred from Robert J. Dole VA Medical

20   Center.

21       **Q.    Okay.  And we kind of touched on this**

22   **earlier, but does it reflect that you received**

23   **approximately a $40,000 raise when you were**

24   **promoted to your position in Aurora, Colorado?**

25       A.    Yes.



**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1    Q.    Just for the sake of clarity, it actually

2    says Atlanta, Georgia.   Is your office based out

3    of Atlanta, Georgia?

4    A.    It's based out of Washington, D.C.

5    Q.    Okay.  Do you know why it shows Atlanta,

6    Georgia?  It is okay if you don't.

7    A.    I don't.

8    Q.    Okay.

9         (THEREUPON, Deposition Exhibit No 27 was

10   marked for identification.)

11   BY MR. VANORSBY:

12   Q.    We are going to talk about the emotional

13   stress damages now, okay?  I am going to hand you

14   what has been marked as Exhibit 27.  Have you seen

15   that document before?

16   A.    (Witness reviews documents).  Yes.

17   Q.    What is it?

18   A.    It is the Plaintiff's Amended Answers to

19   Defendant's First Set of Interrogatories to

20   Plaintiff.

21   Q.    I want you to go to Page 4, please.

22   A.    (Witness complies).

23   Q.    Okay.  On your supplemental answer I want

24   you to read the first --

25        MR. THOMAS:  Let me mute that.  I am

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1  sorry.

2          BY MR. VANORSBY:

3          Q.    -- the first sentence on Page 4.

4          A.    Plaintiff is hereby withdrawing claims

5  for emotional distress except for --

6          Q.    Can I stop you, I am sorry, I meant on

7  your supplemental answer, sorry to interrupt, the

8  first set of supplemental answer.

9          A.    Yes.  First and foremost, I did not

10  intend to withdraw my claim for emotional distress

11  as set forth above.

12          Q.    Okay.  And so my question is going to be

13  it says you did not intend to withdraw your

14  claims.  My question is going to be with regard to

15  your original answer where you say, plaintiff is

16  hereby withdrawing the claims for emotional

17  distress, except for garden variety emotional

18  distress.  What did you intend by that sentence?

19          MR. THOMAS:  Hold on one second.  To the

20  extent it requires you to disclose conversations

21  you had with Miss Randles, or your attorneys, you

22  are instructed not to answer.  Do you understand?

23          A.    Understood.

24          BY MR. VANORSBY:

25          Q.    Okay.  What did you intend by that

**Appino  Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    sentence that you are hereby withdrawing claims
2    for emotional distress except for the garden
3    variety?
4              MR. THOMAS:  Vague.  I apologize,
5    counsel.  Vague and foundation.  And calls for a
6    legal conclusion.  Go ahead.
7              MR. VANORSBY:  Object to form.
8         A.   My reaction was just even when I see a
9    person that you know has the stature of Ruth it
10   causes me to have physical anxiety.  It has, it
11   puts a feeling on me of just actual fear.  I
12   mean, my heart races and I just get highly
13   emotional regarding just being, I really have a
14   like a hard time just dealing with people outside
15   of our race, as no women in my workforce at all.
16        BY MR. VANORSBY:
17        Q.   Okay.  Okay.  Well, my question was, I
18   want to understand what you intended when you
19   wrote, plaintiff is hereby withdrawing claims for
20   emotional distress except for garden variety
21   emotional distress.
22             MR. THOMAS:  Vague, foundation, calls for
23   a legal conclusion.
24             MR. VANORSBY:  Objection is form.
25        A.   There's a lot of things that I reflect



| 5111 SW 21st Street | 6420 W. 95th Street | 800 E. 1st Street |
| Topeka, KS 66604 | Suite 101 | Suite 305 |
| 785-273-3063 | Overland Park, KS 66212 | Wichita, KS 67202 |
| www.appinobiggs.com | 913-383-1131 | 316-201-1612 |

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

### DASHAUN MCCRAY

1    and react to in regards to just the things that

2    went on in my workplace and how I had to deal

3    with them and cover them up so that the staff

4    wouldn't know what I was going through.  So.

5        BY MR. VANORSBY:

6        Q.    Okay.  And I am sorry to keep asking

7    this, but I feel like we are kind of not

8    understanding each other, okay?  And we're going

9    to get to how the work environment affected you,

10   and those types of things; but my question is a

11   little bit more specific just to this document in

12   that I want to understand, as far as your original

13   answer what you meant by you are hereby

14   withdrawing claims for emotional distress except

15   for garden variety of emotional distress.  Because

16   in the subsequent answer you said you didn't

17   intend to withdraw, and I want to understand what

18   you meant by when you say I hereby withdraw.

19            MR. THOMAS:  And again, I admonish you

20   not to discuss anything that you discussed with

21   your attorneys.  Do you understand?

22       A.    Understood.

23            MR. THOMAS:  Object, vague, foundation.

24            MR. VANORSBY:  That's object to form.

25       A.    I am not clear on the answer.



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1      BY MR. VANORSBY:

2          Q.    Okay.  So you are not sure what you

3      intended?

4          A.    Correct.

5          Q.    Okay.  And then you go on in your

6      supplemental answer, as defendant is aware, the

7      above response was due to a miscommunication.

8      What was that miscommunication?

9          A.    Initially, I didn't want to release my

10     personal health information.

11         Q.    And because you didn't want to release

12     your personal health information, is the reason

13     why you gave your answer that you are hereby

14     withdrawing claims?

15         A.    Correct.

16         Q.    Okay.  And so help me understand what the

17     miscommunication was.

18         A.    I was informed by my attorney that I did

19     not want to release my personal health

20     information, and I was not wanting to give my

21     personal health information is being released.

22     Why can't we get the personal health information

23     of the defendant?

24         Q.    Okay.  And by defendant do you mean Ruth

25     Duda?


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

# DASHAUN MCCRAY

1      A.    Yes.

2      Q.    Because the defendant in this case is

3  Denis McDonough.

4      A.    Yeah.

5      Q.    I don't think I could get his records.

6  Okay.  It also says that defense counsel is made

7  aware that the above response, and we are

8  referring to your supplemental answer, the above

9  response was provided by mistake.  What was the

10 mistake?

11          MR. THOMAS:  Again, do not discuss

12 anything you discussed with counsel.  If you can't

13 answer without disclosing attorney/client

14 privilege then say so.

15     A.    I can't answer this.

16          MR. VANORSBY:  Well, it is my position

17 that she waived by providing this answer, I am

18 entitled to ask what the mistake was if you're

19 going offer this.  Because this is a lot of issues

20 that I'm going to take up at pretrial, so we can

21 add that to something we can discuss with the

22 Judge.  Unless you are going to allow me to ask

23 this one question about what the mistake was.

24          MR. THOMAS:  No.

25          MR. VANORSBY:  All right.  We'll talk to


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

```
 1   the Judge about that.
 2        BY MR. VANORSBY:
 3        Q.    Okay.   There is mention of a January 18th
 4   2023, phone call between your attorney, Danny
 5   Thomas and myself.   Is that correct.   In your
 6   supplemental answer?
 7        A.    Yes.
 8        Q.    Would it surprise you to learn that Mr.
 9   Thomas and I did not have a conversation on
10   January 18th?
11             MR. THOMAS:   Form.   Foundation.   If I got
12   the date wrong, then whatever.   Form foundation.
13   Answer it if you can.
14        A.    I am not aware.
15        BY MR. VANORSBY:
16        Q.    Okay.   Would it surprise you to learn
17   that it was myself who sent the letter to your
18   counsel on January 18th regarding these double
19   responses?
20        A.    I am not aware.
21        Q.    Okay.   Were you provided the full E-mail
22   between myself and, well, okay, let me tee this
23   up.   There is discussion of you being provided an
24   E-mail from myself dated January 23rd, 2023; is
25   that correct?
```



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

3/24/2023                                                                  229

## DASHAUN MCCRAY

1        A.    I don't remember seeing an E-mail.

2        Q.    Okay.  You don't recall ever seeing the

3   E-mail that I sent regarding any phone call with

4   myself and Mr. Thomas?

5              MR. THOMAS:  Do not answer.  Do not

6   answer.

7              MR. VANORSBY:  What's the basis for you

8   instructing this witness not to answer, Mr.

9   Thomas?

10             MR. THOMAS:  Do not answer about anything

11  I may have sent you or may not have sent you as

12  it invades attorney/client privilege.  Actually,

13  go ahead and answer that.

14             MR. VANORSBY: Can you repeat the

15  question, please?

16             (THEREUPON, at this time in the

17  proceedings the Reporter read back this requested

18  portion of the transcript:)

19             (Q. Okay.  You don't recall seeing the E-

20  mail that I sent regarding any phone call with

21  myself and Mr. Thomas?)

22             MR. VANORSBY:  Let me reask it, if I

23  asked it that way.

24  BY MR. VANORSBY:

25        Q.    You don't recall ever seeing an E-mail



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

3/24/2023                                                                    230

### DASHAUN MCCRAY

1  between myself and Mr. Thomas?

2       A.    Not before today.

3       Q.    It also says, your supplemental answer

4  goes on to say, my attorneys have informed me that

5  they have repeated this message via E-mail and via

6  telephone several times to defense counsel since

7  January 18th, 2023, up to the date of the signing

8  of this document.  Do you see that?

9       A.    Yes.

10      Q.    Okay.  How many times, if you know, was

11 that message conveyed by E-mail?

12      A.    I am not able to answer.

13      Q.    Okay.  Were you ever provided any of

14 those E-mails?

15      A.    I don't recall.

16      Q.    Okay.  Let's talk about phone calls.  How

17 many phone calls?

18      A.    I don't recall.  Phone calls between who?

19      Q.    That's a good point.  Phone calls between

20 myself and your counsel regarding this topic.

21      A.    I don't recall.

22      Q.    Okay.  Do you know the dates of those

23 phone calls?

24      A.    I don't recall.

25      Q.    Were you provided any E-mails,



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1  confirmation of those phone calls?

2       A.   No.

3       Q.   Okay.  So what are the claims that you

4  are reasserting, or never withdrew, that are

5  outside of this, quote-unquote, garden variety of

6  emotional distress?

7            MR. THOMAS:  Objection.  Vague,

8  foundation, calls for legal conclusion.

9            MR. VANORSBY:  Objection is form again.

10      A.   I am unable to answer.

11  BY MR. VANORSBY:

12      Q.   Okay.  You just don't know at this time?

13      A.   No.

14      Q.   Let's look at your complaint for just a

15  second, okay?  Exhibit 14.  And we can stay on

16  the retaliation page because this paragraph is

17  repeated throughout, but if you look at paragraph

18  42 it states on Page 8 it states, as a direct and

19  proximate result of the conduct of the defendants

20  and the conduct of the supervisors and managers,

21  the plaintiff suffered grievous injury and damage,

22  including but not limited to past, present,

23  future, lost wages.  We already talked about that.

24  Benefits, what damage did you incur for benefits?

25      A.   I do not recall.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604              Suite 101                  Suite 305
785-273-3063            Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

### DASHAUN MCCRAY

1    Q.    Okay.  And as we've kind of discussed

2   throughout, you never received a reduction in your

3   benefits, right?

4    A.    No.

5    Q.    Okay.  The next item says, earning and

6   earning capacity.  Is that any different than your

7   lost wages?

8    A.    No.

9    Q.    I am going to read some of these, but I'm

10   going to skip over them, okay?  Mental anguish,

11   pain, humiliation, embarrassment, depression,

12   anxiety, anger, physical manifestations of

13   emotional distress.  Can you tell me about that?

14    A.    Through the physical manifestations of

15   the emotional distress, as I was stating before

16   when I even just come in contact with a person

17   like if I see somebody from behind that even fits

18   her stature or hair color, I mean I get very, my

19   heart races and I have like just complete

20   flushness and just, I mean, don't want to, it

21   might be her.  I don't want to actually come in

22   contact with this person ever again in my life.

23    Q.    Okay.  So and I will try to wrap that up

24   into like a bite-size piece here.  But what you're

25   saying is you're scared to see her?



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1      A.    Yes.

2      Q.    Okay.  And that's your physical

3  manifestation?

4      A.    Yes.

5      Q.    Okay.  Is there anything else?

6      A.    Thinking of what I went through is, you

7  know, gives me immediate like pressure, headache,

8  it brings on migraines, just going through this

9  process right now, brings on headaches and just

10  started to review the information again just has

11  really had me in an area of emotional distress.

12      Q.    Okay.  Physical injury is the next item.

13  What physical injury have you suffered?

14      A.    I don't recall a physical injury.

15      Q.    Okay.  Have you seen any physician or

16  therapist at all, let me scratch that first part

17  of the question.  Have you described this physical

18  manifestation, emotional distress to any doctor,

19  therapist, physician at all?

20      A.    Yes.

21      Q.    Okay.  Which ones?

22      A.    In January of 2019 I actually went to

23  therapy with EAP, New Perspectives here in

24  Wichita, Kansas.  And I informed the counselor

25  that I needed to just discuss my acceptance of the



**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    role, knowing how my interaction is with my new,
2    well, with my current boss who would still be my
3    supervisor.  I didn't want to go in to a position
4    with a chip on my shoulder, I wanted to really
5    give a new opportunity just to be able to work
6    with this person.
7        Q.    Okay.  Now, you said EAP and New
8    Perspectives, is that the same or are they two
9    different?
10        A.    It's an employee assistance program, but
11   New Perspectives is the company that's contracted
12   with Right Choice.
13        Q.    Okay.  So you went through EAP to go to
14   New Perspectives?
15        A.    Yes.
16        Q.    Okay.  And you said you went in January
17   of 2019, right?
18        A.    Before returning to work in my new role,
19   yes.
20        Q.    Okay.  And it is your testimony under
21   oath that at that time in January of 2019 you
22   informed this therapist of these alleged physical
23   manifestations or emotional distress?
24        A.    Yes.
25        Q.    Okay.



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

1      A.     And later in my continued seeing her my
2 Lexapro has increased to 20 milligrams.
3      Q.     Okay.  And you are saying that was
4 increased after January of 2019?
5      A.     Yes.
6      Q.     And you are alleging it sounds like you
7 are tying that to your work?
8      A.     Yes.  Job stress, anxiety.
9      Q.     Just to make sure I close this out, you
10 mentioned EAP New Perspectives January 2019, is
11 there any other physician or therapist at all that
12 you described these physical manifestations to?
13     A.     With my current therapist.
14     Q.     And who is that?
15     A.     Gratia Meyer.
16     Q.     Okay.  Anyone else?
17     A.     No.
18     Q.     Okay.  And when did you start seeing Miss
19 Meyer or Dr. Meyer?
20     A.     I started seeing Dr. Meyer in November of
21 2022.
22     Q.     And you still currently see her?
23     A.     Yes.
24     Q.     All right.  So in Exhibit 27, let me go
25 at it this way.  From my understandings you had a

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604           Suite 101                 Suite 305
785-273-3063               Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com        913-383-1131              316-201-1612

## DASHAUN MCCRAY

1  psychological evaluation done in October of 2015.
2  Who performed that evaluation?
3       A.   Department of Veteran Affairs.
4       Q.   Okay.  And who was the doctor?
5       A.   I don't recall.
6       Q.   Okay.  But you had it done at the VA?
7       A.   Yes.
8       Q.   Was that here in Wichita?
9       A.   Yes.
10       Q.   For what reason did you have that
11  evaluation?
12       A.   For depression.
13       Q.   Okay.  And was that evaluation done prior
14  to your ever starting work for the VA?
15       A.   Yes.
16       Q.   Okay.  Was it something that the
17  evaluation was ordered by a physician or did you
18  just personally go in there and say I need an
19  evaluation?
20       A.   It was a compensation and pension claim.
21       Q.   I'm sorry, say that again.
22       A.   Compensation and pension claim.
23       Q.   Tell me what that means.
24       A.   It's a VA disability.
25       Q.   Okay.  So you went in to have a



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

```
 1    psychological evaluation done in order to get a
 2    disability rating?
 3         A.    Yes.
 4         Q.    Okay.  Do you have a current disability
 5    rating?
 6         A.    Yes.
 7         Q.    Okay.  What is that?
 8         A.    My rating?
 9         Q.    Yes.
10         A.    70 percent service-connected veteran.
11         Q.    Okay.  Is that rating related to your
12    depression?
13         A.    Depression, yes.
14         Q.    Okay.  So you have service-connected
15    depression?
16         A.    Yes.
17         Q.    Okay.
18         A.    From racial discrimination in active
19    duty.  And other things.
20         Q.    Okay.  So it's your testimony today that
21    you suffered some racial discrimination while you
22    were active duty?
23         A.    Yes.
24         Q.    Can you tell me about that, generally?
25         A.    Generally, providing work while on active
```


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1   duty and other staff member being given the

2   recognition of the work that I had got completed

3   and dealing with just being a woman in the

4   military and seeing the difference between myself

5   and Caucasian women in regards to exercises and

6   who has put on certain shifts, yes.

7        Q.    Okay.  And so did you receive some

8   clinical diagnosis of depression as a result of a

9   racial discrimination that you incurred in active

10  duty?

11       A.    I received major depressive disorder from

12  that evaluation, a diagnosis of major depressive

13  disorder.

14       Q.    Okay.  So you received that diagnosis

15  major depressive disorder in October of 2015?

16       A.    Yes.

17       Q.    Okay.  And I will tell you we don't have

18  those records, but I will try to work with your

19  counsel to get some releases to try to figure out

20  who that doctor was and get those records.

21       A.    Well, you have that information, so.

22       Q.    I don't know who the doctor is, I

23  wouldn't be able to tell you, and I don't have

24  access to any of that stuff.  So we'll try to get

25  that figured out.



## DASHAUN MCCRAY

1        MR. THOMAS:  We'll try to work with you.

2    BY MR. VANORSBY:

3        Q.    Okay.  All right.  So we are going to

4    kind of get in to your medical records, I know

5    this is going to be a difficult conversation, I

6    just want you to know I am not trying to upset

7    you.  I don't want to diminish your feelings.  I

8    don't want you to feel that way or cause you any

9    trauma.  If you need a break at any point, please

10   let me know, okay?

11       A.    Okay.

12       Q.    All right.  We've discussed the 2015

13   psychological evaluation, right?

14       A.    Yes.

15       Q.    At any point in your life have you

16   received any other psychological evaluation?

17       A.    Recently.

18       Q.    Okay.  What date?

19       A.    February of 2023.

20       Q.    And who performed that evaluation?

21       A.    QTC.

22       Q.    QTC?

23       A.    They're another company for compensation

24   and pension Department of Veteran Affairs.

25       Q.    Okay.  I know who QTC is because I have

Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

3/24/2023                                                                240

**DASHAUN MCCRAY**

1    some other cases that involves that.  That's the

2    only reason I know that.  Okay.  Who was the

3    doctor that performed the evaluation?

4        A.    I don't recall her name right now.

5        Q.    Okay.  Where was it performed?  Do you

6    know?  And by where I mean the physical location?

7        A.    Aurora, Colorado.

8        Q.    Okay.  What were the results of that

9    psychological?  Well, let me ask you this, why did

10   you go for psychological evaluation in February of

11   2023?

12       A.    Continuing to work on my compensation and

13   pension claim with the Department of Veteran

14   Affairs.

15       Q.    Oh, okay.  I see.  So you were looking to

16   get an increase to your disability rating?

17       A.    Yes.

18       Q.    Okay.  And what was the result of that

19   psychological evaluation?

20       A.    Disability rating increase.

21       Q.    Okay.  So you did get an increase?

22       A.    Yes.

23       Q.    I don't know how to, if I asked you

24   earlier, but you said that your disability rating

25   is 70 percent, is it currently 70 percent?

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**DASHAUN MCCRAY**

1    A.    Yes.

2    Q.    Okay.  What was it prior to February of

3    2023?

4    A.    Ten percent.

5    Q.    Oh, okay.  Okay.  Other than the February

6    of 2023 evaluation, have you ever had any other

7    psychological evaluation by a doctor or therapist?

8    A.    Like just active treatment?

9    Q.    Well, active treatment or you just

10   reported there because you thought maybe I need to

11   have some depression screening or anything like

12   that.

13   A.    I started active treatment with the

14   Department of Veteran Affairs for depression and

15   anxiety in October of 2021.

16   Q.    Okay.  Anything prior to October of 2021?

17   A.    Nothing other than EAP.

18   Q.    Okay.  We touched on this a little bit,

19   but have you been diagnosed with any mental health

20   disorders?  I say that kind of weird, but the

21   phrase for depression is my understanding.

22        MR. THOMAS:  Vague, foundation.

23   BY MR. VANORSBY:

24   Q.    So I don't mean like -- you gave me that

25   look that my mom sometimes gives me -- I don't



Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    mean schizophrenia, those types of things.  I have
2    a general understanding of your medical history,
3    but we are making a record.  My question is, have
4    you previously been diagnosed with any other
5    mental health disorders?
6              MR. THOMAS:  Form.  Foundation.
7         A.    Post traumatic stress disorder.  Major
8    depressive disorder.
9         BY MR. VANORSBY:
10        Q.    Anything else?
11        A.    Anxiety.
12        Q.    Okay.  Anything else?
13        A.    No.
14        Q.    Okay.  With respect to your PTSD
15   diagnosis, when did you receive that diagnosis?
16        A.    The actual diagnosis was in November of
17   2021.
18        Q.    And who was the doctor who made that
19   diagnosis?
20        A.    Well, I was seen by a social work
21   therapist.
22        Q.    I am sorry?  Say again.
23        A.    Social work therapist Dayna Scheich at
24   the Aurora, Colorado VA medical center.
25        Q.    Okay.  Can you spell Dayna Scheich for

Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    me?  If you can.

2         A.    I don't know how to spell it.

3         Q.    Is she listed on here?

4         A.    Yeah.

5         Q.    D-A-Y-N-A, S-C-H-E-I-C-H?

6         A.    Yes.

7         Q.    Okay.  Was there a determination as to

8    the causation of your PTSD, if you know?  And by

9    that I mean, did Miss Scheich, it looks like

10   sheesh, make a determination as to causation?

11        A.    Military sexual trauma.

12        Q.    Was there, with regard to your major

13   depressive disorder, when did you receive that

14   diagnosis?

15        A.    October of 2015 on that evaluation.

16        Q.    Okay.  At any point prior to receiving

17   this diagnosis of major depressive disorder were

18   you diagnosed with depression?

19        A.    Yes.

20        Q.    When did that occur?

21        A.    2010.  Actually 2000.

22        Q.    Okay.  2000.  And that was the first

23   time, and I say first time, but that was the first

24   time you were diagnosed with depression?

25        A.    Yes.  2000.  It was while I was on active

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1   duty.

2       Q.    And then for your anxiety when were you

3   diagnosed with anxiety?

4       A.    2010.

5       Q.    What are some of the, the symptoms that

6   you have from this disorder of your PTSD,

7   depressive disorder and your anxiety?

8       A.    Migraine headaches.  Heart palpitations

9   and just racing heart rate.  Social anxiety

10  disorder.

11      Q.    Anything else?

12      A.    Just my depression.

13      Q.    Okay.  Have you reported symptoms of

14  anger?

15      A.    On occasion.

16      Q.    Persistent worry?

17      A.    Yes.

18      Q.    Excessive crying?

19      A.    Yes.

20      Q.    A feeling like people were out to get

21  you?

22      A.    Yes.

23      Q.    Okay.  Have you also -- I am sorry, go

24  ahead.

25      A.    No, I need your question.

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

1    Q.    Okay.  Have you also reported past issues
2  with substance abuse?

3    A.    Alcohol.

4    Q.    Okay.  And when did that occur?  Or when
5  did that start, I should say.

6    A.    1997, but it's intermittent.

7    Q.    Okay.  Do you continue to struggle with
8  substance abuse?  Let me change that.  Do you
9  continue to struggle with alcohol?

10    A.    At stressful periods.

11    Q.    Okay.  Have you reported that you had a
12  gambling addiction?

13    A.    Yes.

14    Q.    And when did that start?

15    A.    2007.

16    Q.    Can you explain to me, if you can, what
17  was going on in your life in 2007 that led to a
18  gambling addiction?

19    A.    I was pregnant with my second child and I
20  think I just had some postpartum depression and I
21  just gambling was like a way out.  But I stopped
22  gambling because it was non conducive to my
23  lifestyle.

24    Q.    What do you mean by non conducive to your
25  life style?



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

1      A.    I prefer to be able to spend my hard
2  earned money on things that I value for myself and
3  my family.
4      Q.    Okay.  You mentioned postpartum
5  depression, have you ever been diagnosed with
6  postpartum depression?
7      A.    Not an official diagnosis.
8      Q.    Okay.  Did you report to Dr. Meyer that
9  you were diagnosed with severe postpartum
10  depression?
11      A.    I reported to Dr. Meyer that based on my
12  mental status during both pregnancies I believe
13  that I had postpartum depression.
14      Q.    Okay.  So you didn't have a formal
15  diagnosis, it's just your belief that that's what
16  happened?
17      A.    Yes.
18      Q.    Okay.  Would it be fair to say that your
19  depression, well, let me be more precise.
20      Your PTSD, your major depressive disorder,
21  your anxiety those were caused by trauma that you
22  suffered while you were a child and while you were
23  in the military?
24      A.    No childhood trauma.
25      Q.    Okay.  So are you saying today that you

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street       800 E. 1st Street
Topeka, KS 66604              Suite 101                 Suite 305
785-273-3063            Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com         913-383-1131             316-201-1612

**DASHAUN MCCRAY**

1  didn't suffer a traumatic event while you, or a

2  series of events while you were under the age of

3  ten?

4      A.    Under the age of ten, it wasn't inflicted

5  trauma.  It was a situation of cousins and

6  exploratory things.

7      Q.    Okay.  Did you report to, let me ask you

8  this question.  Who was the doctor you saw at New

9  Perspectives?

10     A.    The counselor I saw at New Perspectives,

11 I can't remember her name.

12     Q.    Okay.  Did you report to the counselor at

13 New Perspectives that you were molested by your

14 cousins from the age of seven to ten?

15     A.    Yes.

16     Q.    And did you report that that was sort of

17 a source of your depression or your anxiety?

18     A.    Yes.

19     Q.    And so my question was, and if I am

20 getting this wrong just explain to me, but I am

21 wondering is it fair to say that the disorders

22 that we are talking about, the PTSD, major

23 depressive disorder, the anxiety, is it fair to

24 say that those were caused by the event we just

25 discussed, and then you mentioned your military

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    sexual trauma.

2        A.    That and the experiences of racism while

3    on active duty, and just workplace anxiety from,

4    you know, my past with my employer that I had

5    prior to the one of this new position.

6        Q.    Okay.  And so your diagnosis, at least of

7    your major depressive disorder and your anxiety,

8    those were made prior to your employment at the

9    VA, right?

10       A.    Yes.

11       Q.    Okay.  You mentioned that you were a

12   victim of military sexual trauma.  Were you

13   diagnosed with depression at the time that that

14   occurred?

15       A.    I was diagnosed with depression in 2000.

16       Q.    Okay.

17       A.    I didn't report the military sexual

18   trauma, that happened in 1997.

19       Q.    Okay.  So the MST, is it okay if I use

20   that term?

21       A.    That's fine.

22       Q.    The MST occurred in 1997?

23       A.    Yes.

24       Q.    Okay.  And you were not diagnosed with

25   depression until 2000, is that right?



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

### DASHAUN MCCRAY

1    A.    Yes.

2    Q.    Okay.  Was there any determination at
3  that time as to causation for your depressive
4  state?

5    A.    They stated that it was episodic.  And I
6  just went along with it and didn't say nothing.

7    Q.    By your statement I take it that you
8  disagreed with that?

9    A.    Yes.  The military psychiatrist stated it
10  was an episodic event.

11    Q.    What episode triggered this depressive
12  state?

13    A.    I am not sure exactly what triggered the
14  depressive state, but I ended up with a
15  hospitalization.

16    Q.    Okay.  And the reason I ask that is
17  because when you say episodic to me that means
18  there is an episode that.

19    A.    Because they put me on medication and the
20  medication made me not well.  So based on me not
21  wanting to take the medication I just didn't go
22  back for care.

23    Q.    Okay.  So we kind of discussed generally
24  your psychological background, now I want to get a
25  little more specific and talk about the records



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

## DASHAUN MCCRAY

1    that I do have.  We discussed the New

2    Perspectives, right?

3         A.    Yes.

4         Q.    That's someone you went to see for

5    depression, right?

6         A.    Yes.

7         Q.    Okay.  Do you recall going to see the,

8    well, do you recall going to see the counselor at

9    New Perspectives in early 2019?

10         A.    Yes.

11         Q.    Okay.  That would be January 23rd, 2019,

12    does that sound right?

13         A.    Yes.

14              MR. THOMAS:  I just need to stand.

15    BY MR. VANORSBY:

16         Q.    Do you recall reporting to the counselor

17    that you were struggling at that time with

18    depression/anxiety?

19         A.    Yes.

20         Q.    Do you also recall reporting to the

21    counselor that you were recently promoted to nurse

22    manager and that you love your job?

23         A.    Yes.

24         Q.    And you were working for Miss Duda at

25    that time, correct?



## DASHAUN MCCRAY

1         A.    I was recently promoted to nurse manager,
2    I love my job, I have conflict with my supervisor
3    and I do not want to go in to this position with
4    a chip on my shoulder.
5         Q.    Okay.  Is there any reason why the
6    discussion about your supervisor is not reflected
7    in the records, that you know of?
8         A.    I am sure they are reflected somewhere in
9    the records.
10        Q.    Okay.
11        A.    I also went back to New Perspectives in
12   2020.
13        Q.    Okay.  I want to talk to you about a
14   visit you had to New Perspectives in February of
15   2019.  Do you recall reporting at that time that
16   you were struggling with anxiety and anger?
17        A.    Yes.
18        Q.    Okay.  And part of the reason that you
19   were struggling with the anxiety and that anger
20   is that you had found some documents regarding
21   your --
22        A.    Significant other, yes.
23        Q.    And was that Mr. Barshey?
24        A.    Yes, Mr. Bryant.
25        Q.    Mr. Bryant?

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

3/24/2023                                                                   252

## DASHAUN MCCRAY

1      A.    Uh-huh.

2      Q.    **What did you find?**

3      A.    Some previous history in regards to a

4  case in which he had against him.

5      Q.    **What was the case?**

6      A.    I know he is a registered sex offender.

7      Q.    **That's what you determined or found out?**

8      A.    Right.

9      Q.    **And had Mr. Bryant told you that**

10 **information before?**

11     A.    No.

12     Q.    **And so given your history of that, did**

13 **that bother you?**

14     A.    I was so far in to a relationship with

15 him and none of those things are, were apparent in

16 our life, and so that's why I was really trying to

17 just figure out what I was able to cope with.

18     Q.    **Okay.  So that had an affect on your**

19 **depressive state, would that be fair to say?**

20     A.    We were, because we had went through kind

21 of a big emotional blowup behind it, yes.

22     Q.    **Did that have an affect on your anxiety?**

23     A.    At that time, yes.

24     Q.    **And made you angry?**

25     A.    Yes.



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**DASHAUN MCCRAY**

1    Q.    Okay.  And that's what you went to talk
2   to your counselor about?

3    A.    At that time.

4    Q.    Yeah.  I want to take a quick break and
5   we are going to talk about the records I received
6   from Dr. Ferris in just a moment, okay?

7    A.    Okay.

8    THE VIDEOGRAPHER:  Standby.  The time is
9   approximately 4:29.  We are going off the record.

10   (THEREUPON, at 4:29 p.m., a recess was
11  taken, after which, 4:39 p.m., the following
12  proceedings were held:)

13   THE VIDEOGRAPHER:  Time is approximately
14  4:39 p.m.  We are back on the record.

15  BY MR. VANORSBY:

16   Q.    Miss McCray, I'm going to hand you what
17  has been marked as Exhibit 28.

18   (THEREUPON, Deposition Exhibit No 28 was
19  marked for identification.)

20  BY MR. VANORSBY:

21   Q.    Do you know what that is?

22   A.    Medical records from my primary care
23  doctor.

24   Q.    Have you seen them before?

25   A.    Yes.



Appino Biggs Reporting Service. Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1     Q.    Okay.  When was the last time you seen
2  them?
3     A.    Oh, probably a few years ago.
4     Q.    Okay.  Have you reviewed them at any
5  point in the last two years?
6     A.    Probably in April of '21.
7     Q.    Okay.  And we don't have to go through
8  all of this, we don't have time to do that anyway,
9  but you are flipping through the invoices, I want
10 to ask you, those invoices, can you tell me which
11 one you are claiming as damages in this lawsuit,
12 which invoices?
13    A.    (Witness reviews documents).  2-13-2019
14 to, I am not even sure when my last appointment
15 was there.  To 2-20-2020.
16    Q.    Okay.  Each one of those, how many
17 invoices is that, can you tell me?
18    A.    Four.
19    Q.    Okay.  For those four invoices, how many
20 of those, let's do it this way.  Let's start with
21 the 2-13-2019 invoice.
22    A.    Uh-huh.
23    Q.    For what were you seeing him at the
24 doctor's office, with Dr. Ferris?
25    A.    Major depressive disorder, and then



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1  symptomatic postprocedural ovarian failure.

2      Q.    What's the next invoice?

3      A.    Major depressive disorder, type 2

4  diabetes, vitamin D deficiency, conjunctivitis,

5  right eye.

6      Q.    What's the date for that?

7      A.    7-2-2019.

8      Q.    And what's the next invoice?

9      A.    9-30-2019.  That was just my wellness

10 evaluation, but I mean that includes all of my

11 diagnosis, but all he says is preventive medicine,

12 established patient age 40 to 64.

13     Q.    Okay.  So it's your contention in this

14 case that the VA should be responsible to pay for

15 the wellness evaluation?

16     A.    Yes.

17     Q.    Okay.  And not just because you are a

18 veteran and you received veteran benefits but

19 specifically because --

20     A.    I didn't receive veteran benefits at this

21 time.

22     Q.    Okay.  That's good enough.  But just to

23 finish my question, you are claiming that the VA's

24 responsible for this invoice because of the events

25 alleged in this complaint?



5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131              316-201-1612

## DASHAUN MCCRAY

1      A.    Yes.

2      Q.    What is the next invoice, the date of the

3  next invoice?

4      A.    2-20-2020.

5      Q.    And what were you seeing at the doctor

6  for on February 20, 2020?

7      A.    Type 2 Diabetes, mellitus, acute

8  nasopharyngitis.

9      Q.    Okay.  And it's your contention that the

10  VA is responsible to reimburse you for that

11  doctor's visit?

12      A.    Yes.

13      Q.    Okay.  Why?

14      A.    All of my visits have also dealt with my

15  major depressive disorder.

16      Q.    Okay.  Even if it's not listed, I guess?

17      A.    Even if it's not listed as a reason why I

18  am there.

19      Q.    Okay.  Can you turn to Page 42.  It

20  should be after the November 7th, 2018.

21      A.    (Witness complies).  Uh-huh.

22      Q.    There is a mention of spinal surgery.

23  Can you tell me what that is about?  If you know.

24      A.    (Witness reviews documents).

25      Q.    Appointment with the spinal surgeon.



5111 SW 21st Street          6420 W. 95th Street         800 E. 1st Street
Topeka, KS 66604             Suite 101                   Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                316-201-1612

## DASHAUN MCCRAY

1       A.    Yes, I made that appointment with the

2   spinal surgeon due to the pain that I was having

3   in my neck, but that appointment was cancelled and

4   I had to go to see the shoulder orthopedic

5   surgeon.

6       Q.    Okay.  All right.  So this November 7th,

7   2018, appointment is for arm pain?

8       A.    Yes.

9       Q.    And that's related to what we now know is

10  a rotator cuff repair that you needed?

11      A.    Yes.

12      Q.    Did you report that the pain associated

13  with that injury had an affect on your anxiety?

14      A.    No.

15      Q.    Okay.  So you didn't state to the doctor

16  that the pain associated with that shoulder injury

17  was increasing your anxiety?

18      A.    That's what it says right here, but I

19  don't recall reflecting that.

20      Q.    Okay.  Do you have any reason to deny

21  that you reported that?

22      A.    I don't have a reason to deny.

23      Q.    Okay.  Can you go to Page 36, please.

24      A.    (Witness complies).

25            MR. THOMAS:  36?



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                  316-201-1612

## DASHAUN MCCRAY

1          MR. VANORSBY:  That's correct.

2     BY MR. VANORSBY:

3          Q.   And do you see an entry for December 19,

4     2018?

5          A.   Uh-huh.

6          Q.   The only question I have about this is it

7     says that you had diabetes diagnosed one month

8     ago, do you see that?

9          A.   Type 2 Diabetes diagnosed in 2012.

10         Q.   Okay.  Well, I see that, but there is an

11    entry in this paragraph that says, first diagnosed

12    one month ago.

13         A.   No.

14         Q.   Do you know what that refers to?

15         A.   Patient diagnose, diabetes was first

16    diagnosed one month ago, that's incorrect.

17         Q.   Okay.  And that's what I was wondering.

18    Go to Page 33.  Do you see an entry for January

19    28th of 2019?

20         A.   Uh-huh.

21         Q.   Okay.  Was that that visit for a

22    treatment for major depressive disorder for a

23    single episode?

24         MR. THOMAS:  Sorry, I was typing, what

25    page are you on?



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1      MR. VANORSBY:  33.

2      A.    January 28th, 2019, patient to be

3  evaluated for major depressive disorder, single

4  episode unspecified.  The diagnosis of depression

5  was made ten years plus.

6      BY MR. VANORSBY:

7      Q.    **Right.  So did you report symptoms of**

8  **being anxious, no appetite, crying spells and**

9  **fatigue?**

10     A.    Yes.

11     Q.    **What did you identify as, currently**

12 **identify as a stressor?**

13     A.    She's not able to identify stressor at

14 this time.  She has been recently promoted to

15 nurse manager at VA.  She tells me that this job

16 is not very stressful for her.

17     Q.    **Okay.  It also said you started Lexapro**

18 **one week prior.  Who prescribed Lexapro to you?**

19     A.    Dr. Ferris.

20     Q.    **Okay.**

21     A.    My initial Lexapro was in 2010.

22     Q.    **Okay.  And the only reason I ask is**

23 **because I didn't see an entry for the actual, for**

24 **Dr. Ferris actually saying I am prescribing this**

25 **to her.  So I want to ask about the circumstances**

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1  about you being represcribed the Lexapro.  Did you

2  go in for a doctor's visit or did you make a call

3  or do you remember?

4       A.   I went in for a doctor's visit and I was

5  put back on my Lexapro, ten milligrams.  I had

6  stopped taking the medication before because I

7  didn't feel I needed it.

8       Q.   Okay.  And maybe I just missed the entry.

9  And that's okay.  And then you report you have

10  follow up with your therapist, right?

11       A.   Uh-huh.

12       Q.   And that tracks with your February 6th,

13  2019, visit with New Perspectives?

14       A.   Uh-huh.

15       Q.   All right.  Go to Page 29, please.

16       A.   (Witness complies).

17       Q.   Do you see an entry for June 4th, 2019?

18       A.   Uh-huh.

19       Q.   And what was that visit for?

20            MR. THOMAS:  What page are we on?  I am

21  sorry.  I am reading.

22            MR. VANORSBY:  29.

23       A.   It says, here for a follow-up visit.

24  Include diabetes history details were provided by

25  patient.  History appears to be reliable.


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    Depression screening is positive for all meds and
2    therapy.  Current meds include oral and it just
3    says my current meds.
4        BY MR. VANORSBY:
5        Q.    Okay.  And does it say something about
6    depressive episode present for past five months?
7        A.    Major depressive disorder single episode
8    unspecified details and diagnosis of depression
9    was made ten years plus ago.  This episode of
10   depression has been present for the past five
11   months, currently active symptoms include
12   increased anxious mood, decreased, increased
13   appetite, crying spells and fatigue.
14       Q.    And what did you report to the doctor
15   about any identifiable stressors?
16       A.    No current identifiable stressors.  She
17   has no known pertinent medical conditions,
18   psychiatric history is significant for a prior
19   depressive episode.
20       Q.    Okay.  Now one thing we haven't really
21   covered in depth is your rotator cuff surgery.
22       A.    Uh-huh.
23       Q.    Who performed that surgery?
24       A.    I don't remember.
25       Q.    Okay.  Do you remember the office you

**Appino  Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1   went to?

2       A.    Advanced Orthopaedics Associates.

3       Q.    How long was your recovery period?  Let

4   me back up.  When did you have the surgery?  I

5   think we might have talked about that the other

6   day.

7       A.    January the 10th of 2019.

8       Q.    Okay.  How long was your recovery?

9       A.    I was back to work in two weeks.

10      Q.    Okay.  Were you on any restrictions?

11      A.    I had to wear my sleeve, my arm brace on

12  my left arm, but I need everything, I'm right-

13  handed.

14      Q.    Okay.  So you kind of indicated you had a

15  brace, I am guessing kept your arm close to your

16  body?

17      A.    Yes.

18      Q.    And for work you just used one hand to

19  type?

20      A.    Yes.

21      Q.    Okay.  How long were you in the arm

22  brace?

23      A.    About ten days.

24      Q.    So that's two weeks plus ten days, right?

25      A.    Yes.

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1      Q.    Okay.  So you were in the arm brace for

2    like three weeks?

3      A.    Yes.

4      Q.    And what restrictions did you have after

5    you had your arm brace removed?

6      A.    No lifting over ten pounds, I was going

7    to active physical therapy.

8      Q.    Okay.  And was that recovery process

9    pretty painful?

10     A.    It really wasn't painful, it was just

11   time, time restrictive because I just had to go to

12   physical therapy.

13     Q.    Was that an every day thing you had to go

14   to physical therapy?

15     A.    Once a week.

16     Q.    Once a week.  Okay.  And for how long did

17   you have to go to physical therapy?

18     A.    I went for like 12 weeks.

19     Q.    And then once you completed your physical

20   therapy did you feel like you were back to brand

21   new?

22     A.    No.  I had to complete, continue with my

23   home exercise program.

24     Q.    Okay.  So you still had some pain still

25   trying to recover after the physical therapy?



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

1      A.    Some immobility more than pain.

2      Q.    Okay.  By immobility do you mean you had

3  trouble with range of motion?

4      A.    Yes, my range of motion.

5      Q.    Okay.  Would it be fair to say that you

6  had some significant mental health struggles prior

7  to your employment with the VA?

8      A.    Yes.

9      Q.    Did you have multiple suicide attempts?

10     A.    I had a suicide attempt in February of

11  2000.

12     Q.    Okay.

13     A.    I took 23 Tylenol with codeine.  I had

14  thoughts of suicide, but no attempts.

15     Q.    Okay.  When else did you have suicidal

16  ideations?

17     A.    2009.  2010.  '12.  '13.

18     Q.    So it was kind of continuing on from --

19     A.    Uh-huh.

20     Q.    -- about 2000 to, I don't know, do you

21  continue to have suicidal ideation?

22          MR. THOMAS:  Object.  You didn't let her

23  finish her answer.

24     BY MR. VANORSBY:

25     Q.    I'm sorry.  If you weren't finished, I

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

**DASHAUN MCCRAY**

1    thought you were finished.  What was the rest of

2    your answer?

3         A.    I had thoughts of it, but I don't have a

4    plan.

5         Q.    Okay.  And that continues to today?

6         A.    On occasion.

7         Q.    Okay.

8         A.    But I have medicine.

9         Q.    Okay.  And would it be fair to say that

10    you had significant need for therapy prior to your

11    employment with the VA?

12         A.    Uh-huh.

13         Q.    Okay.  And I am sorry, if you could just

14    say --

15         A.    Yes.

16         Q.    Okay.  And you mentioned medications,

17    prior to your employment at the VA were you taking

18    medication to help your mood and your depressive

19    state?

20         A.    I didn't start back to take the

21    medication until probably when I was seeing Dr.

22    Ferris, so probably about 2013 or 2015.

23         Q.    Okay.  But were you taking medications

24    prior to your employment with the VA and try to

25    help your mood?



5111 SW 21st Street          6420 W, 95th Street       800 E. 1st Street
Topeka, KS 66604             Suite 101                 Suite 305
785-273-3063                 Overland Park, KS 66212   Wichita, KS 67202
www.appinobiggs.com          913-383-1131              316-201-1612

**DASHAUN MCCRAY**

1    A.   Yes.

2    Q.   Okay.  Okay.  And at some point you start

3  seeing Dr. Gratia Meyer; correct?

4    A.   Uh-huh.

5    Q.   I apologize, can you remind me of the

6  date that you started seeing her?

7    A.   Early November of 2021.

8    Q.   Okay.

9       (THEREUPON, Deposition Exhibit No 29 was

10  marked for identification.)

11  BY MR. VANORSBY:

12    Q.   I will hand you what has been marked as

13  Exhibit 29.  And again, we don't have time to go

14  through all of these, but I will talk to you about

15  a couple of things, okay?

16    A.   Uh-huh.

17    Q.   Have you ever reviewed these records

18  before?

19    A.   No.

20    Q.   Are you aware of any point in these

21  records, and if you need time to review it, you

22  let me know, where there's a mention of you being

23  discriminated against and effected by

24  discrimination and your employment at the VA?

25       MR. THOMAS:  Objection to foundation.

**Appino  Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

```
 1   She just told you she's never read it.
 2            MR. VANORSBY: And I just said if you need
 3   time to review it you can.
 4            MR. THOMAS:  That's not a fair question.
 5            MR. VANORSBY: That is a fair question,
 6   unless you want me to just go through page-by-
 7   page.  I think that's probably a better way just
 8   to say, look, there's something in here you know
 9   about, let me know.
10            MR. THOMAS:  All right.  I'm going to
11   instruct her at the time to not answer your
12   questions until you've read the whole thing.
13            MR. VANORSBY:  We can take a break.
14            MR. THOMAS:  We won't take a break, we'll
15   do it on your time.
16            MR. VANORSBY:  Actually, that's fine.
17   BY MR. VANORSBY:
18       Q.   If you need to take a break, we'll take a
19   break.
20       A.   (Witness reviews documents).  We really
21   just started getting into my work anxiety in the
22   last two sessions.
23            MR. THOMAS:  There's no question pending.
24   BY MR. VANORSBY:
25       Q.   That was a question pending.  Thank you.
```

 5111 SW 21st Street    6420 W. 95th Street    800 E. 1st Street
Topeka, KS 66604    Suite 101    Suite 305
785-273-3063    Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com    913-383-1131    316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

**DASHAUN MCCRAY**

1  Okay.  So I've had a chance to quickly look
2  through this because they were only recently
3  produced, but my understanding of your
4  conversations with Dr. Meyer primarily resolved
5  around the MST and maybe some of the suicidal
6  attempts, right?
7       A.    Uh-huh.  To the date that you received
8  these records, yes.
9       Q.    Okay.  And I just received them last
10 week.
11      A.    I've seen her since.
12      Q.    Okay.  So up until last week they just
13 were revolved around the MST and some of those
14 events that happened prior to your employment at
15 the VA?
16      A.    Yes.
17      Q.    Okay.  And that's something that you
18 continue to struggle with, correct?  Those
19 traumatic events from when you were in the
20 military?
21      A.    Yes.
22      Q.    Okay.  Just yesterday, or Wednesday, I
23 got some records sent to me, it was beyond the
24 deadline, but they were VA records from your time
25 in Colorado.  And I am sorry, I don't have those,

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1    but I just want to kind of generally ask you, do

2    you recall reporting that you don't remember a

3    time when you weren't struggling with depression?

4              MR. THOMAS:  Foundation.

5              MR. VANORSBY:  It's object to form.  You

6    made your objection.

7              MR. THOMAS:  It's the same thing you did

8    last time.

9              MR. VANORSBY:  Dan, just stop.

10             MR. THOMAS:  Stop interrupting me, it's

11   rude, stop interrupting me.

12             MR. VANORSBY:  I'm going to continue.

13             MR. THOMAS:  It's not fair to ask a

14   witness about a statement they made and not

15   present them the document.

16        BY MR. VANORSBY:

17        Q.   And my question was, if you recall, do

18   you recall making that statement that you can't

19   remember a time where you didn't struggle with

20   depression?

21        A.   In my adult life?

22        Q.   Okay.  What would you qualify as adult

23   life?

24        A.   After 22.

25        Q.   Okay.  And I apologize for this question,

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1  but what year would you have been 22?

2      A.    '96.

3      Q.    Okay.  So we have covered a lot today, we

4  are about finished, I just got a couple more

5  questions.  Is there anything as far as what we've

6  covered today that you think you need to add to?

7          MR. THOMAS:  Vague, foundation, to form.

8          MR. VANORSBY:  Object to form.

9          MR. THOMAS:  Again, please don't

10  interrupt me, I try not to do it to you.

11          MR. VANORSBY:  Just object to form.  Make

12  proper objections and I won't have to say

13  anything.

14          MR. THOMAS:  I don't care if you say

15  something, just please don't interrupt me when I'm

16  talking, not to mention it is rude to the court

17  reporter.

18      BY MR. VANORSBY:

19      Q.    Is there anything else that you need to

20  add?

21      A.    (Witness reviews documents).

22          MR. THOMAS:  Same objection.

23      A.    Can I ask a question?

24          MR. THOMAS:  No.

25      BY MR. VANORSBY:



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                   Suite 305
785-273-3063               Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com        913-383-1131                316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

## DASHAUN MCCRAY

1      Q.    Yeah, that's probably not --

2      A.    What was the question, please?

3      Q.    Is there anything else that you think you

4   need to add to what we have talked about?

5            MR. THOMAS:  Form.  Foundation, vague.

6            MR. VANORSBY:  Objection is form.

7      A.    No.

8   BY MR. VANORSBY:

9      Q.    Okay.  Is there any other information

10   that you want to tell me about what happened to

11   you at the VA in Wichita?

12           MR. THOMAS:  Same objection.  Form,

13   foundation, vague.

14           MR. VANORSBY:  Objection is form.

15     A.    No.

16     Q.    Okay.

17           MR. VANORSBY:  That's all I have, Miss

18   McCray, thank you for your time.

19           MR. THOMAS:  Unfortunately, I do have

20   some follow-up questions.  Do you want to take a

21   break or just plow right in?

22     A.    Plow right in.

23           MR. THOMAS:  All right.

24   CROSS EXAMINATION

25   BY MR. THOMAS:


5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

**DASHAUN MCCRAY**

1          Q.    Earlier you testified that you had not

2     reviewed discovery responses since 2021.  Do you

3     remember that?

4          A.    Yes.

5          Q.    Were you talking about the discovery

6     responses in the administrative claim?

7          A.    Yes.

8          Q.    Okay.  We had sent you some documents

9     called interrogatories and requests for production

10    -- well, strike that.  Strike that.

11         You were asked some questions about various

12    claims throughout the day and whether or not it

13    resulted in a demotion or a loss of benefits and

14    things of that nature.  Do you recall that?

15         A.    Yes.

16         Q.    The claims that you've raised in your

17    lawsuit, and the acts of discrimination and

18    retaliation that you've testified about today, did

19    it impact your mental health?

20              MR. VANORSBY:  Object to form.

21         A.    Yes.

22    BY MR. THOMAS:

23         Q.    Did it impact your reviews?

24              MR. VANORSBY:  Same objection.

25         A.    Yes.

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1          BY MR. THOMAS:

2          Q.    And the person who was harassing you was

3    Miss Duda, correct?

4                MR. VANORSBY:   Object to form.

5          A.    Yes.

6          BY MR. THOMAS:

7          Q.    And she was the one doing your reviews,

8    correct?

9          A.    Yes.

10         Q.    Did it impact your stress levels?

11         A.    Yes.

12               MR. VANORSBY:   Object to form.

13         BY MR. THOMAS:

14         Q.    Did it impact your ability to do your

15   job?

16               MR. VANORSBY:   Object to form.

17         BY MR. THOMAS:

18         Q.    Well, let me ask you this.  Let me pull

19   that back.  When they were giving you added duties

20   that you could not do, did that impact your

21   ability to do your job?

22               MR. VANORSBY:   Object to form.

23         A.    Yes.

24         BY MR. THOMAS:

25         Q.    Did they, Miss Duda and Dr. Cummings,


**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1  force you to transfer jobs?

2         MR. VANORSBY:  Object to form.

3   A.    Yes.

4  BY MR. THOMAS:

5   Q.    Go ahead.

6   A.    I put in 18 job applications between

7  January of 2020 to March of 2020.  I actually went

8  to ADPCS in December of 2019, and requested a

9  transfer out of office of community care.  I was

10 given a job description for a utilization

11 management position that was one grade below my

12 current pay.

13  Q.    And this harassment from Miss Duda, was

14 it daily?

15         MR. VANORSBY:  Object to form.

16  A.    Yes.

17 BY MR. THOMAS:

18  Q.    And was it continuous?

19         MR. VANORSBY:  Object to form.

20  A.    Yes.

21 BY MR. THOMAS:

22  Q.    Can you tell me the number of times she

23 did it?

24         MR. VANORSBY:  Object to form.

25  A.    It was continuous, it was informal.  The



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1   way she would do it, I mean, it wouldn't be just
2   come right out, and she knew what she was doing.
3        BY MR. THOMAS:
4        Q.   **Is it possible for you to count the**
5   **number of times that she did it?**
6             MR. VANORSBY:  Object to form.
7        A.   No, it's not possible for me to count the
8   number of times.
9        BY MR. THOMAS:
10       Q.   **The disciplinary action in 2017, a nurse**
11  **was not doing her job correctly, right?**
12            MR. VANORSBY:  Object to form.
13       A.   She questioned me on how to complete the
14  multiple need for the surgery needs.  There was a
15  -- he had crushed the whole right side of his
16  body.  And she questioned and asked me exactly how
17  to process those consults.
18       BY MR. THOMAS:
19       Q.   **And that disciplinary action was**
20  **eventually removed from your file?**
21       A.   Per Dr. Robert V. Cummings in August of
22  2019, around or about August of 2019 was the ERLR
23  person who recommended that it be removed based on
24  my work performance.  He requested it from Dr.
25  Cummings that it be removed.



5111 SW 21st Street      6420 W. 95th Street      800 E. 1st Street
Topeka, KS 66604         Suite 101                Suite 305
785-273-3063             Overland Park, KS 66212  Wichita, KS 67202
www.appinobiggs.com      913-383-1131             316-201-1612

### DASHAUN MCCRAY

1      Q.    Give me one second.

2            MR. VANORSBY:  Can I ask something off

3      the record?

4            MR. THOMAS:  I stopped my clock.

5            MR. VANORSBY:  Can you tell us -- I want

6      to know where we are at.

7            THE VIDEOGRAPHER:  6:10.

8      BY MR. THOMAS:

9      Q.    Do you remember training issues as it

10     relates to Mary Lee Smalley and Dean Rhein?

11     A.    Yes.

12     Q.    Explain that, please.

13     A.    When Miss Duda came back and sent the E-

14     mail to Dean Rhein in regards to if I had sent

15     that information to education regarding the TMS

16     that needed to be completed by medical support

17     assistance and nurses in community care.  Dean

18     Rhein replied that I had not.  And then after

19     further discussion, when I sent them over to him,

20     Mary Lee Smally said that that was not the way it

21     worked, and Ruth should never have asked me to

22     send those to Dean Rhein.

23     Q.    Okay, I need to clarify something.  When

24     did Tenesha leave the OCC?

25     A.    She went out on medical probably the end

Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1  of February of 2018.

2        Q.    All right.   When did Ruth Duda become the

3  nurse manager of the OCC?

4        A.    June of 2017.   She was considered a

5  program manager.

6        Q.    Okay.   Let me, I am not doing this right

7  then.   You said, candidly, I wrote down that you

8  said two different things, I think you got dates

9  mixed up.   I wrote down that Tenesha remained your

10  supervisor until April of 2019.

11        A.    2018.

12        Q.    Okay.   Okay then.   So either I wrote it

13  down the first time or perhaps you misspoke if you

14  said '19 the first time.

15        A.    Okay.

16        Q.    More than likely I wrote it down wrong.

17  Okay.   I think that clarifies that timeline issue

18  that I was looking at.   You were asked, the charts

19  that you created of your damages.

20        A.    Yes.

21        Q.    From your two homes and utilities and

22  things like that.

23        A.    Yes.

24        Q.    The chart that you recently provided, is

25  that a new chart or is that just an update of



5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212       Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1    your, the old chart that you recently provided?

2        A.    That's the dates from December of 2021 to

3    present.

4        Q.    So.  Okay.  So you have, your damages

5    would be not only the charts you recently

6    provided, but the charts you previously provided?

7        A.    Yes.

8        Q.    Okay.  Now, I know this is a small thing,

9    but I am going to ask about it anyway.  In the

10   charts you had listed an expense for furniture

11   that you had to buy in Colorado.

12       A.    Yes.

13       Q.    You listed that on your own, right?

14       A.    Yes.

15       Q.    Okay.  Now, earlier today defense counsel

16   asked you if the VA should have to pay for that?

17           MR. VANORSBY:  Object to form.

18   BY MR. THOMAS:

19       Q.    Or I don't know how he phrased it, but he

20   asked you if that was an expense in your lawsuit,

21   words to that effect, right?

22       A.    Yes.

23       Q.    Okay.  And you said no.  Do you remember

24   that?

25       A.    Yes.


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

### DASHAUN MCCRAY

```
 1        Q.    Why did you say no?
 2        A.    I really wasn't thinking because I did
 3   have to, I did not take any furniture items from
 4   the home in Wichita, I purchased furniture when we
 5   got to Colorado.
 6        Q.    First of all, you just weren't thinking
 7   when you said that?
 8        A.    No, I wasn't.
 9        Q.    Okay.  So is the furniture you had to buy
10   when you moved to Colorado part of your damages in
11   this case?
12        MR. VANORSBY:  Object to form.
13        A.    Yes.
14   BY MR. THOMAS:
15        Q.    Can you explain why.
16        A.    I had to reestablish in Denver, Colorado
17   with all the household items, furniture, bedroom,
18   everything, when I relocated from Wichita to
19   Aurora.
20        Q.    You already had a home in Wichita, right?
21        A.    Yes.
22        Q.    And its fully furnished?
23        A.    Yes.
24        Q.    You didn't take that furniture with you
25   when you moved to Colorado, right?
```



5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

```
 1        A.    No.

 2        Q.    So you had to buy all new?

 3        A.    Yes.

 4        Q.    Where do your parents live?

 5        A.    I have had to relocate my parents to

 6   Colorado because I couldn't be here to care for

 7   them.

 8        Q.    Would you have had to do that if they

 9   didn't force you to transfer?

10        A.    No.

11        Q.    Is that an expense that you are claiming?

12        A.    Yes.

13        Q.    Have you calculated that yet?

14        A.    For my parents?

15        Q.    Yes.

16        A.    I haven't calculated it, I just know that

17   I had to provide plane tickets and things of that

18   nature.  But they are my parents and I am their

19   caregiver.

20        Q.    Earlier today you were asked a question,

21   let me find it, about Miss Duda usurping your

22   authority and what her motivating factors were.

23   Do you remember that?

24        A.    Yes.

25        Q.    And counsel purportedly read from a
```

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131               316-201-1612

### DASHAUN MCCRAY

1  statement you gave at one point where you

2  purportedly said that Miss Duda strives on power

3  and uses that to her advantage.  Do you remember

4  that?

5          MR. VANORSBY:  Object to form.

6      A.  Yes.

7  BY MR. THOMAS:

8      Q.  You also told him that retaliation was a

9  factor?

10     A.  Yes.

11     Q.  He asked you if at the time you had

12  listed racism or racial issues as a factor --

13         MR. VANORSBY:  Object.

14     Q.  -- when you gave that statement.

15         MR. VANORSBY:  Object to form.

16  BY MR. THOMAS:

17     Q.  Do you remember that?

18     A.  Yes.

19     Q.  Let me ask you this.  As you sit here

20  today, looking back, in retrospect and reviewing

21  the totality of the circumstances and everything

22  you now know about Ruth Duda, do you think your

23  race was a motivating factor in her usurping your

24  authority?

25         MR. VANORSBY:  Object to form.



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1       A.    Yes.

2    BY MR. THOMAS:

3       Q.    And she didn't just usurp your authority,

4    she fermented dissent among your staff, right?

5            MR. VANORSBY:  Object to form.

6       A.    Yes.

7    BY MR. THOMAS:

8       Q.    And do you think your race was a factor

9    in that?

10           MR. VANORSBY:  Object to form.

11      A.    Yes.

12    BY MR. THOMAS:

13      Q.    And you were asked a question about

14    identifying similarly situated Caucasian employees

15    who she treated differently.  Do you recall that?

16           MR. VANORSBY:  Object to form.

17      A.    Yes.

18    BY MR. THOMAS:

19      Q.    And you indicated that there were no

20    other supervisors that were Caucasian, correct?

21      A.    Correct.

22           MR. VANORSBY:  Object to form.

23    BY MR. THOMAS:

24      Q.    But there were other employees of the

25    OCC, correct?


Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street            6420 W. 95th Street            800 E. 1st Street
Topeka, KS 66604              Suite 101                     Suite 305
785-273-3063                 Overland Park, KS 66212        Wichita, KS 67202
www.appinobiggs.com          913-383-1131                  316-201-1612

## DASHAUN MCCRAY

1      A.    Yes.

2      Q.    And there were Caucasian ones, correct?

3      A.    Yes.

4      Q.    And there were Caucasian employees within

5   the OCC that she treated differently than you and

6   the other African American employees; correct?

7      A.    Yes.

8      Q.    And there were Caucasian employees within

9   the OCC that Ruth Duda showed favoritism to,

10  correct?

11     A.    Yes.

12     Q.    And you are a nurse, right?

13     A.    Yes.

14     Q.    And some of those employees were nurses?

15     A.    Yes.

16     Q.    He showed you this Exhibit 13.  If you

17  could pull it up.  Maybe it isn't in there.

18  Well, it doesn't matter.  It doesn't matter.

19  Don't pull it up.  It doesn't matter.  We are not

20  going to get bogged down in these documents.

21     He showed you some document where in February

22  of 2020 you didn't write down that Miss Duda

23  denied you the chance to speak.  Do you remember

24  that?

25          MR. VANORSBY:  Object to form.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604              Suite 101                    Suite 305
785-273-3063                  Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com           913-383-1131                 316-201-1612

### DASHAUN MCCRAY

1     A.    Yes.

2     BY MR. THOMAS:

3     Q.    I think it was Exhibit 13.  However,

4   there was another exhibit where in July of 2020

5   you clearly state that she did deny you your right

6   to speak.

7           MR. VANORSBY:  Object to form.

8     BY MR. THOMAS:

9     Q.    Right?

10    A.    Yes.

11    Q.    Let's just set the record straight.  Did

12  she deny you your right to speak?

13    A.    She denied me the right to speak and then

14  Mr. Ament stated I want to hear her speak,

15  basically put his hand up to her face and then I

16  spoke.

17          MR. VANORSBY:  For the record, I was

18  objecting to form.

19          MR. THOMAS:  I will agree that counselor

20  was trying to get his objection in.

21    BY MR. THOMAS:

22    Q.    You were asked this question about this

23  E-mail where she stood over your shoulder.  Do you

24  remember that, was it January 31st of 2020?

25    A.    Yes.



5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131              316-201-1612

## DASHAUN MCCRAY

```
 1        Q.    And counsel asked, well, is there any way
 2   she could have reviewed it if she wasn't standing
 3   over your shoulder.   Do you remember that?
 4             MR. VANORSBY:   Object to form.
 5        A.    Yes.
 6        BY MR. THOMAS:
 7        Q.    Who said she had to review it right then
 8   and there?
 9             MR. VANORSBY:   Same objection.
10        A.    Nobody.   The E-mail came to myself and
11   her from Dr. Cummings.
12        BY MR. THOMAS:
13        Q.    Could she have asked you to send her a
14   copy of it first?
15             MR. VANORSBY:   Object to form.
16        A.    Yes.
17        BY MR. THOMAS:
18        Q.    Could she have asked you to CC her on it?
19             MR. VANORSBY:   Same objection.
20        A.    She was on the E-mail already, and I
21   informed her that she was copied on the E-mail.
22        BY MR. THOMAS:
23        Q.    Could she have asked you from the other
24   side of the desk what the E-mail said?
25        A.    Yes.
```


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

## DASHAUN MCCRAY

1            MR. VANORSBY:  Same objection.

2       BY MR. THOMAS:

3            Q.   **She was standing over you trying to**

4    **intimidate you?**

5            MR. VANORSBY:  Object to form.

6       A.   Yes.

7       BY MR. THOMAS:

8            Q.   **And, in fact, this is a known Ruth Duda**

9    **move?**

10           MR. VANORSBY:  Same objection.

11      A.   Yes.

12      BY MR. THOMAS:

13           Q.   **She's done it countless times to other**

14   **employees?**

15           MR. VANORSBY:  Object to form.

16      A.   Yes.

17           Q.   **She is a rather tall, menacing woman.**

18           MR. THOMAS:  Is it funny to you?

19           MR. VANORSBY:  Your questions are, yes,

20   they are.

21           MR. THOMAS:  I'm glad you're amused.

22           MR. VANORSBY:  Okay.  Go ahead finish.

23           MR. THOMAS:  Because she's clearly told

24   you she has a physical --

25           MR. VANORSBY:  Ask your questions.


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

```
 1                 MR. THOMAS:  Stop interrupting me.
 2                 MR. VANORSBY:  No.  Ask your questions.
 3     I'm not going to be a part of it.
 4                 MR. THOMAS:  She has a physical response
 5     to her and she's explained it and you think its
 6     funny.
 7                 MR. VANORSBY:  Go ahead and ask your
 8     question.
 9                 MR. THOMAS:  Impressive.
10     BY MR. THOMAS:
11       Q.    She's menacing, isn't she?
12       A.    Yes.
13                 MR. VANORSBY:  Object to form.
14     BY MR. THOMAS:
15       Q.    And she was trying to intimidate you,
16     wasn't she?
17                 MR. VANORSBY:  Same objection.
18       A.    Yes.
19     BY MR. THOMAS:
20       Q.    And it worked, didn't it?
21                 MR. VANORSBY:  Same objection.
22       A.    Yes.
23     BY MR. THOMAS:
24       Q.    This whole Janelle Adams' situation, do
25     you remember that?
```



Appino & Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1      A.    Yes.

2      Q.    **Again, Duda is trying to ferment**

3  **dissension among your staff?**

4            MR. VANORSBY:  Objection.  Counsel is

5  testifying.

6            MR. THOMAS:  Right?  Objection is form, I

7  believe is what you would say.

8            MR. VANORSBY:  That's what I would say.

9      A.    Yes.

10           MR. THOMAS:  Can we go off the record,

11  please?

12           THE VIDEOGRAPHER:  Standby.  Time is

13  approximately 5:29 p.m., we are going off the

14  record.

15           (THEREUPON, at 5:29 p.m., a recess was

16  taken, after which, 5:32 p.m., the following

17  proceedings were held:)

18           THE VIDEOGRAPHER:  Time is approximately

19  5:32 p.m.  We are back on the record.

20           MR. THOMAS:  I think I am ready to go

21  back.

22      BY MR. THOMAS:

23      Q.    **I just want to make sure we are clear on**

24  **this.  Is it fair to say Miss Duda harassed you**

25  **in one form or another continually?**



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

3/24/2023

### DASHAUN MCCRAY

1          MR. VANORSBY:  Object to form.

2     A.    Yes.

3     BY MR. THOMAS:

4     Q.    On an ongoing basis?

5          MR. VANORSBY:  Same objection.

6     A.    Yes.

7     BY MR. THOMAS:

8     Q.    On a nearly daily basis?

9          MR. VANORSBY:  Same objection.

10    A.    Yes.

11    BY MR. THOMAS:

12    Q.    And I understand that you previously had

13    a history of depression and PTSD.

14    A.    Yes.

15    BY MR. THOMAS:

16    Q.    And anxiety?

17    A.    Yes.

18    Q.    Did Miss Duda, do you know what I mean

19    when I say the word exacerbate?

20    A.    Yes.

21    Q.    Did Miss Duda exacerbate those

22    conditions?

23          MR. VANORSBY:  Object to form.

24    A.    Yes.

25    BY MR. THOMAS:


Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

3/24/2023                                                              290

# DASHAUN MCCRAY

1        Q.    How so?

2              MR. VANORSBY:   Same objection.

3        A.    Workplace anxiety, inability to, you

4    know, be able to be outspoken in regards to things

5    in which I would see that would be more

6    appropriate for the service line.  I currently

7    have a high anxiety, even in my current workplace

8    and ask for review by my current supervisor just

9    to make sure that I am within the scale of my

10   daily tasks and practices in the organization.

11             I have a doubt in feeling that people

12   understand or desire to work with me based on

13   actually I am, again, one of the only black people

14   in my current position.  There is two other

15   African American nurses, and so I don't really

16   feel that other staff, you know, take value my

17   work.  But I get reassurance from my current staff

18   that they value my work and I don't have to, you

19   know, feel that anxiety in which I had working

20   with Miss Duda as my supervisor.

21             BY MR. THOMAS:

22       Q.    And --

23       A.    Disassociation --

24       Q.    Go ahead.

25       A.    Disassociation disorder is what I've been

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1  diagnosed with by my psychotherapist in regards to
2  my ability to still be able to be productive in
3  the workforce and deal with the things in which
4  I've dealt with, and be able to work at the scale
5  and to be able to promote within the Department of
6  Veteran Affairs.
7       **Q.   And stand by the medical records,**
8  **regardless of whether or not you were always**
9  **talking about workplace issues, it seems like your**
10 **stress, depression and anxiety levels increased**
11 **dramatically once you started working for Miss**
12 **Duda, is that fair?**
13           MR. VANORSBY:  Object to form.
14      A.   Yes.  They increased from 4-5-18 when she
15 came stand over my desk and told me what I should
16 inform someone else of that was outside of my pay
17 grade, outside of my abilities.
18      BY MR. THOMAS:
19      **Q.   I want to, this is something I meant to**
20 **ask you earlier, that I neglected to.  You said**
21 **something earlier that kind of took me aback.  You**
22 **said you have a hard time dealing with people**
23 **outside of your race in terms of your workforce,**
24 **do you remember that?**
25      A.   Yes.



**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    Q.    Has that been ever since Miss Duda?

2          MR. VANORSBY:  Object to form.

3    A.    Yes.

4    BY MR. THOMAS:

5    Q.    Did you ever have that problem before

6    Miss Duda?

7          MR. VANORSBY:  Object to form.

8    A.    I was the only black nurse at Blue

9    Cross/Blue Shield and case management and I always

10   had a good rapport with all the staff members I

11   worked with.

12         MR. THOMAS:  I have no further questions.

13         MR. VANORSBY:  Okay.  I've just got a few

14   clean ups and then I have a statement for the

15   record.

16         REDIRECT EXAMINATION

17   BY MR. VANORSBY:

18   Q.    With Mr. Thomas you discussed something

19   about you were forced to transfer jobs by Miss

20   Duda and Dr. Cummings.  Do you recall that?

21   A.    Yes.

22   Q.    Did you assert that as part of your EEO

23   at any point?

24   A.    I did not.

25   Q.    Okay.  And do you understand that this

**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1  forced transfer constructive discharge has been
2  dismissed, right?
3      A.   Once I was informed what a constructive
4  discharge is, yes.
5      Q.   Okay.  You also discussed a disciplinary
6  action that you received in 2017.  And from what I
7  heard, there was some other nurse who was
8  questioning what you were doing, is that your
9  testimony?
10     A.   Not questioning, she was questioning what
11 she should do.
12     Q.   Okay.  And who was that nurse?
13     A.   Cynthia Finley.
14     Q.   Okay.  And so its your testimony today
15 that you were training Cynthia Finley or you were
16 assisting Cynthia Finley when you accessed Mr.
17 Bryant's records 26 times?
18     A.   From the date of 20 -- May of 2017,
19 anything after that.
20     Q.   So anything after May of 2017 you were
21 assisting Cynthia Finley?
22     A.   Assisting the staff in regards to the
23 appointments that he has, yes.
24     Q.   You said staff.
25     A.   Cynthia Finley.



## DASHAUN MCCRAY

1    Q.    Okay.  Has that been consistently the

2  reason that you provided for why you accessed Mr.

3  Bryant's records?

4    A.    Yes.

5    Q.    Okay.  So it's your testimony today you

6  never informed anyone that you were training new

7  nurses and that's why you accessed Mr. Bryant's

8  records?

9    A.    I was -- she asked me a question in

10 regards to how to work the schedule to those

11 appointments because there were multiple

12 appointments needed back-to-back.

13   Q.    Okay.  So my question was, is it your

14 testimony today that you didn't tell anyone else

15 that you were actually training new nurses and

16 that's why you accessed Mr. Bryant's records?

17   A.    I wasn't training new nurses.

18   Q.    Okay.  And you didn't report to your, to

19 Dr. Meyer that the reason why you accessed those

20 records is because Mr. Bryant asked you to; is

21 that correct?

22   A.    To Dr. Meyer?

23   Q.    That's right.

24   A.    I have never even talked about this with

25 Dr. Meyer.



## DASHAUN MCCRAY

1    Q.    Have you reported to anyone, ever, that
2  the reason why you accessed those records was
3  because Mr. Bryant asked you to?
4    A.    In regards to not following procedure
5  when he was asked me about a prescription, yes, I
6  have stated that that was the reason.  That was my
7  appeal.
8    Q.    You discussed with Mr. Thomas that the
9  Excel sheets that you provided to me.
10    MR. VANORSBY:  And I will note for the
11  record I received an update, updated spreadsheet
12  yesterday.
13    BY MR. VANORSBY:
14    Q.    I think you mentioned that your damages
15  are, the chart that you previously provided and
16  the one you recently provided?
17    A.    Yes.  That's the whole, from the time
18  that I moved to Aurora, Colorado to date.
19    Q.    Okay.  And so is it your testimony that
20  the updated one does not include damages that were
21  previously provided?
22    A.    No.
23    Q.    Okay.  I will tell you it appears to me
24  that you just went in and updated the prior Excel
25  sheet that you provided.

Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street          800 E. 1st Street
Topeka, KS 66604             Suite 101                    Suite 305
785-273-3063                 Overland Park, KS 66212      Wichita, KS 67202
www.appinobiggs.com          913-383-1131                 316-201-1612

**DASHAUN MCCRAY**

1        A.    I added the new tab.

2        Q.    Okay.  And so I think we are talking past

3   each other here, but you went in, you added a new

4   tab to update it and then you sent it out?

5        A.    Yes.

6        Q.    So it includes the same information that

7   I was previously provided, but there is some new

8   information in it?

9        A.    The next tab.

10       Q.    Okay.  So you are not saying, I want to

11  make sure I word this correctly, but that the

12  damages that were previously disclosed are on top

13  of everything that is in the update, right?  Some

14  of the information is --

15       A.    None of the information crosses, the new

16  dates are from December of 2021, the previous

17  dates went from 6-2020, well, 6-2020 to 11-2021.

18       Q.    Okay.  I'm just it's late in the day, I

19  think we're talking past each other.  I will let

20  the record stand for what it stands, okay?  You

21  mentioned something about disassociation disorder

22  that you've been diagnosed with that.

23       A.    Disassociation.

24       Q.    Disassociation --

25             MR. THOMAS:  Disassociation.

 **Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street    6420 W. 95th Street    800 E. 1st Street
Topeka, KS 66604       Suite 101              Suite 305
785-273-3063           Overland Park, KS 66212 Wichita, KS 67202
www.appinobiggs.com    913-383-1131           316-201-1612

## DASHAUN MCCRAY

1          BY MR. VANORSBY:

2          Q.    Okay -- disorder that you've been

3    diagnosed with that.  That's not something we

4    talked about earlier.  Who diagnosed you with

5    that?

6          A.    Gratia Meyer.

7          Q.    Okay.  And when did that occur?

8          A.    Within the past three months.

9          Q.    Okay.  And bottom line, we've got Dr.

10   Meyer's records and they will be in there

11   somewhere.

12         A.    Uh-huh.

13         Q.    Okay.  And Mr. Thomas discussed with you

14   this idea about the furniture that's on your

15   damages chart.  My understanding is after speaking

16   with your attorney --

17              MR. THOMAS:  Whoa.  Whoa.  Whoa.

18              MR. VANORSBY:  Let me finish my question,

19   Danny.

20              MR. THOMAS:  You're right.  I apologize.

21         BY MR. VANORSBY:

22         Q.    After speaking with your attorney just

23   now you are changing your testimony?

24         A.    After his question, yes.

25              MR. THOMAS:  Okay.  I am sorry, Brian, I



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

### DASHAUN MCCRAY

1    thought you were doing something else.

2        BY MR. VANORSBY:

3        Q.    So there's also a discussion of taking

4    care of your parents.  Have you provided any

5    documentation to that effect?

6        A.    My parents just moved to Colorado with me

7    on, my mom came December of '21 and my dad came

8    February of '22.

9        Q.    Okay.  And my question, have you provided

10   any documentation to that effect?

11       A.    No.

12       Q.    Okay.  Why not?

13       A.    I didn't know what kind of documentation

14   I would need to provide to that.

15       Q.    Okay.  You received discovery requests,

16   correct?

17       A.    Discovery requests in regards to the

18   previous responses.

19       Q.    Okay.  Well, okay.  I think I told

20   Phyllis to take the first Request for Production

21   documents, so we'll let that stand for what it is.

22       Mr. Thomas asked you a question, he said, you

23   are a nurse and some of the other employees were

24   nurses, do you remember that?

25       A.    Yes.



Appino Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212     Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

## DASHAUN MCCRAY

1      Q.    Well, you weren't a nurse, were you?

2      A.    Yes.

3      Q.    That wasn't your title?

4      A.    I was a nurse manager.

5      Q.    Okay.  That's a little bit different than

6   being a nurse, right?

7      A.    Yes.

8      Q.    Your job duties are different?

9      A.    Yes.

10     Q.    The pay is different?

11     A.    My pay was different.

12     Q.    The expectations are different?

13     A.    Yes.

14     Q.    Your performance standards, they are

15  different?

16     A.    Yes.

17     Q.    Okay.

18          MR. VANORSBY:  That's all I have.  I will

19  make a statement for the record, but there were

20  several questions that were refused to answer.

21  We've got a pending data E-mail to the Judge.  So

22  I am holding the deposition open pending what the

23  Judge has said, decisions going to be on that, and

24  we can reconvene by Zoom, which is fine.  Unless

25  the plaintiff wants to answer those questions now



Appino & Biggs Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

3/24/2023                                                          **300**

## DASHAUN MCCRAY

1  prior to us closing.

2          MR. THOMAS:  No.  Let's go.

3          MR. VANORSBY:  All right.  We'll hold

4  that open.

5          THE VIDEOGRAPHER:  Time is approximately

6  5:45 p.m.  Going off the record.  This concludes

7  the deposition.

8          THE REPORTER:  Do you want her to read

9  and sign?

10          MR. THOMAS:  Yes.  Let's read and sign.

11  Give her your address.

12          THE WITNESS:  Physical address is 7575

13  South Quatar, Q-U-A-T-A-R, Way, Aurora, Colorado,

14  80016.

15          THE REPORTER:  What format do you want

16  your transcripts?

17          MR. THOMAS:  E-Tran.

18          MR. VANORSBY:  I will take PDF.

19          (THEREUPON, the deposition concluded at

20  5:47 p.m.)

21  .

22  .

23  .

24  .

25  .



Appino Biggs Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1                          SIGNATURE

2          .

3                 The deposition of DASHAUN MCCRAY was

4      taken in the matter, on the date, and at the time

5      and place set out on the title page hereof.

6          .

7                 It was requested that the deposition be

8      taken by the reporter and that same be reduced to

9      typewritten form.

10         .

11                It was agreed by and between counsel and

12     the parties that the deponent will read and sign

13     the transcript of said deposition.

14         .

15         .

16         .

17         .

18         .

19         .

20         .

21         .

22         .

23         .

24         .

25         .

**Appino Biggs** Reporting Service, Inc.

TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

1                              AFFIDAVIT

2        .

3    STATE OF _____ :

4    COUNTY/CITY OF _____ :

5        .

6            Before me, this day, personally appeared,

7    DASHAUN MCCRAY, who, being duly sworn, states that

8    the foregoing transcript of his/her Deposition,

9    taken in the matter, on the date, and at the time

10   and place set out on the title page hereof,

11   constitutes a true and accurate transcript of said

12   deposition, along with the attached Errata Sheet,

13   if changes or corrections were made.

14       .

15                   _____

16                   DASHAUN MCCRAY

17       .

18       SUBSCRIBED and SWORN to before me this

19   _____ day of _____, 2023 in the

20   jurisdiction aforesaid.

21       .

22   _____        _____

23   My Commission Expires              Notary Public

24       .

25       .

**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street          6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604             Suite 101                  Suite 305
785-273-3063                 Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com          913-383-1131              316-201-1612

**DASHAUN MCCRAY**

1                DEPOSITION ERRATA SHEET

2    .

3    RE:        APPINO & BIGGS REPORTING SERVICE, INC.

4    .

5    FILE NO.: 68701

6    .

7    CASE:     DASHAUN MCCRAY vs.

8           DENIS MCDONOUGH, ET AL.

9    .

10   DEPONENT: DASHAUN MCCRAY

11   .

12   DEPOSITION DATE: 3/24/2023

13   .

14   To the Reporter:

15   I have read the entire transcript of my Deposition

16   taken in the captioned matter or the same has been

17   read to me.  I request that the following changes

18   be entered upon the record for the reasons

19   indicated.  I have signed my name to the Errata

20   Sheet and the appropriate Certificate and

21   authorize you to attache both to the original

22   transcript.

23   .

24   .

25   .



**Appino & Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612

# DASHAUN MCCRAY

```
 1    PAGE:LINE FROM        TO              REASON
 2       .
 3       .
 4       .
 5       .
 6       .
 7       .
 8       .
 9       .
10       .
11       .
12       .
13       .
14       .
15       .
16       .
17       .
18       .
19       .
20       .
21       .
22       .
23       .
24    SIGNATURE:_____  DATE:_____
25               DASHAUN MCCRAY
```



5111 SW 21st Street        6420 W. 95th Street        800 E. 1st Street
Topeka, KS 66604           Suite 101                  Suite 305
785-273-3063               Overland Park, KS 66212    Wichita, KS 67202
www.appinobiggs.com        913-383-1131               316-201-1612

305

## CERTIFICATE

**STATE OF KANSAS**

**COUNTY OF SHAWNEE**

I, Rachelle Smith, a Certified Court Reporter, Commissioned as such by the Supreme Court of the State of Kansas, and authorized to take depositions and administer oaths within said State pursuant to K.S.A 60-228, certify that the foregoing was reported by stenographic means, which matter was held on the date, and the time and place set out on the title page hereof and that the foregoing constitutes a true and accurate transcript of the same.

I further certify that I am not related to any of the parties, nor am I an employee of or related to any of the attorneys representing the parties, and I have no financial interest in the outcome of this matter.

Given under my hand and seal this 4th day of April, 2023.

_____Rachelle Smith_____

Rachelle Smith, C.C.R No. 0864



**Appino Biggs** Reporting Service, Inc.
TECHNOLOGY SPECIALISTS IN TODAY'S LITIGATION

5111 SW 21st Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W. 95th Street
Suite 101
Overland Park, KS 66212
913-383-1131

800 E. 1st Street
Suite 305
Wichita, KS 67202
316-201-1612